No. 24-60193

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

TEXAS CHEMISTRY COUNCIL, *et al.*,

*Petitioners*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*

*Respondents*.

---

On Petitions for Review of a Final Rule
of the Environmental Protection Agency

---

## MOTION TO INTERVENE IN SUPPORT OF RESPONDENTS

---

Allison Wisk Starmann
Laura Gooding
AMERICAN CHEMISTRY COUNCIL
700 2nd Street, NE
Washington, DC 20002

*Counsel for the American Chemistry Council*

David Y. Chung
Warren Lehrenbaum
Mary Marston
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 624-2500
dchung@crowell.com

*Counsel for American Chemistry Council and Georgia Chemistry Council*

Aaron M. Streett
Beau Carter
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, Texas 77002
(713) 229-1855
aaron.streett@bakerbotts.com

*Counsel for Texas Chemistry Council*

Robert J. Karl
Eric B. Gallon
PORTER, WRIGHT, MORRIS & ARTHUR
LLP
41 S. High Street, Suite 3000
Columbus, Ohio 43215-6194
(614) 227-1925
rkarl@porterwright.com

*Counsel for the Ohio Chemistry
Technology Council*

No. 24-60193

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

TEXAS CHEMISTRY COUNCIL, *et al.*,

*Petitioners*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*

*Respondents*.

On Petitions for Review of a Final Rule
of the Environmental Protection Agency

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.     Proposed Intervenor-Respondent **American Chemistry Council** has no parent corporations and no publicly held corporation owns more than 10% or more of its respective stock.

2. Proposed Intervenor-Respondent **Georgia Chemistry Council** has no parent corporations and no publicly held corporation owns more than 10% or more of its respective stock.

3. Proposed Intervenor-Respondent **Texas Chemistry Council** has no parent corporations and no publicly held corporation owns more than 10% or more of its respective stock.

4. Proposed Intervenor-Respondent **Ohio Chemistry Technology Council** has no parent corporations and no publicly held corporation owns more than 10% or more of its respective stock.

5. The following law firms and counsel have participated in these consolidated cases:

**Petitioners:**

United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO
American Chemistry Council
Georgia Chemistry Council
Asbestos Disease Awareness Organization
Texas Chemistry Council
Ohio Chemistry Technology Council

**Counsel for Petitioners:**

Randy S. Rabinowitz
Victoria Bor
OSH LAW PROJECT, LLC

David Y. Chung
Warren Lehrenbaum

Mary Marston
CROWELL & MORING LLP

Robert M. Sussman
SUSSMAN & ASSOCIATES

Aaron M. Streett
Beau Carter
BAKER BOTTS L.L.P.

Robert J. Karl
Eric B. Gallon
PORTER, WRIGHT, MORRIS & ARTHUR LLP

**Respondents:**

U.S. Environmental Protection Agency
Michael Regan

**Counsel for Respondents:**

Laura J. Glickman
Todd Kim
Merrick B. Garland
U.S. DEPARTMENT OF JUSTICE

Jeffrey M. Prieto
U.S. ENVIRONMENTAL PROTECTION AGENCY

*/s/ David Y. Chung*
David Y. Chung

Pursuant to Federal Rules of Appellate Procedure 15(d) and 27 and Fifth Circuit Rules 15.5 and 27, American Chemistry Council ("ACC"), Georgia Chemistry Council ("GCC"), Ohio Chemistry Technology Council ("OCTC"), and Texas Chemistry Council ("TCC") (collectively, the "Chemistry Councils") respectfully move for leave to intervene in these consolidated cases and all other petitions for review of the same rule that are consolidated with these cases. The Chemistry Councils move to intervene in support of Respondents, the United States Environmental Protection Agency and EPA Administrator Michael Regan (collectively "EPA") in opposition to the following petitions for review: United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, *AFL-CIO v. EPA* (D.C. Cir. No. 24-1089) and *Asbestos Disease Awareness Organization v. EPA* (D.C. Cir. No. 24-1090). The undersigned counsel has sought the position of the parties in those cases regarding this motion for leave to intervene. Neither of the Petitioners in those cases opposes the Chemistry Councils' proposed intervention, and Respondent EPA takes no position on the Chemistry Councils' proposed intervention.

These consolidated cases present petitions for review of a final EPA rule entitled *Asbestos Part 1; Chrysotile Asbestos; Regulation of Certain Conditions of Use Under the Toxic Substances Control Act (TSCA)*, 89 Fed. Reg. 21970 (Mar. 28, 2024) ("Final Rule"). TSCA, 15 U.S.C. §§ 2601–2697, is the primary federal

statute that regulates the manufacturing, processing, distribution, and use of chemical substances and mixtures in the United States.

The Chemistry Councils are trade associations whose member companies are directly regulated and affected by the Final Rule. Specifically, their member companies that own and operate chlor-alkali facilities use chrysotile asbestos diaphragms to produce chlorine. Their member companies also use chrysotile asbestos-containing gaskets in certain chemical manufacturing processes. The Final Rule prohibits the manufacture, processing, distribution in commerce and commercial use of chrysotile asbestos-containing products or articles in the chlor-alkali industry as well as in several other contexts. The Chemistry Councils' members thus have a substantial interest in this rulemaking, including in ensuring a reasonable timeline to transition to alternative technology in light of the new prohibitions.

The Chemistry Councils satisfy each requirement to intervene: (1) their request is timely; (2) they have a material interest in the Petition because their members are regulated and affected by the Final Rule; (3) disposition of the Petition for Review may impair the Chemistry Councils' interests, as the consequences of any relief Petitioners might obtain would be borne directly by their members; and (4) EPA cannot adequately represent the Chemistry Councils, whose members have direct commercial interests in the Final Rule. In recent years,

ACC has intervened in several other cases involving petitions to review EPA rules issued under TSCA that directly regulate ACC members. *E.g.*, *Env't Def. Fund v. EPA*, No. 23-1166, Doc. #2017812 (D.C. Cir. filed Sept. 19, 2023) (order granting ACC's motion to intervene as a respondent in litigation challenging EPA's final rule governing submission of confidential business information under TSCA); *Safer Chems., Healthy Fams. v. EPA*, 943 F.3d 397, 408–09 n.6 (9th Cir. 2019) (listing intervenor-respondents, including ACC); *Env't Def. Fund v. EPA*, 922 F.3d 446, 452 (D.C. Cir. 2019) (noting that a group of chemistry-industry associations intervened in support of EPA).

For these reasons, the Court should grant the Chemistry Councils' motion to intervene.

## BACKGROUND

The Chemistry Councils represent companies engaged in the business of chemistry, including by participating on behalf of their members in administrative proceedings before EPA and in litigation arising from those proceedings that affects member company interests. The business of chemistry is a $639 billion enterprise and an innovative, economic growth engine that is helping to solve the biggest challenges facing the nation and the world.[1]

---

[1] *See* ACC, "About ACC," https://www.americanchemistry.com/about-acc (last visited May 15, 2024).

The Chemistry Councils' members use and produce chemicals subject to regulation under TSCA and its implementing regulations, including the Final Rule that is the subject of this litigation. For instance, their members own and operate chlor-alkali facilities that produce chlorine using diaphragm devices that contain chrysotile asbestos. *See* The American Chemistry Council Chlorine Panel, Comments on EPA's Proposed Rule, Asbestos Part 1: Chrysotile Asbestos; Regulation of Certain Conditions of Use Under Section 6(a) of the Toxic Substances Control Act, at 3, Docket ID No. EPA-HQ-OPPT-2021-0057-0398 (July 13, 2022) ("ACC CP Comments").[2] The chlorine produced by members' facilities is in turn used in water and wastewater treatment, agriculture and food production, defense and law enforcement, transportation, building and construction, and healthcare. *See id.* at 3-4. The Chemistry Councils' members also use asbestos-containing gaskets to seal equipment components, including pipe connections. *See* American Chemistry Council, Comments on EPA's Proposed Rule, Asbestos Part 1: Chrysotile Asbestos; Regulation of Certain Conditions of Use Under Section 6(a) of the Toxic Substances Control Act, at 13, Docket ID No. EPA-HQ-OPPT-2021-0057-0402 (July 13, 2022) ("ACC Comments").[3]

---

[2] https://www.regulations.gov/comment/EPA-HQ-OPPT-2021-0057-0398.

[3] *Available at* https://www.regulations.gov/comment/EPA-HQ-OPPT-2021-0057-0402.

TSCA authorizes EPA to address unreasonable risks to public health or the environment from chemical substances available in the marketplace. EPA first conducts a risk evaluation under TSCA § 6(b). 15 U.S.C. § 2605(b). If EPA determines through such a risk evaluation that "the manufacture, processing, distribution in commerce, use, or disposal of a chemical substance or mixture, or that any combination of such activities, presents an unreasonable risk of injury to health or the environment," EPA must promulgate a rule that applies one or more of the risk management measures identified in TSCA § 6(a) to the extent necessary so that the chemical substance no longer presents such risk. *See id.* § 2605(a). Those risk management measures include, among other things, "prohibiting or otherwise restricting the manufacturing, processing, or distribution in commerce of [a] substance or mixture" or "limiting the amount of such substance or mixture which may be manufactured, processed, or distributed in commerce"; "prohibiting or otherwise restricting the manufacture, processing, or distribution in commerce of [a] substance or mixture" for a particular use or a particular use in excess of a specified concentration; and requiring that substances or mixtures be marked with "clear and adequate minimum warnings and instructions" regarding use, distribution in commerce, or disposal. *Id.*

TSCA § 6(d) sets forth requirements for the effective date of rules issued under TSCA § 6(a). *See* 15 U.S.C. § 2605(d). In addition to specifying the date on

which any rule shall take effect, EPA must "provide for a reasonable transition period," and the statute gives EPA broad discretion to specify compliance dates. *See id.* In any rule where EPA bans a particular chemical substance, the statute directs EPA to specify mandatory compliance dates for both: (i) the "start of ban or phase-out requirements," which must be no later than five years after the date of promulgation; and (ii) "full implementation of ban or phase-out requirements." *Id.* § 2605(d)(1)(C)-(D).

EPA conducted a risk evaluation under TSCA § 6(b)(4)(A) for chrysotile asbestos. *See* 89 Fed. Reg. at 21971 (citing December 2020 Risk Evaluation). On April 12, 2022, EPA issued a proposed rule to regulate certain conditions of use of chrysotile asbestos for which it determined unreasonable risk in the December 2020 Risk Evaluation. *See* 87 Fed. Reg. 21706 (Apr. 12, 2022). The chemical industry commented extensively on EPA's proposal. *See, e.g.*, ACC CP Comments; ACC Comments; Coalition Comments on EPA's Proposed Rule "Asbestos Part 1: Chrysotile Asbestos; Regulation of Certain Conditions of Use under Section 6(a) of the Toxic Substances Control Act" (July 8, 2022) (submitted by GCC, OCTC, TCC, and others).[4] For instance, ACC highlighted numerous errors in EPA's December 2020 risk evaluation and unreasonable risk

---

[4] *Available at* https://www.regulations.gov/comment/EPA-HQ-OPPT-2021-0057-0336.

determination. *See* ACC CP Comments at 6-48. ACC also expressed several concerns about the legal basis for the proposal. *See id.* at 48-80. In particular, ACC commented on how the proposed rule violates TSCA § 6(d)'s requirement that the Agency provide sufficient time for regulated entities to comply with the rule.

EPA issued the Final Rule on March 28, 2024. 89 Fed. Reg. 21970. The Final Rule prohibits the manufacture (including import), processing, distribution in commerce and commercial use of chrysotile asbestos, including any chrysotile asbestos-containing products or articles: (i) in the chlor-alkali industry; (ii) for sheet gaskets in chemical production; (iii) for oilfield brake blocks, aftermarket automotive brakes and linings, other vehicle friction products and other gaskets; and (iv) for consumer use of aftermarket automotive brakes and linings and other gaskets. *See id.* at 21971. The Final Rule also establishes disposal and recordkeeping requirements as well as certain interim workplace controls. *See id.* Regarding the chlor-alkali industry in particular, the Final Rule prohibits the manufacture (including import) of chrysotile asbestos for diaphragms as of the rule's effective date. *See id.* at 21979. The Final Rule's prohibition on the processing, distribution in commerce, and commercial use of chrysotile asbestos for chrysotile asbestos diaphragms generally *starts* five years after the rule's effective date. *See id.* The rule also allows longer staggered phase-out periods of eight and twelve years "to provide companies with a reasonable transition period

for the sequential conversion to [another] technology of up to three of their chlor-alkali facilities," under certain conditions. *See id.* at 21982.

Additionally, the Final Rule exempts asbestos-containing sheet gaskets for chemical production that are already installed prior to the Final Rule's effective date from the distribution in commerce and commercial use provisions. *See id.* at 21983. Moreover, for sheet gaskets used in titanium dioxide production, the Final Rule allows five years for transition to non-asbestos gaskets. *See id.*

In these consolidated cases, two of the Petitioners—United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO ("USW"); and Asbestos Disease Awareness Organization ("ADAO")—likely will challenge at least some aspects of the Final Rule that the Chemistry Councils support. For example, both Petitioners' comments on the proposed rule supported a two-year phase-out for the chlor-alkali industry, while opposing an alternative, five-year phase-out for the use of chrysotile asbestos in the chlor-alkali industry. *See* Comments of Asbestos Disease Awareness Organization on Proposed Part 1: Chrysotile Asbestos Risk Management Rule for Certain Conditions of Use Under Section 6(a) of the Toxic Substances Control Act (TSCA), at 3, Docket ID No. EPA-HQ-OPPT-2021-0057-

0397 (July 13, 2022);[5] *see also* Comment submitted by AFL-CIO and United Steelworkers (USW), at 2-3, Docket ID No. EPA-HQ-OPPT-2021-0057-0441 (Apr. 20, 2023).[6] ADAO also opposed an extension of the proposed two-year phase-out of asbestos-containing gaskets. *See* Comments of Asbestos Disease Awareness Organization on NODA for TSCA Chrysotile Asbestos Part 1 Risk Management Rulemaking, at 13, Docket ID No. EPA-HQ-OPPT-2021-0057-0490 (Apr. 17, 2023).[7]

As noted above, in the Final Rule, EPA codified a "5-8-12 years staggered phase-out period" for the chlor-alkali industry, which "allows for the required construction and required planning, permits and capital investment needed for the transition from chrysotile asbestos diaphragms to membrane technology." 89 Fed. Reg. at 21982. EPA also provided for an extended timeline to phase out asbestos-containing gaskets. *See id.* at 21983. While the Chemistry Councils believe that certain other provisions of the Final Rule are unlawful and thus, filed their own petitions for review of the Final Rule, they also have a vital interest in intervening in the two cases filed by Petitioners USW and ADAO to demonstrate that their likely argument—that EPA should make it even harder for companies such as the

---

[5] https://www.regulations.gov/comment/EPA-HQ-OPPT-2021-0057-0397.

[6] https://www.regulations.gov/comment/EPA-HQ-OPPT-2021-0057-0486.

[7] *Available at* https://www.regulations.gov/comment/EPA-HQ-OPPT-2021-0057-0490.

Chemistry Councils' members to transition away from chrysotile asbestos diaphragms and asbestos-containing gaskets, thereby denying their members of the "reasonable transition period" that TSCA § 6(d) mandates—are without merit. *See* 15 U.S.C. § 2605(d).

## ARGUMENT

The Chemistry Councils have a direct and substantial interest in this litigation to protect their member companies and their interests. Their members' interests would be impaired by a ruling in favor of Petitioners USW and ADAO, which would impact their ability to complete the transition away from chrysotile asbestos in a reasonable timeframe. The Chemistry Councils' interests in this case are not adequately protected by the existing parties and may be harmed by a favorable ruling for Petitioners. The Court should grant the Chemistry Councils' motion for leave to intervene as respondents in these consolidated cases because they meet the standard for intervention in petition for review proceedings in this Court. At the very least, the Chemistry Councils should be granted permissive intervention to provide their members' perspective as regulated entities.

## I. The Chemistry Councils Satisfy the Standards for Intervention as of Right.

Federal Rule of Appellate Procedure 15(d) permits intervention in a petition for review proceeding where a proposed intervenor seeks to intervene "within 30 days after the petition for review is filed" and concisely states an adequate

"interest" and "grounds for intervention" in the appeal. Fed. R. App. Proc. 15(d). In applying the standard for intervention, this Court looks to the principles underlying intervention in Rule 24 of the Federal Rules of Civil Procedure. *See, e.g.*, *Sierra Club v. Espy*, 18 F.3d 1202, 1204–05 (5th Cir. 1994); *see also Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., AFL-CIO, Local 283 v. Scofield*, 382 U.S. 205, 216–17 n.10 (1965). A party may intervene as of right if it: (1) timely moves to intervene; (2) has a legally protected interest in the action; (3) shows that disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) demonstrates that existing parties may not adequately represent its interests. *Richardson v. Flores*, 979 F.3d 1102, 1105 (5th Cir. 2020); *see also* Fed. R. Civ. P. 24(a).[8]

"Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015) (internal quotation marks and citation omitted). At bottom, "[f]ederal courts should allow intervention where no one would be hurt and the

---

[8] With respect to USW's and ADAO's petitions for review, the Chemistry Councils do not seek relief beyond that sought by EPA: namely, denial of those petitions. Thus, they need not establish Article III standing. *See Va. House of Delegates v. Bethune-Hill*, 587 U.S. ----, 139 S. Ct. 1945, 1951 (2019); *Little Sisters of Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020).

greater justice could be attained." *Id.* at 657 (internal quotation marks and citation omitted).

As explained more fully below, the Chemistry Councils satisfy all four requirements for intervention as of right.

**A.    The Chemistry Councils' Motion is Timely.**

Both USW and ADAO filed their petitions for review in the D.C. Circuit on April 19, 2024. This motion is timely because the Chemistry Councils are filing it within the time allotted. *See* Fed. R. App. P. 15(d) (intervention motion due within 30 days after the petition is filed); *see also* 5th Cir. R. 15.5 ("A motion to intervene under Fed. R. App. P. 15(d) should be filed promptly after the petition for review of the agency proceeding is filed, but not later than 14 days prior to the due date of the brief of the party supported by the intervenor."). The Chemistry Councils seek intervention at an early stage, before the Court has set a schedule for merits briefing. Moreover, the 60-day window for filing petitions of review of the Final Rule has not yet closed. *See* 15 U.S.C. § 2618(a). For these reasons, granting this motion will not disrupt or delay any proceedings.

**B.    The Chemistry Councils' Members Have an Interest Relating to the Subject of This Proceeding That May as a Practical Matter Be Impaired by the Outcome of This Case.**

A party seeking intervention need only claim a legally protectable interest that is "of the type that the law deems worthy of protection, even if the intervenor

does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (citing *Texas*, 805 F.3d at 659) (discussing examples of legally protectable interests). This Court has interpreted the interest and impairment to require that a party show that it has a pecuniary or property interest that satisfies Rule 24(a)(2) requirements and, if it cannot intervene, there is a possibility its interest could be "impaired or impeded." *Id.* at 307. All that is required to satisfy the impairment prong is that the "potential to impair" the Chemistry Councils' interests. *Ross v. Marshall*, 426 F.3d 745, 761 (5th Cir. 2005).

Here, the Chemistry Councils' members have important interests that could be impaired by the outcome of this case. Their members in the chlor-alkali industry use chrysotile asbestos in their production processes and are directly subject to the requirements of the Final Rule. Their members rely on the use of chrysotile asbestos-containing diaphragms to produce chlorine and sodium hydroxide from a salt solution through electrolysis. *See* ACC CP Comments at 3. Their members also use asbestos-containing gaskets in certain chemical manufacturing processes. *See* ACC Comments at 13; *see also* Coalition Comments at 1, 4. The Final Rule directly affects the Chemistry Councils' members because it (1) prohibits the manufacture (including import), processing, distribution in commerce, and commercial use of chrysotile asbestos for chrysotile asbestos diaphragms for use in

the chlor-alkali industry and asbestos-containing gaskets in chemical production; (2) establishes staggered compliance deadlines for companies that use chrysotile asbestos diaphragms; and (3) establishes a phase-out of the use of asbestos-containing gaskets. Because of the direct impact of the Final Rule on the Chemistry Councils' members, those members have "legally protectable property interests" in the outcome of this action. *Sierra Club*, 18 F.3d at 1207.

If Petitioners succeed in challenging the "5-8-12" staggered phase-out period in the Final Rule, *see* 89 Fed. Reg. at 21981, or the phase-out timeline for asbestos-containing gaskets, *see id.* at 21983, that would deprive the Chemistry Councils' members of a reasonable transition period to minimize disruptions at impacted facilities during the costly process of converting to non-asbestos technologies. Such an outcome would run contrary to TSCA § 6(d)'s mandate that EPA "shall . . . provide for a reasonable transition period" in any risk management rule issued under TSCA § 6(a). *See* 15 U.S.C. § 2605(d)(1)(E). Disposition of USW's and ADAO's challenges to the Final Rule thus have the potential to impair or impede the Chemistry Councils' interests.

For these reasons, the Chemistry Councils meet the interest and impairment requirements for intervention as of right.

**C.    Existing Parties Do Not Adequately Represent the Chemistry Councils' Interests.**

The Chemistry Councils readily meet the inadequate representation requirement. They need only show that "the representation of [its] interests 'may be' inadequate," not that it "will be, for certain, inadequate." *Texas*, 805 F.3d at 661 (internal quotation marks and citation omitted). Their burden to make such a showing is "minimal." *Sierra Club*, 18 F.3d at 1207 (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)); *see also Berger v. N.C. State Conf. of NAACP*, 597 U.S. 179, 195 (2022) (requirement "present[s] proposed intervenors with only a minimal challenge").

Here, the Chemistry Councils seek to intervene in support of EPA in the petitions for review filed by USW and ADAO. Neither of those Petitioners nor EPA can adequately represent the Chemistry Councils' interests. As demonstrated by Petitioners' comments to the proposed Final Rule, their likely arguments in this suit diverge from the Chemistry Councils' interests. Nor are the Chemistry Councils' interests fully aligned with EPA's, as evidenced by the fact that the Chemistry Councils filed their own petitions for review of certain aspects of the Final Rule. Although this Court has recognized "presumptions of adequate representation" where the intervenor "has the same ultimate objective as a party" or a party is "a governmental body or officer charged by law with representing the interests of the intervenor," those presumptions are rebutted here because the

difference between the Chemistry Councils' and the government's interests and duties "*may* lead to divergent results." *La Union del Pueblo Entero*, 29 F.4th at 308 (internal quotation marks and citations omitted).

Congress did not charge EPA in TSCA with representing the chemistry industry's interests. Rather, EPA must balance the chemistry industry's interests with the broader public interest. *See, e.g.*, *Sierra Club*, 18 F.3d at 1208 (concluding that the agency "represent[s] the broad public interest, not just the economic concerns of the timber industry" and based on "the minimal burden," concluding "that [its] representation of the intervenors' interest is inadequate"); *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (per curiam) (concluding that because the Department of Agriculture must represent the broad public interest, "[f]or this reason alone," its interests and those of farmers seeking to intervene "will not necessarily coincide").[9]

---

[9] Other circuits take a similarly broad approach to granting intervention in support of federal defendants. *See, e.g.*, *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002) ("[T]he government's prospective task of protecting not only the interest of the public but also the private interest of the petitioners in intervention is on its face impossible and creates the kind of conflict that satisfies the minimal burden of showing inadequacy of representation.") (internal quotation marks and citation omitted); *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002) ("a federal defendant with a primary interest in the management of a resource" does not have an "interest[] identical to those of an entity with [an] economic interest[] in the use of that resource") (citation omitted); *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44–45 (1st Cir. 1992) ("[A] governmental entity charged by law with

More specifically, EPA's arguments in this case necessarily will focus more on the Agency's institutional interests and duties, whereas the Chemistry Councils' arguments will focus more narrowly on the potentially harmful consequences that revisions to the Final Rule could have on their members' operations and commercial interests, including on the ability to complete capital-intensive conversions to non-asbestos technology within a reasonable timeframe. Furthermore, in responding to Petitioners' likely challenges to the phase-out provisions in the Final Rule, EPA and the Chemistry Councils might present divergent arguments concerning the precise contours of EPA's phase-out authority in TSCA § 6(d) or EPA's interpretations of key terms within that section. Finally, EPA's and the Chemistry Councils' distinct interests may cause them to disagree about the prospects of settling USW's or ADAO's petitions or how to proceed post judgment. *See Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015) ("It is apparent the Commission and Crossroads hold different interests, for they disagree about . . . post-judgment strategy.").

In short, there may not be convergence of views as to how best to respond to Petitioners' challenges, making the Chemistry Councils' participation non-

---

representing the public interest of its citizens might shirk its duty were it to advance the narrower interest of a private entity.").

duplicative and useful to the Court. *See La Union del Pueblo Entero*, 29 F.4th at 309.

## II. Alternatively, the Chemistry Councils Should Be Granted Permissive Intervention.

The Chemistry Councils also meet the requirements for permissive intervention. A party qualifies for permissive intervention when it shows that its claim or defense shares a common question of law or fact with the main action. *Richardson*, 979 F.3d at 1105. In determining whether to permit such a party to intervene, a key consideration is whether the proposed intervention would "unduly delay or prejudice the adjudication of the . . . rights" of the original parties. Fed. R. Civ. P. 24(b). Indeed, permissive intervention does not require a showing of inadequacy of representation nor a direct interest in the subject matter of the action. *See SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940). As discussed above, however, the Chemistry Councils can readily make such a showing and have such an interest here.

Permissive intervention is warranted here for several reasons. First, the Chemistry Councils' motion is timely because it is filed at the earliest feasible stage and will not cause undue delay or prejudice to the parties, particularly because EPA has not yet lodged the administrative record and this Court has not issued a schedule for merits briefing. Second, the Chemistry Councils' defense of aspects of the challenged EPA rule presents questions of law and fact in common

with the underlying petition that would respond directly to Petitioners USW's and ADAO's claims. Third, the Chemistry Councils' unique perspective as associations representing companies engaged in the business of chemistry will aid this Court's understanding of the underlying legal and factual issues involved and assist in the efficient resolution of this case. For these reasons, and in the alternative, this Court should grant the Chemistry Councils permissive intervention.

## <u>CONCLUSION</u>

For the foregoing reasons, the Chemistry Councils respectfully request leave to intervene in these consolidated cases.

Dated: May 20, 2024

Respectfully submitted,

*/s/ David Y. Chung*

Allison Wisk Starmann
Laura Gooding
AMERICAN CHEMISTRY COUNCIL
700 2nd Street, NE
Washington, DC 20002

David Y. Chung
Warren Lehrenbaum
Mary Marston
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 624-2500
dchung@crowell.com

*Counsel for the American Chemistry Council*

*Counsel for American Chemistry Council and Georgia Chemistry Council*

Aaron M. Streett
Beau Carter
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, Texas 77002
(713) 229-1855 (phone)
aaron.streett@bakerbotts.com

Robert J. Karl
Eric B. Gallon
Porter, Wright, Morris & Arthur LLP
41 S. High Street, Suite 3000
Columbus, Ohio 43215-6194
(614) 227-1925
rkarl@porterwright.com

*Counsel for Texas Chemistry Council*

*Counsel for the Ohio Chemistry Technology Council*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned hereby certifies:

1.    The foregoing motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 4,135 words, excluding those parts exempted by Fed. R. App. P. 27(a)(2)(B). As permitted by Federal Rule of Appellate Procedure 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

2.    This motion also complies with the typeface and type style requirements of Fed. R. App. P. 27(d)(1)(E) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Times New Roman font.

*/s/ David Y. Chung*
David Y. Chung

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing through the CM/ECF system, which will send a notice of filing to all registered CM/ECF users.

_/s/ David Y. Chung_____
David Y. Chung

Dated:  May 20, 2024