# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

## No. 24-60193
_____

TEXAS CHEMISTRY COUNCIL; AMERICAN CHEMISTRY COUNCIL; GEORGIA
CHEMISTRY COUNCIL; ASBESTOS DISEASE AWARENESS ORGANIZATION; UNITED
STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED
INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO; OHIO
CHEMISTRY TECHNOLOGY COUNCIL,

*Petitioners*,

*versus*

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

*Respondent*,

CONSOLIDATED WITH

_____

## No. 24-60281
_____

AMERICAN PUBLIC HEALTH ASSOCIATION; COLLEGIUM RAMAZZINI; LOCAL F-116
(VANDENBERG PROFESSIONAL FIREFIGHTERS), INTERNATIONAL ASSOCIATION OF
FIRE FIGHTERS; LOCAL F-253 (FORT MYER PROFESSIONAL FIREFIGHTERS),
INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS; THE FEELGOOD FOUNDATION;
HENRY A. ANDERSON, *Medical Doctor*; BRAD BLACK, *Medical Doctor*; BARRY
CASTLEMAN, *DOCTOR* OF SCIENCE; RAJA FLORES, *Medical Doctor*; ARTHUR FRANK,
*Medical Doctor,* DOCTOR OF PHILOSOPHY; PHIL LANDRIGAN, *Medical Doctor*,
MASTER OF SCIENCE; RICHARD LEMEN, DOCTOR OF PHILOSOPHY, MASTER OF
SCIENCE IN PUBLIC HEALTH; STEVEN MARKOWITZ, *Medical Doctor,* DOCTOR OF
PUBLIC HEALTH; JACQUELINE MOLINE, *Medical Doctor*, MASTER OF SCIENCE;
CELESTE MONFORTON, DOCTOR OF PUBLIC HEALTH, MASTER OF PUBLIC HEALTH;

CHRISTINE OLIVER, *Medical Doctor*, MASTER OF PUBLIC HEALTH, MASTER OF SCIENCE; ANDREA WOLF, *Medical Doctor*, MASTER OF PUBLIC HEALTH,

> *Petitioners*,

*versus*

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL REGAN, *Administrator, United States Environmental Protection Agency*,

> *Respondents*,

CONSOLIDATED WITH

_____

No. 24-60333

_____

OLIN CORPORATION,

> *Petitioner*,

*versus*

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL REGAN, ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

> *Respondent.*

Petitions for Review of an Order of the
Environmental Protection Agency
Agency No. 40 CFR Part 751
Agency No. 80 Fed. Reg. 21970

_____

**MOTION OF PETITIONERS ASBESTOS DISEASE AWARENESS ORGANIZATION et al TO RECONSIDER OCTOBER 15, 2024 ORDER GRANTING MOTION OF ALLIANCE FOR AUTOMOTIVE INNOVATION TO FILE AN AMICUS BRIEF IN SUPPORT OF INSUSTRY PETITIONERS**

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this court may evaluate possible disqualification or recusal.

(1)     Asbestos Disease Awareness Organization (ADAO) (petitioner in No. 24-60193)

(2)     Linda Reinstein (President ADAO)

(3)     Henry A. Anderson, MD (petitioner in No. 24-60281)

(4)     Brad Black, MD (petitioner in No. 24-60281)

(5)     Barry Castleman, ScD (petitioner in No. 24-60281)

(6)     Raja Flores, MD (petitioner in No. 24-60281)

(7)     Arthur Frank, MD, PhD (petitioner in No. 24-60281)

(8)     Phil Landrigan, MD, MSc (petitioner in No. 24-60281)

(9)     Richard Lemen, PhD, MSPH (petitioner in No. 24-60281)

(10)    Steven Markowitz, MD, DrPH (petitioner in No. 24-60281)

(11)    Jacqueline Moline, MD, MSc (petitioner in No. 24-60281)

(12)    Celeste Monforton, DrPH, MPH (petitioner in No. 24-60281)

(13)    Christine Oliver, MD, MPH, MSc (petitioner in No. 24-60281)

(14)    Andrea Wolf, MD, MPH (petitioner in No. 24-60281)

(15)    American Public Health Association (petitioner in No. 24-60281)

(16)    Dr. Georges Benjamin (Executive Director of APHA)

(17)    Collegium Ramazzini (petitioner in No. 24-60281)

(18)    IAFF Local F-116 (Vandenberg Professional Firefighters)(petitioner
        in 24-60193)

(19)    IAFF Local F-253 (Fort Myer Professional Firefighters)(petitioner in
        No. 24-6028)

(20)    Mike Jackson. President of IAFF Local F-253

(21)    The FealGood Foundation (petitioner in No. 24-60281)

(22)    Robert M. Sussman, Sussman & Associates (Counsel for petitioner
        ADAO in Nos. 24-60193 and petitioners in24-60281)

(23)    United Steel, Paper and Forestry, Rubber, Manufacturing,
        Energy, Allied Industrial and Service Workers International Union,
        AFL- CIO/CLC  (USW)(Petitioner in 24-60193)

(24)    Occupational Safety & Health Law Project, LLC (Counsel for USW)

(25)    Randy S. Rabinowitz (Counsel for USW)

(26)    Victoria L. Bor (Counsel for USW)

(27)    Nathan Finch (Counsel for USW)

(28)    Motley Rice (Counsel for USW

(29)    Texas Chemistry Council (TCC) (Petitioner)

(30)    Baker Botts L.L.P. (TCC Counsel)

(31)    Carter, Beau (TCC Counsel)

(32)    Aaron M. Streett (TCC counsel)

(33)    American Chemistry Council (ACC) (Petitioner)

(34)    Georgia Chemistry Council (GCC) (Petitioner)

(35)    Crowell and Moring (Counsel for ACC and GCC)

(36)    David Chung (Counsel for ACC and GCC)

(37)    Warren Lehrenbaum (Counsel for ACC and GCC)

(38)    United States Environmental Protection Agency (Respondent)

(39)    Regan, Michael S., Administrator, United States Environmental
Protection Agency (Respondent)

(40)    Garland, Merrick B., Attorney General, United States
Department of Justice (Respondents' Counsel)

(41)    Todd Kim, Assistant Attorney General, US Department of
Justice (Respondents' Counsel)

(42)    Laura Glickman, US Department of Justice (Respondents'
Counsel)

(43)    Prieto, Jeffrey M. (General Counsel for Respondent United
States Environmental Protection)

(44)    Olin Corporation (petitioner in No. 24-60333)

(45)    Hunton Andrews Kurth LLP (counsel for Olin)

(46)    Elbert Lin (counsel for Olin)

(47)    Matthew Z. Leopold (counsel for Olin)

(48)    Alliance for Automotive Innovation

(49)    Gibson, Dunn and Crutcher (counsel for Alliance)

(50)    David Fotouhi (counsel for Alliance)

(51)    Nathaniel J. Tisa (counsel for Alliance)

(52)  Chamber Of Commerce of The United States Of America

(53)  National Federation of Independent Business Small Business Legal Center, Inc.

(54)  Vinson & Elkins LLP (counsel for U.S. Chamber and National Federation)

(55)  Jeremy C. Marwell LLP (counsel for U.S. Chamber and National Federation)

(56)  Garrett T. Meisman (counsel for U.S. Chamber and National Federation)

(57)  Andrew R. Varcoe (counsel for U.S. Chamber)

(58)  Audrey Beck (counsel for U.S. Chamb

Respectfully Submitted,

\_

/s/ Robert M. Sussman
Robert M. Sussman
*Counsel for Petitioner Asbestos Disease Awareness Organization and Petitioners in No. 24-60*

**INTRODUCTION**

Petitioners Asbestos Disease Awareness Organization ("ADAO") and seventeen public health associations, local firefighter unions, scientists and physicians move for reconsideration of the Court's October 15, 2024 order granting the motion of the Alliance for Automotive Innovation ("Alliance") to file an amicus curiae brief in support of the chemical industry petitioners in this case. Document 121-1.

**I.     Reconsideration of the Order Granting the Motion Is Warranted under the Specific Circumstances Present Here**

The Alliance filed its motion for leave to file its amicus brief on October 7, 2024.  Document 121-1. Rule 27(a)(3)(A) of the Federal Rules of Appellate Procedure states that a "response must be filed within 10 days after service of the motion." While the Rule allows the court to "[s]horten[] or extend[] the time," the ADAO petitioners had no notice that that Court might act before the 10-day deadline even though the Court was informed by the Alliance (motion at 1 n.2) that that these petitioners "did not consent to the filing" of the proposed amicus brief.[1]

As described below, reconsideration is warranted so that the Court can take into account extensive caselaw holding that courts should disallow amicus briefs that present new arguments and seek relief that go beyond the positions of the

---

[1] Petitioners had in fact planned to file their opposition to the Alliance motion this afternoon.

existing parties. Numerous courts have rejected amicus briefs on this basis and there is a compelling need for the Court to do so here.

The new issues raised by the Alliance are not minor but represent the great bulk of its brief. The brief challenges at length interpretations of the Toxic Substances Control Act ("TSCA") and long-standing tenets of asbestos science that none of the petitioners are disputing. Allowing the brief will thus impose substantial burdens on the parties to address complicated legal and scientific issues that the petitioners chose not to pursue. The Court will likewise need to devote considerable time and effort to understanding difficult legal and scientific questions that are not properly part of this case. This would dramatically expand the scope of these consolidated petitions for review, which already involve numerous petitioners and several lengthy briefs. Striking the amicus brief would thus prevent this complex proceeding from becoming unmanageable for the parties and the Court.

The Alliance brief makes the remarkable claim that the Part I rule of the Environmental Protection Agency ("EPA") should be vacated because the Agency's peer review process and risk evaluation were "rigged" by biased peer reviewers. The Alliance asserts that these scientists sought to further their financial interests as experts in personal injury cases by forcing the peer review panel and then agency scientists to adopt extreme scientific interpretations that strengthened

the hands of plaintiffs in asbestos litigation. In making these allegations, the Alliance brief directly targets esteemed scientists who are petitioners in this case and ADAO's own role in the Part 1 rulemaking.

Since the industry petitioners are not claiming that EPA's peer review process and scientific work product were "biased, the Alliance's unproven allegations should not be considered by the Court. However, allowing the amicus brief could open the door to submission of evidence by petitioners and EPA disproving the Alliance's reckless accusations.

## II. Amicus Briefs Should be Disallowed if They Present New Issues Not Raised by the Parties

"Whether to permit a nonparty to submit a brief, as amicus curiae, is, with immaterial exceptions, a matter of judicial grace." *In re Halo Wireless, Inc*. 684 F.3d 581, 596 (5th Cir. 2012). Courts reject amicus briefs if they would not assist the court in its review of the issues presented by the parties. *Ysleta Del Sur Pueblo v. El Paso Cnty. Water Improvement Dist. No. 1,* 222 F.3d 208, 209 (5th Cir. 2000) (per curiam); *Owens v. Louisiana State University,* 702 F.Supp.3d 451 (M.D. La. 2023).

Appellate Rule 29 provides that a motion seeking leave to participate as amicus must state why the matters asserted "are relevant to the disposition of the case." *See* Fed. R. App. P. 29(b)(1), (2). The comments to the Rule note that "the relevance of the matters asserted by an amicus is ordinarily the most compelling

reason for granting leave to file" an amicus brief. Fed. R. App. P. 29, cmt. to paragraph (b).

"[A]n *amicus curiae* is not a party and has no control over the litigation and no right to institute any proceedings in it [;] nor can it file any pleadings or motions in the case." *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F.Supp.2d 1061, 1068 (N.D. Cal. 2005). Moreover, "'[t]he named parties should always remain in control, with the *amicus* merely responding to the issues presented by the parties. . . . An *amicus* cannot initiate, create, extend, or enlarge issues.'" *US v Alkaabi*, 223 F.Supp.2d 583, 593 n.19 (D.N.J. 2023) (quoting *Waste Mgmt., Inc. v. City of York*, 162 F.R.D. 34, 36 (M.D. Pa. 1995)). "'*Id.*

Consistent with this limited role, an amicus may not introduce an issue into a case or seek relief that is not raised or requested by the parties. *See, e.g., Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 97 n.4 (1991) ("[W]e do not ordinarily address issues raised only by *amici*") (citation omitted); *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1145 n.2 (10th Cir. 2000) (striking arguments in amicus brief "that have never been advanced by the parties"); *Cellnet Communs. v. FCC,* 149 F.3d 429, 443 (6th Cir.1998) ("[t]o the extent that the amicus raises issues or make arguments that exceed those properly raised by the parties, [the Court] may not consider such issues"); *United States v. Board of County Commissioners of the County of Otero*, 184 F.Supp.3d 1097, 1116 (D.N.M.

2015) (rejecting an amicus brief because it "both injects a new issue into this case and fails to articulate why the arguments asserted in its proposed brief are relevant to the disposition of this case.")

Since the Court cannot consider issues not raised by the parties, an amicus brief presenting such issues fails to meet the principal prerequisite for amicus status -- "the usefulness of information and argument presented by the potential *amicus curiae* to the court." *Ass'n of Am. Sch. Paper Suppliers v. U.S.*, 683 F.Supp.2d 1326, 1328 (Ct. Int'l Trade 2010).

### III.    Virtually All The Arguments in the Proposed Amicus Brief Are Not Presented in Petitioners' Opening Briefs

The bulk of the Alliance's amicus brief does exactly what these cases prohibit – it seeks to inject numerous new and complicated issues into this case that the existing petitioners have not raised. A comparison of the Alliance's proposed brief with the brief of the industry petitioners underscores the glaring disconnect between their respective positions.

1.    In their opening brief, the chemical industry petitioners address only two of the six chrysotile asbestos conditions of use ("COUs") regulated by the EPA Part 1 rule. Document 41. These two COUs are the use of chrysotile asbestos in the manufacture of chlorine and caustic soda (chlor-alkali production) and the installation of asbestos sheet gaskets in chemical manufacturing facilities. The

industry petitioners do *not* challenge EPA's risk determinations and regulatory requirements for the other four COUs.

2.     By contrast, the principal focus of the amicus brief is EPA's unreasonable risk determination for asbestos brake linings, clutches and gaskets and Part I's ban on importation and use of these products. The Alliance brief discusses these products at length[2] whereas industry petitioners' brief mentions chrysotile asbestos vehicle brakes only once.[3]

3.     The Alliance concedes that "automakers no longer use [chrysotile asbestos parts] in new vehicles—and most, if not all, have not used chrysotile asbestos for nearly 30 years." All. Motion at 3. As the Alliance explicitly acknowledges, its interest in this case is based on its "potential implications for ongoing civil litigation against manufacturers involving allegations related to past uses of chrysotile asbestos three or more decades ago." Id. Given the auto industry's lack of any ongoing commercial involvement in chrysotile asbestos vehicle parts,  it is doubtful that the Alliance has standing to challenge the Part 1 rule directly.  Thus, its apparent goal is to use its amicus status to obtain a favorable court ruling on arguments that it could not make as a petitioner and that

---

[2] See All. Brief at 4,9,10,13,14,15,16,23,24,25,33,34 and 35.
[3] The industry brief simply notes (at 30) that asbestos vehicle parts are one of the six COUs subject to the Part 1 rule.

the petitioners themselves are not pursuing in order to minimize the industry's liability in private litigation.

4. Although the industry petitioners only challenge EPA's determinations of unreasonable risk for chlor-alkali production and sheet gaskets, the Alliance brief attacks that determination for *all* of the six COUs, maintaining that "EPA failed to demonstrate that chrysotile asbestos presents an unreasonable risk of injury under the conditions of use covered by this rulemaking." All. Motion at 4. Thus, while its immediate focus is on "professional and consumer uses of aftermarket and replacement auto parts," the Alliance asks the Court to "vacate the risk evaluation and risk-management rule in their entirety." All. Brief at 35.

5. While the industry's opening brief argues that EPA's determinations of unreasonable risks for chlor-alkali production and sheet gaskets are not supported by the record, this argument is based only on alleged flaws in EPA's analysis of worker exposure levels. Ind. Brief. at 43-48. Chemical industry petitioners do *not* take issue with EPA's analysis of epidemiological studies and other data demonstrating a causal link between chrysotile asbestos and lung cancer, mesothelioma and other serious diseases and the levels of hazard and risk that these data project.

6. By contrast, the Alliance asserts numerous flaws in EPA's extensive review of the database on chrysotile asbestos' harmful effects, directly calling into

question the modeling EPA used to determine the level of risk to mechanics and consumers who service asbestos brakes and other vehicle parts. All. Br. at 26-29. This broadside attack on the Agency's science relies heavily on the comments of Dr. Dennis Paustenbach, a well-known defense expert who has testified for the auto industry in personal injury cases involving brake linings. Id. at 13,15,18,19, 27, 28 and 29. Dr. Paustenbach's positions are outside the scientific mainstream and highly controversial and, if allowed, would reopen broadly accepted findings about the health impacts of chrysotile asbestos adopted decades ago by government agencies and public health bodies in the US and globally.

7.     Thus, for example, the amicus brief argues that EPA "ignored critical distinctions between long- and short-fiber chrysotile-asbestos exposure" and "overestimated hazard by assuming *zero* background risk of mesothelioma, using data that reflected both amphibole- and chrysotile-asbestos exposure, and applying an unjustifiable multiplier to the modelled incidences of mesothelioma" (emphasis in original). Id. at 5. The Alliance brief also challenges EPA's selection of the best studies to quantify risk, claiming that it erroneously "estimated hazard and exposure to consumers from DIY brake changes using models of adverse-health outcomes in textile mills and exposure estimates from a study of professional auto-shop mechanics in the 1960s." Id. at 23. This, the Alliance asserts, shows that "EPA was only able to predict the theoretical risk set out in the evaluation by misstating

data, cherry-picking studies, and multiplying the resulting outputs by unsound adjustment factors." Id. at 21.

8.      Relying again on Dr. Paustenbach's opinions, the Alliance Brief also faults EPA for failing to recognize that "amphibole varieties of asbestos 'are at least 100-fold more potent for causing mesothelioma than chrysotile." Id. 28. This assertion reflects long-standing industry claims that chrysotile asbestos is far less hazardous than the five other recognized asbestos fibers and therefore studies of the "more potent" amphibole varieties are not relevant to determining the risks of chrysotile exposure.[4] This effort to assign relative potency factors to the different fibers with chrysotile posing by far the smallest risk was fully debated and rejected by EPA's Science Advisory Board in 2008[5] and has since been abandoned by the Agency and other expert bodies. Yet the Alliance apparently seeks to resurrect this discredited theory and make it central to its attack on the chrysotile risk evaluation. The Alliance is again alone: the chemical industry petitioners have not asked the Court to consider the relative risks of the different asbestos fibers or any other aspect of the vast literature on the health effects of asbestos.

---

[4] In addition to chrysotile, the recognized fibers are  crocidolite, amosite, anthophyllite, tremolite, and actinolite
[5] SAB Consultation on EPA's *Proposed Approach for Estimation of Bin-Specific Cancer Potency Factors for Inhalation Exposure to Asbestos,* November 14, 2008. Document Display | NEPIS | US EPA.

9. Examining these convoluted and arcane claims would require a painstaking review of the thousands of pages of scientific data and analysis in the record generated by experts at EPA as well as third-party commenters. This resource-intensive task would place heavy burdens on the parties and the Court and would have no value in addressing the petitions for review since none of the petitioners has raised the scientific concerns that the Alliance wants the Court to consider.

10. The Alliance also claims that "EPA failed to provide for unbiased peer review of its risk evaluation because certain members of the TSCA Science Advisory Committee on Chemicals ('SACC') and ad hoc peer reviewers selected for this rulemaking have a personal financial and ideological interest in maximal regulation of chrysotile asbestos." All. Motion at 5. These claims of professional impropriety target two petitioners in this case who served on the SACC. According to the Alliance brief, these scientists "push[ed] EPA to adopt worst-case assumptions at every turn leading to sweeping findings of unreasonable risk . . . ensur[ing] that plaintiffs in other litigation could use EPA's risk evaluation to support claims for alleged exposures decades in the past." All. Brief at 20.

11. This allegation that two SACC members "rigged" the SACC's recommendations and then manipulated the EPA risk evaluation to serve their personal financial interest as plaintiffs' experts is a fabrication of the Alliance's

counsel. To make such inflammatory accusations without proof is both unprofessional and irresponsible and is itself a reason to reject the Alliance amicus brief.

12.     All members of the SACC were carefully screened for conflicts of interest by EPA.  Chemical Safety Advisory Committee Ethics Training | US EPA. Moreover, while one SACC member may have also served on ADAO's Scientific Advisory Committee, All. Brief at 30 n. 5, members of that Committee are recognized experts with impressive academic and professional credentials and their role is to provide ADAO with disinterested scientific advice.  It is simply not credible to allege that merely because a SACC member contributed to ADAO's scientific work, he or she deliberately manipulated the findings of the SACC in order to serve ADAO's advocacy agenda.

13.     Equally important, it is not obvious why scientists who are "actively push[ing] for a ban on asbestos" should be disqualified from serving on the SACC. Their views on asbestos policy are not directly tied to their scientific opinions and support for a chrysotile asbestos ban is hardly controversial: such a ban has been endorsed by  members of Congress, authoritative public health organizations and governments around the world. Nor is there any reason why testifying for plaintiffs in personal injury litigation should be a bar to SACC membership. Dr. Paustenbach – whose opinions are cited approvingly throughout the Alliance brief -- also

testified as an expert witness for Ford Motor Company in personal injury litigation involving asbestos brake linings.[6] Yet Dr. Paustenbach was recently selected by EPA as a peer reviewer for the second stage of its asbestos risk evaluation focusing on legacy asbestos, an appointment that the Alliance apparently did not find objectionable.[7]

14.     Since no party in this case has accused the SACC of bias and claimed that its report "tainted" the Part 1 rule, there is no need for the Court to consider (and the parties to address) the Alliance's reckless claims of bias in the SACC's deliberations and its personalized attacks on ADAO and scientists who are petitioners in this case.  However, should the Court entertain the  Alliance allegations, the ADAO petitioners and EPA may feel compelled to present evidence supporting the integrity and credibility of the SACC process and development of the Part 1 risk evaluation.

15.     The Alliance brief also challenges the Part 1 rule for "disregard[ing] express limits imposed by the 2016 amendments on the agency's power to regulate 'replacement parts' and 'articles.'" All. Brief at 32-34. The goal of this argument is to require EPA to recognize aftermarket brakes and gaskets as" replacement parts" for "complex" goods under 15 U.S.C. § 2605(c)(2)(D)(i) and to reexamine its

---

[6] *Dempster v. Lamorak Insurance Company, et al*, (No. 2:2020cv00095 E.D. La. 2020) ECF 250.
[7] EPA-HQ-OPPT-2023-0309-0020_content (4).pdf

decision not to exempt them from the Part 1 rule. This argument is unique to the Alliance. The industry petitioners nowhere address application of the TSCA section 6 "replacement parts" exemption.

16.     As petitioners discussed in their opening briefs, a major goal of the 2016 TSCA amendments was to strengthen TSCA's protections against chemicals presenting unreasonable risks by removing the requirement in the original law to adopt the "least burdensome" alternative in rules under section 6. Surprisingly, however, the Alliance seeks to argue that "TSCA largely revives the 'least burdensome' requirement for regulating consumer articles." All. Brief at 34-35. This novel claim, which is contrary to the wording and legislative history of the 2016 amendments, is solely focused on chrysotile asbestos brakes and other friction products in vehicles and is also outside the scope of the chemical industry petitioners' opening brief.

## CONCLUSION

Petitioners ADAO et al respectfully request that the Court reconsider its order granting the Alliance's motion to file an amicus brief and issue a modified order denying the motion and striking the Brief. If reconsideration is denied, the Court should enlarge the word limits for the intervenor brief of petitioners ADAO et al by 9000 words to enable these petitioners to respond meaningfully to the Alliance's arguments.

Respectfully Submitted,

/s/Robert M. Sussman
ROBERT M. SUSSMAN
Sussman & Associates
3101 Garfield St. NW
Washington DC 20008
bobsussman1@comcast.net
202-716-0118

Lucas Williams
Lexington Law Group, LLP
503 Divisadero Street
San Francisco, CA 94117
(415) 913-7800
lwillims@lexlawgroup.com

*Attorneys for petitioners Asbestos Disease Awareness Organization. American Public Health Association, Collegium Ramazzini, Local F-116 (Vandenberg Professional Firefighters), International Association of Fire Fighters; Local F-253 (Fort Myer Professional Firefighters), International Association of Fire Fighters; The FealGood Foundation; Henry A. Anderson, MD; Brad Black, MD; Barry Castleman, ScD; Raja Flores, MD; Arthur Frank, MD, PhD; Phil Landrigan, MD, MSc; Richard Lemen, PhD, MSPH; Steven Markowitz, MD, DrPH; Jacqueline Moline, MD, MSc; Celeste Monforton, DrPH, MPH; Christine Oliver, MD, MPH, MSc; and Andrea Wolf, MD, MPH.*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this Opposition complies with the requirements of Federal Rule of Appellate Procedure 27(d) because it has been prepared in 14-point Times New Roman, a proportionally spaced font. I further certify that this Opposition complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 2997 words, according to the count of Microsoft Word.

/s/ *Robert M. Sussman*
Robert M. Sussman
*Counsel for Petitioners ADAO e*t al

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 15, 2024, I electronically filed the foregoing Brief with the Clerk of Court by using the appellate CM/ECF system. All participants who are registered CM/ECF users will be served by the Court's CM/ECF system.

/s/ *Robert M. Sussman*
Robert M. Sussman
*Counsel for Petitioners ADAO et al*