## No. 24-60193

---

## In The United States Court of Appeals
## for the Fifth Circuit

---

Texas Chemistry Council; American Chemistry Council; Georgia Chemistry Council; Asbestos Disease Awareness Organization; United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO; Ohio Chemistry Technology Council,

*Petitioners,*

v.

United States Environmental Protection Agency,

*Respondent.*

---

**Consolidated with**

**No. 24-60281**

American Public Health Association; Collegium Ramazzini; Local F-116 (Vanderberg Professional Firefighters), International Association of Fire Fighters; Local F-253 (Fort Myer Professional Firefighters), International Association of Firefighters; The FeelGood Foundation; Henry A. Anderson, *Medical Doctor*; Brad Black, *Medical Doctor*; Barry Castleman, *Doctor of Science*; Raja Flores, *Medical Doctor*; Arthur Frank, *Medical Doctor, Doctor of Philosophy*; Phil Landrigan, *Medical Doctor, Master of Science*; Richard Lemen, *Doctor of Philosophy, Master of Public Health*; Steven Markowitz, *Medical Doctor, Doctor of Public Health*; Jacqueline Moline, *Medical Doctor,*

*Master of Public Health*; Celeste Monforton, *Doctor of Public Health, Master of Public Health*; Christine Oliver, *Medical Doctor, Master of Public Health, Master of Science*; Andrea Wolf, *Medical Doctor, Master of Public Health*,

*Petitioners*,

v.

United States Environmental Protection Agency; Michael Regan, *Administrator, United States Environmental Protection Agency*;

*Respondents.*

———————————

**Consolidated with**

**No. 24-60333**

Olin Corporation,

*Petitioner*,

v.

United States Environmental Protection Agency; Michael Regan, *Administrator, United States Environmental Protection Agency*,

*Respondents.*

———————————————————————————

**REPLY OF PETITIONER-INTERVENOR ASBESTOS DISEASE AWARENESS ORGANIZATION IN SUPPORT OF ITS MOTION TO RECONSIDER THE COURT'S ORDER OF FEBRUARY 14, 2025 HOLDING THIS CASE IN ABEYANCE AND TO SET IT FOR ORAL ARGUMENT AT THE SAME TIME AS NO. 24-60256**

**INTRODUCTION**

The Environmental Protection Agency (EPA) and industry petitioners do not offer persuasive reasons why this case should be held in abeyance even though the Court properly withdrew its identical abeyance order in *East Fork*. They implicitly concede that the Court in *East Fork* correctly decided that the importance of promptly resolving the legal issues raised by EPA's methylene chloride rule outweighed the need for reconsideration of the rule by the new Administration. Yet they paradoxically claim a different balance should be struck for the Part 1 asbestos rule at issue here – even though both rules were based on the same statutory provisions and present the same overriding issues of first impression about the proper interpretation of the Toxic Substances Control Act (TSCA).

The distinctions that EPA and industry seek to draw between the two cases are strained and disingenuous. First, as the Asbestos Disease Awareness Organization (ADAO) shows below, industry is in fact making virtually identical legal arguments in both cases. Thus, while the underlying administrative records may differ, the Court's decision in *East Fork* will have a major bearing on the disposition of this case and inform decisions of the new Administration about revising both the asbestos and methylene chloride rules and other final TSCA risk

management rules now under review. It thus makes no sense for the Court to decide *East Fork* but to put this case on hold.

Second, neither EPA nor the industry petitioners have pointed to any prejudice from setting this case and *East Fork* for oral argument at the same time and assigning them to the same panel. Contrary to EPA, putting the two cases on the same track will not require "expedited briefing." EPA Opposition (ECF 189) at 5. EPA has already filed its opposition brief in this case and the petitioner-intervenors have completed all briefing save for the filing of replies. EPA counsel will need to prepare for oral argument in *East Fork* in any event and it is simply not credible that the added burden of oral argument in *Texas Chemistry Council* will "require EPA to divert agency resources from determining its administrative approach" to the Part 1 rule. *Id*. The industry petitioners – which include the American Chemistry Council (ACC), a party in *East Fork* – will likewise experience no material inconvenience.

On the other hand, decoupling the two cases and putting *TCC* on hold will create more legal uncertainty for the parties and EPA and burden the Court and litigants with unnecessary costs and delay.  The equities thus strongly favor reconsidering and withdrawing the February 14 abeyance order in this case and combining *TCC* and *East Fork* for oral argument and decision.

I.     ***East Fork* and *TCC* Present Overlapping and Interrelated Legal Issues that Warrant Concurrent Judicial Resolution**

Surprisingly, EPA claims that the issues raised by *TCC* "are record based and do not implicate questions of pure statutory interpretation." and denies that these issues "overlap with industry's challenge to EPA's risk evaluation and risk management rule for methylene chloride at issue in *East Fork*." EPA Opp. at 7. These assertions ignore the common statutory framework governing the two cases and the nearly identical legal issues that the parties' briefs present to the Court.

In 2016, Congress substantially strengthened TSCA, the nation's principal law for addressing unsafe chemicals. Pub. L. No. 114-182, 130 Stat. 448 (June 22, 2016). These amendments sought to enhance TSCA's core chemical regulatory authorities and increase protections against substances that threaten health and the environment. Asbestos and methylene chloride were selected in late 2016 for initial risk evaluations under the new law and progressed through the multi-step TSCA process in parallel. 81 Fed. Reg. 91927 (December 19, 2016). Evaluations were completed for the two substances in 2020 and determined that each was a carcinogen and caused other harmful health effects. Based on these determinations, EPA published final risk management rules a few weeks apart (on March 28 and May 8, 2024). 89 Fed. Reg. 21970 (asbestos); 89 Fed. Reg. 39254 (methylene chloride). These rules -- the first EPA promulgated under the amended law -- ban uses determined to present unreasonable risks of injury to the health of workers

and consumers and place limits on exposure and other measures to protect workers from harm.

EPA relied on the same TSCA provisions for both rules – section 6(b), which governs risk evaluations to determine whether chemicals present unreasonable risks of injury; sections 6(a) and 6(c), which govern rulemakings to regulate chemicals which present such risks; and section 9(a), which addresses when and how EPA must refer its determinations of unreasonable risk to other agencies such as the Occupational Safety and Health Administration (OSHA). 15 U.S.C. §§2605(a)(c), 2608(a).

As the first judicial interpretation of the new TSCA risk evaluation and risk management framework, this Court's decisions on the two EPA rules will necessarily examine these core statutory provisions in light of the law's purposes and structure. The briefs of the industry parties in the two cases tee up the following cross-cutting legal issues for the Court's consideration:

- The critical TSCA term "unreasonable risk of injury to health and the environment" in TSCA sections 6(a) and (b) is not defined in the law. How should this central critical phrase be interpreted and what type and level of evidence must EPA present to support an unreasonable risk determination? *TCC* Industry Opening Br. (ECF 110-1) at 5, 18-20, 42-54; *East Fork* Industry Opening Br. (ECF 100) at 17-39.

- Upon making a determination of unreasonable risk, section 6(a) of TSCA provides a menu of possible restrictions EPA may impose and directs EPA to regulate the chemical using these options "to the extent necessary so that the chemical substance or mixture no longer presents such [unreasonable] risk." What constraints does the phrase "to the extent necessary" place on EPA's regulatory discretion? For example, what criteria may EPA apply when deciding whether to address health risks to workers by prohibiting all or some uses of the chemical as opposed to merely prescribing workplace exposure limits? *TCC* Ind. Br. at 6, 20-21, 26-27, 62-70; *East Fork* Ind. Br. at 51-57.

- Section 9(a) of TSCA directs EPA to make a referral to another agency if it "determines, in the Administrator's discretion, that [an unreasonable] risk may be prevented or reduced to a sufficient extent by action taken under a Federal law" administered by that agency (emphasis added). What is the scope of EPA's discretion when implementing these referral requirements and, specifically, what factors does TSCA allow EPA to consider when deciding whether to refer unreasonable workplace risks to OSHA? *TCC* Ind. Br. at 6, 17-28, 54-62; *East Fork* Ind. Br. at 57-61.

- Does EPA's obligation in section 6(b)(4)(A) to determine a chemical's unreasonable risks "under the conditions of use" require it to assume that use

of personal protective equipment (PPE) by workers is shielding them from unsafe exposure or must EPA determine risks on the assumption that PPE are not used? *TCC* Ind. Br. at 9-12, 29-34, 43-47; *East Fork* Ind. Br. at 29-34.

As the *East Fork* industry petitioners argued in successfully asking the Court to reconsider its abeyance order, the issues of statutory interpretation presented are uniquely within the purview of the Court under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). ECF 195, at 10.

　　*TCC* raises additional legal issues that are not presented by *East Fork* but also go to the heart of the integrated TSCA risk management framework:

- Section 6(d)(1)(C)-(D) of TSCA provides that, where management rules ban or phase-out substances, implementation shall start "as soon as practicable but no later than 5 years from the date of promulgation" and must be completed "as soon as practicable." What limitations do these terms place on EPA when setting compliance deadlines for ban or phase out requirements under TSCA section 6(a)? *TCC* ADAO Br. (ECF 107) at 21-27; Ind. Br. at 70-75.

- Under section 6(b)(4)(A), risk evaluations must determine "whether a chemical substance presents an unreasonable risk of injury to health or the environment." Does this requirement, together with other language in

TSCA, require EPA to examine all sources of exposure (including from air, water, waste disposal and other pathways) when determining unreasonable risk or can it omit environmental pathways that could be addressed under other laws? ADAO Br. at 33-38.

These legal issues, too, involve interlocking TSCA provisions that must be interpreted in the context of the law's overall chemical risk framework.

EPA and industry petitioners emphasize that the underlying records for the two rules differ since asbestos and methylene chloride have distinct use and exposure profiles and raise different scientific issues. EPA Opp. at 6-9. But it is common for cases that present common issues of law to be argued and decided together even if their facts may differ. 8 James Wm. Moore, *Moore's Federal Practice* § 42.10[1][a] (3d ed. 2008) ("The articulated standard for consolidating two or more cases is simply that they involve 'a common question of law or fact.'"). Moreover, EPA's determinations of unreasonable risk were not made in a vacuum but rest on a common set of science policies and methodologies. For example, EPA evaluations are conducted in accordance with its risk evaluation "framework" rule under section 6(b)(3)(B) of TSCA (40 C.F.R. Part 702) and well-established EPA risk assessment guidelines. EPA rules also protect workers using a standard Workplace Chemical Protection Program (WCCP) that is customized on a substance-by-substance basis. See 40 C.F.R. §751.511 (asbestos

workplace controls). A necessary focus of courts reviewing risk evaluations and rules will be whether the record supports EPA's application of these general policies, rules and guidelines to specific substances – an analysis that necessarily requires a common understanding of the Agency's technical tools and their origins in the language and goals of the statute.

Industry petitioners also argue that key statutory terms – such as "unreasonable risk," "to the extent necessary," "conditions of use" and "in the Administrator's discretion" – are "closely tied to the administrative record for each rule" and are "necessarily chemical-specific" in their application. ACC Opp. Br. (ECF 193) at 5-7. However, even if the underlying facts may differ, the Court's decisions in these two cases will turn on how each critical term is defined in light of the relevant legislative history and its role in the statutory scheme. For example, as discussed above, industry petitioners in both cases claim that EPA should have referred the subject chemicals to OSHA under section 9(a) rather than imposing workplace protections under TSCA. The disposition of this claim will depend not on the precise OSHA status of asbestos and methylene chloride (as ACC suggests) but on how the Court reads TSCA section 9(a)'s unlimited grant of discretion to make referral decisions and whether the exercise of this discretion is unreviewable under the case law. Given the controlling weight of TSCA's statutory language, it

is inconceivable that the Court might conclude that asbestos should have been referred to OSHA but methylene chloride should not.

## II. Consolidating the Two Cases for Oral Argument and Decision Would Increase Legal Certainty and Reduce Burdens and Delay

Consolidation of cases raising common issues of law or fact for oral argument and decision is warranted where "consolidation would avoid unnecessary costs or delay." *Mills v. Beech Aircraft Corp, Inc.*, 886 F.2d 758, 761-62 (5th Cir. 1989). In exercising their discretion, "courts must weigh the risk of prejudice and confusion wrought by consolidation against the risk of inconsistent rulings on common factual and legal questions, the burden on the parties and the court, the length of time, and the relative expense of proceeding with separate lawsuits if they are not consolidated." *Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of the Fed. Reserve Sys.,* 770 F.Supp.2d 283, 286 (D.D.C.2011).

Here, consolidating *TCC* and *East Fork* for oral argument and decision would enable one panel of the Court to apply a single body of statutory interpretations to the record evidence in the two cases, simplifyjng their resolution and providing for greater consistency of analysis. By contrast, consideration of these cases by different panels at different times would be inefficient and wasteful, particularly if briefing and argument in the cases were separated by several months (or years). If the cases were to proceed on different tracks, a second set of judges would need to reexamine issues decided in the first case and consider whether to

reach different results based on different records despite the commonality of the controlling legal issues. The additional time and effort required for this new proceeding would outweigh any modest increase in resources that might result from hearing both cases together now. Overall, consolidating the cases would conserve the resources of the Court and place reduced burdens on the parties.

Most importantly, deciding *East Fork* but delaying a decision in *ADAO* would only increase uncertainty for EPA and the parties by leaving the asbestos Part I rule in an indefinite legal limbo. Although EPA apparently wishes to consider revisions to the Part 1 rule, a judicial decision in *East Fork* coupled with uncertainty over its application to asbestos would complicate the Agency's ability to chart a course for further rulemaking. The same uncertainty would impede Agency decisions on revising the three other TSCA risk management rules that the Administration is reviewing.[1] Although the industry petitioners did not support ADAO's motion to reconsider the Court's February 14 abeyance order, companies subject to the rule are already obligated to meet its compliance deadlines and will incur more compliance costs the longer the rule remains in effect without a judicial ruling on its validity. ADAO and its co-petitioners would also be harmed by

---

[1] In the latter part of 2025, EPA also completed three other risk management rulemakings under section 6(a) of TSCA – for trichloroethylene, perchloroethylene and carbon tetrachloride. EPA has sought to delay judicial review proceedings for all three rules. Briefing in the challenges to the rules (pending in the Third, Fifth and Eighth Circuits) have not yet begun.

holding the Part 1 rule in abeyance indefinitely because the Agency would have no obligation or incentive to strengthen the protections of the rule as these petitioners have argued in their briefs.

These considerations further underscore why putting *TCC* and *East Fork* on parallel tracks for oral argument and decision will increase legal certainty and consistency of decision-making while reducing burdens and costs to the Court and the parties.

**CONCLUSION**

The Court's February 14, 2024 order holding these consolidated cases in abeyance for 120 days should be reconsidered and withdrawn.

Respectfully submitted,

*/s/Robert M. Sussman*
Robert M. Sussman
Sussman & Associates
3101 Garfield St. NW
Washington, DC 20008
(202) 716-0118

Lucas Williams
Lexington Law Group, LLP
503 Divisadero Street
San Francisco, CA 94117
(415) 913-7800

*Attorneys for Petitioners Asbestos Disease
Awareness Organization. American Public Health
Association, Collegium Ramazzini, Local F-116
(Vandenberg Professional Firefighters),*

*International Association of Fire Fighters; Local F-253 (Fort Myer Professional Firefighters), International Association of Fire Fighters; The FealGood Foundation. Henry A. Anderson, MD; Brad Black, MD; Barry Castleman, ScD; Raja Flores, MD; Arthur Frank, MD, PhD; Phil Landrigan, MD, MSc; Richard Lemen, PhD, MSPH; Steven Markowitz, MD, DrPH; Jacqueline Moline, MD, MSc; Celeste Monforton, DrPH, MPH; Christine Oliver, MD, MPH, MSc; and Andrea Wolf, MD, MPH*

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because it contains 2409 words, excluding the parts of the filing exempted by Fed. R. App. P. 32(f). This filing complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) because it was prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman 14-point font.

*/s/Robert M. Sussman*
Robert M. Sussman

## CERTIFICATE OF SERVICE

I hereby certify that I e-filed the foregoing with the Clerk of the Court for the

United States Court of Appeals for the Fifth Circuit by using the appellate

CM/ECF system on April 7, 2025. Participants in the case who are registered

CM/ECF users will be served by the appellate CM/ECF system.

*/s/ Robert M. Sussman*
Robert M. Sussman
