No. 24-60193

# In The United States Court of Appeals for the Fifth Circuit

Texas Chemical Council; American Chemistry Council; Georgia Chemical Council; Asbestos Disease Awareness Organization; United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO; Ohio Chemistry Technology Council,

*Petitioners*,

v.

United States Environmental Protection Agency,

*Respondent.*

———————————

## Consolidated with

### No. 24-60281

American Public Health Association; Collegium Ramazzini; Local F-116 (Vanderberg Professional Firefighters), International Association of Fire Fighters; Local F-253 (Fort Myer Professional Firefighters), International Association of Firefighters; The FeelGood Foundation; Henry A. Anderson, *Medical Doctor*; Brad Black, *Medical Doctor*; Barry Castleman, *Doctor of Science*; Raja Flores, *Medical Doctor*; Arthur Frank, *Medical Doctor, Doctor of Philosophy*; Phil Landrigan, *Medical Doctor, Master of Science*; Richard Lemen, *Doctor of*

*Philosophy, Master of Public Health*; Steven Markowitz, *Medical Doctor, Doctor of Public Health*; Jacqueline Moline, *Medical Doctor, Master of Public Health*; Celeste Monforton, *Doctor of Public Health, Master of Public Health*; Christine Oliver, *Medical Doctor, Master of Public Health, Master of Science*; Andrea Wolf, *Medical Doctor, Master of Public Health*,

*Petitioners*,

v.

United States Environmental Protection Agency; Michael Regan, *Administrator, United States Environmental Protectional Agency*;

*Respondents.*

---

Consolidated with

No. 24-60333

Olin Corporation,

*Petitioner*,

v.

United States Environmental Protection Agency; Michael Regan, *Administrator, United States Environmental Protection Agency*,

*Respondents.*

Petition for Review from an Order of the Environmental Protection Agency

Agency No. 40 CFR Part 751

Agency No. 89 Fed.Reg. 21970

## REPLY BRIEF OF PETITIONER UNITED STEEL WORKERS

Randy S. Rabinowitz, Esq.
Victoria L. Bor, Esq.
Occupational Safety & Health
Law Project, LLC
P.O. Box 3769
Washington, DC 20027
202 256-4080

Nathan Finch, Esq.
Motley Rice LLC
401 9th Street NW
Suite 630
Washington, DC 20004
(202) 607-8998

*Attorneys for Petitioner USW*

<u>CERTIFICATE OF INTERESTED PERSONS</u>

**1.** Nos. 24-60193; 24-60281; and 24-60333; under consolidated title, *Texas Chemical Council v. EPA* (2024).

**2.** The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

(1)    Occupational Safety & Health Law Project, LLC (counsel)

(2)    Randy S. Rabinowitz (counsel)

(3)    Victoria L. Bor (counsel)

(4)    Nathan Finch (counsel)

(5)    Motley Rice (counsel)

(6)    Robert M. Sussman, Sussman & Associates (counsel)

(7)    Lucas Williams (counsel)

(8)    Henry A. Anderson, MD (petitioner)

(9)    Brad Black, MD (petitioner)

(10) Barry Castleman, ScD (petitioner)

(11) Raja Flores, MD (petitioner)

(12) Arthur Frank, MD, PhD (petitioner)

(13) Phil Landrigan, MD, MSc (petitioner)

(14) Richard Lemen, PhD, MSPH (petitioner)

(15) Steven Markowitz, MD, DrPH (petitioner)

(16) Jacqueline Moline, MD, MSc (petitioner)

(17) Celeste Monforton, DrPH, MPH (petitioner)

(18) Christine Oliver, MD, MPH, MSc (petitioner)

(19) Dan Whu, MD, MPH (International Association of Fire Fighters) (petitioner)

(20) Andrea Wolf, MD, MPH (petitioner)

(21) American Public Health Association (petitioner)

(22) Collegium Ramazzini (petitioner)

(23) IAFF Local F-116 (Vandenberg Professional Firefighters) (petitioner)

(24) IAFF Local F-253 (Fort Myer Professional Firefighters) (petitioner)

(25) The FeelGood Foundation (petitioner)

(26) Asbestos Disease Awareness Organization (ADAO) (petitioner in No. 24-60193)

(27) Linda Reinstein (President ADAO)

(28) United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL- CIO/CLC (USW) (petitioner in No. 24-60193)

(29) Texas Chemistry Council (TCC) (petitioner in No. 24-60193)

(30) Baker Botts L.L.P. (TCC Counsel)

(31) Beau Carter(TCC Counsel)

(32) Aaron M. Streett (TCC counsel)

(33) American Chemistry Council (ACC) (petitioner in No. 24-60193)

(34) Georgia Chemistry Council (GCC) (petitioner in No. 24-60193)

(35) Crowell and Moring (counsel for ACC and GCC)

(36) David Chung (counsel for ACC and GCC)

(37) Warren Lehrenbaum (counsel for ACC and GCC)

(38) Ohio Chemistry Technology Council (OCTC) (petitioner in No. 24-60193)

(39) Porter, Wright, Morris & Arthur, LLP (counsel for OCTC)

(40) Robert J. Karl (counsel for OCTC)

(41) Eric Gallon (counsel for OCTC)

(42) Olin Corporation (petitioner in No. 24-60333)

(43) Hunton Andrews Kurth (counsel for Olin Corp.)

(44) Elbert Lin (counsel for Olin Corp.)

(45) Matthew Leopold (counsel for Olin Corp.)

(46) Erica Peterson (counsel for Olin Corp.)

(47) Nicholas Stellakis (counsel for Olin Corp.)

(48) United States Environmental Protection Agency (respondent)

(49) Lee Zeldin, Administrator, United States Environmental Protection Agency (respondent)

(50) Adam Gustafson, Principal Deputy Assistant Attorney General, United States Department of Justice (Respondents' Counsel)

(51) Laura Glickman, US Department of Justice (Respondents' Counsel)

(52) Kristen Sarna, US Department of Justice (Respondents' Counsel)

(53) Derek Gilliam, US Environmental Protection Agency (Respondents' Counsel)

(53) Camille Heyboer, US Environmental Protection Agency (Respondents' Counsel)

*s/ Randy S. Rabinowitz*
*Attorney of Record for Petitioner,*
*USW*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................i

TABLE OF CONTENTS ...........................................................iv

TABLE OF AUTHORITIES .....................................................v

I. EPA's Brief Fails to Address USW's Challenge to the Final Rule...................................................................4

II. EPA's Explanation for Its Failure to Protect Non-Titanium Dioxide Workers from Chrysotile Exposures Does Not Withstand Scrutiny......................................6

III. EPA Now Concedes The Final Rule Should Have, But Did Not, Protect Non-Titanium Dioxide Chemical Industry Workers from Asbestos Risks. ..................................13

IV. This Court Must Order EPA Expeditiously To Issue a Rule That Protects Chemical Industry Workers Using Sheet Gaskets from Asbestos Exposure. ...............................15

CONCLUSION .........................................................................18

CERTIFICATE OF COMPLIANCE......................................................20

CERTIFICATE OF SERVICE................................................................21

<u>TABLE OF AUTHORITIES</u>

Cases

*Environmental Defense Fund v. EPA,*
    124 F.4th 1 (D.C. Cir. 2024)...........................................................17

*FDA v. Wages and White Lion Inv.,*
    603 U.S. 542 (2025) ......................................................................10

*Perez v. Mortgage Bankers,*
    575 U.S. 92 (2015) ..................................................................12, 16

*Safer Chemicals v. EPA,*
    943 F. 3d 397 (9th Cir. 2019) ..........................................................8

*SEC v. Chenery Corp.,*
    318 U.S. 80 (1943) .........................................................................10

*Wages & White Lion Inv. v. FDA,*
    90 F.4th 357 (5th Cir. 2024) (en banc)..........................................10

Statutes

15 U.S.C. § 2605 ................................................................... 1, 7, 15, 17

Regulations

29 C.F.R. § 1910.1001.............................................................................11

29 C.F.R. § 1926.1101............................................................................11

40 C.F.R. § 751.505 ................................................................................5

40 C.F.R. § 751.511 ....................................................................... 2, 5, 16

EPA, "Asbestos Part 1: Chrysotile Asbestos; Regulation of Certain
    Conditions of Use Under Section 6(a) of the Toxic Substances
    Control Act (TSCA): Final Rule," 89 Fed. Reg. 21970 (Mar.
    28, 2024) ................................................................................. 1, 4, 7

EPA, "Asbestos Part 1: Chrysotile Asbestos; Regulation of Certain
    Conditions of Use Under Section 6(a) of the Toxic Substances

Control Act (TSCA): Proposed Rule," 87 Fed. Reg. 21706
(Apr. 12, 2022) ....................................................................................5

## Rules

Fed. R. Evid. 201 ....................................................................................3

The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO (USW) has petitioned this Court to direct the Environmental Protection Agency (EPA) to extend the interim protections of the Workplace Chemical Protection Program in the final rule titled "Asbestos Part 1: Chrysotile Asbestos: Regulation of Certain Conditions of Use Under the Toxic Substances Control Act (TSCA)" (the Final Rule).

In its opening brief, USW established that EPA reasonably determined that "processing and industrial use of chrysotile asbestos-containing sheet gaskets in chemical production" posed an unreasonable risk to workers exposed when they engaged in receiving, removing, and bagging these gaskets for disposal. *See* EPA, "Asbestos Part 1: Chrysotile Asbestos: Regulation of Certain Conditions of Use Under Section 6(a) of the Toxic Substances Control Act (TSCA): Final Rule," 89 Fed. Reg. 21970, 21983 (Mar. 28, 2024), JA ___. Once EPA makes such a determination, TSCA mandates that the Agency issue a risk management rule that will eliminate "such risk." 15 U.S.C. § 2605(a). As USW demonstrated, by failing to protect asbestos sheet gasket workers in non-titanium dioxide chemical production facilities from the

unreasonable risks asbestos sheet gaskets pose, EPA has violated the law.[1]

EPA responded, first, by completely mischaracterizing USW's challenge as focused on the two-year period in which the agency is permitting chemical companies outside the titanium dioxide industry to continue to install new asbestos gaskets without implementing worker protections. Respondent's Brief, Dkt. No. 153 (EPA Br.) at 118-21. This is a strawman: USW is not challenging EPA's two- year delay in banning asbestos sheet gaskets. When EPA briefly responded to USW's actual challenge – the Agency's failure to include non-titanium dioxide workers in the protections afforded other workers by the Workplace Chemical Protection Program (WCPP), 40 C.F.R. §751.511, for as long as the gaskets remain in use – it asserted, for the first time, that rather than protecting these workers under this Part 1 Chrysotile Asbestos Rule, it plans to do so at some undetermined date in the future, when it

---

[1] For convenience, we will refer to the group of chemical workers who require protection from asbestos exposure but who are not covered by the Final Rule as workers in the non-titanium dioxide chemical industry.

establishes risk management rules to govern Part 2 - Legacy Asbestos. EPA Br. at 121.

Nothing in any of EPA's analyses of asbestos risks or in the preamble to the Final Rule supports this claim. Moreover, since it filed its brief, EPA has publicly stated – in agreement with USW's arguments – "that the Biden Administration's risk management rule failed to adequately protect chemical industry workers from health risks posed by chrysotile asbestos." Declaration of Randy Rabinowitz (Rabinowitz Decl.) at ¶4, 6 (attached in the appendix to this Brief).[2] While initially signaling that it would rectify this failure through new rulemaking, EPA has now stated it will instead do so through guidance, action that would not afford the affected workers the relief USW is here seeking and that EPA acknowledges they are due.

---

[2] The statements EPA made to the New York Times in July 2025 and to Inside TSCA in September 2025 obviously were not part of the record when the Agency published the Final Rule. However, the statements are relevant to USW's claims and counsel for EPA has confirmed the Agency made the statement to the New York Times. Under Rule 201, Federal Rules of Evidence, a district court could take judicial notice of EPA's statement; we respectfully request the Court similarly do so here. *See* Fed. R. Evid. 201.

As we explain below, it remains necessary for this Court to order EPA to adopt, under an expedited timetable, risk management rules that eliminate the unreasonable risk workers in the non-titanium dioxide chemical industry face when working with asbestos sheet gaskets.

## I.     EPA's Brief Fails to Address USW's Challenge to the Final Rule.

EPA completed its Part 1 Risk Evaluation for chrysotile asbestos in 2020 and determined that the use of asbestos sheet gaskets in chemical production posed an unreasonable risk to exposed workers.  Part 1 Risk Evaluation (RE) at 231-240; JA ___.  As EPA explained in the preamble to the Final Rule, workers in all kinds of chemical production facilities face this risk when they are engaged in installing, removing, and disposing of these gaskets.  89 Fed. Reg. 21970, 21983; JA ___.  No party to these proceedings has seriously questioned EPA's finding that exposure to chrysotile asbestos – like all asbestos fibers – poses an unreasonable risk.

In response to that Risk Evaluation, EPA proposed to ban asbestos sheet gasket use throughout the chemical industry after two years. EPA, "Asbestos Part 1: Chrysotile Asbestos; Regulation of Certain Conditions of Use Under Section 6(a) of the Toxic Substances Control Act (TSCA):

Proposed Rule," 87 Fed. Reg. 21706, at 21707, 21720 (Apr. 12, 2022); JA ___. As its primary regulatory alternative, the Agency proposed providing the chemical industry 5 years in which to phase out its use of asbestos sheet gaskets, while requiring any company that continued to use asbestos gaskets to implement worker chemical protection plans (WCPPs) after 180 days. *Id.* at 21718, 21723; JA ____.

Nothing in the proposed Rule suggested that EPA was contemplating implementing different levels of protection for titanium dioxide workers and those in the non-titanium dioxide chemical industry. Yet, the Final Rule establishes two very different regimes: Consistent with its primary regulatory alternative, EPA is prohibiting all chemical facilities from installing asbestos sheet gaskets after two years. Titanium oxide producers must eliminate all asbestos gaskets within five years and implement worker protections after 180 days. 40 C.F.R. §751.511.[3] In the non-titanium dioxide chemical industry, however, owner/operators may continue to use, repair, remove and dispose of asbestos sheet gaskets for

---

[3] Chlor-alkali facilities – the only other industry that is permitted to continue using chrysotile asbestos for a period of years must also implement worker protections within 180 days of the effective date of the Final Rule.  40 C.F.R. §§751.505, 751.511.

their useful life – which EPA has acknowledged could extend for decades, EPA Br. at 119 – without implementing any worker protections.

Thus, EPA's argument that it reasonably failed to require worker protections during the two years in which new asbestos gaskets may be installed is completely beside the point. EPA Br. at 118. As USW's brief makes clear, our focus is on the indefinite time during which asbestos gaskets will continue to be used, and chemical production workers exposed to asbestos' unreasonable risks, without any protection. Non-titanium dioxide workers are the only group of workers who will have continued asbestos exposure but no worker protections under the Final Rule. TSCA does not permit EPA to ignore the unreasonable risks these workers face.

## II. EPA's Explanation for Its Failure to Protect Non-Titanium Dioxide Workers from Chrysotile Exposures Does Not Withstand Scrutiny.

When EPA briefly attempts to justify its failure to require the non-titanium dioxide chemical industry to implement worker protections during the extended periods in which exposure to asbestos will continue, its arguments fail to withstand scrutiny.

EPA is evaluating and regulating asbestos' risks in two separate proceedings: Part 1 addressed new and ongoing uses of chrysotile asbestos; the adequacy of the Final Rule EPA promulgated in response to that risk evaluation is the subject of the petitions currently pending before this Court.   Part 2 will address "legacy" exposures, that is, exposures to previously installed asbestos-containing products. *See* Opening Brief of Petitioner USW, Dkt. No. 109 (USW Brf.) at 11 n.5; EPA Br. at 121.

As TSCA requires, 15 U.S.C. §2605(b)(4)(D), EPA defined the scope of each proceeding. The scope of its Part 1 Risk Evaluation includes "processing and industrial use of chrysotile asbestos-containing sheet gaskets in chemical production." AR A86; JA ___.   Its Part 1 Risk Evaluation determined this asbestos use posed an unreasonable risk to exposed workers when they installed, removed and disposed of the gaskets. 89 Fed. Reg. 21970, 21983; JA ___.   RE at 248; JA ___. This determination triggered EPA's duty to adopt a rule to eliminate that unreasonable risk. By its own admission, EPA did not do so.

Instead, EPA asserts in its brief that it had no duty to protect asbestos sheet gasket workers in the non-titanium dioxide chemical

industry under its Part 1 risk management rule because it plans to do so during its Part 2 proceedings. [4]  EPA Br. at 121. EPA explains that the use of gaskets in titanium plants – including installation, removal and disposal – will end after 5 years, while it was convinced to permit other chemical plants to forestall removal and disposal until the end of their useful life. *Id.* at 119.  And it asserts that removal beyond the first two years constitutes a legacy use, which is beyond the scope of this rulemaking. *Id.*

Unfortunately for EPA, the Agency's analysis of asbestos' risks fails to draw the distinction EPA asserts in its brief.  While EPA now claims its Part 1 Risk Evaluation found unreasonable risk only for "installation and replacement of *new* asbestos-containing sheet gaskets," EPA Br. at 27 (emphasis added), the Risk Evaluation says nothing of the sort.  RE at 248; JA ___ (listing, among the "conditions of use" of asbestos which

---

[4] In *Safer Chemicals v. EPA*, 943 F. 3d 397, 425 (9th Cir. 2019), the Ninth Circuit held that ongoing exposure to in-place toxins represents a "use" under TSCA, a ruling that required EPA to revisit earlier risk evaluations when it only considered exposures to new uses of asbestos. While EPA could have modified its approach to asbestos sheet gaskets by specifying that it was including exposures to "legacy" gaskets in its Phase 2 proceedings, it never did so.

EPA determined posed unreasonable risks "Processing and Industrial Use of Chrysotile Asbestos-Containing Sheet Gaskets in Chemical Production).

Just as tellingly, gasket removal in chemical production appears nowhere in EPA's Scope Document for its Part 2 Risk Evaluation.[5] Nor does the Part 2 Risk Evaluation itself include gasket removal in chemical production among the uses EPA evaluated.[6]  In fact, EPA's citation in its brief to the Part 2 Risk Evaluation undercuts its claim.  The Part 2 Risk Evaluation states "[t]here are legacy gaskets that may contain asbestos; however, occupational exposures to gaskets containing asbestos were covered in Risk Evaluation for Asbestos Part 1: Chrysotile Asbestos (U.S. EPA, 2020c) and no further analysis was necessary here for legacy gaskets." EPA Br. at 40-41, referring to RE at 314-315; JA ___.[7]

---

[5]  *See* https://www.epa.gov/system/files/documents/2022-06/Asbestos%20Part%202_FinalScope.pdf at Table 2-2 (listing all conditions of use to be included in the risk evaluation). EPA did not include the Part 2 Scope in the administrative record for this litigation.

[6] Neither did EPA include the Part 2 Risk Evaluation, which was published in December 2024, in the administrative record.  EPA however cited the Part 2 Risk Evaluation in its brief, and USW has attached the relevant pages from that document as an appendix to this brief.

[7] The only other citation EPA gives to support its argument that it gave notice that asbestos exposure during sheet gasket removal in non-

Nothing in either risk evaluation suggests that EPA considered but decided to defer action on protecting workers in the non-titanium dioxide chemical industry. Nowhere in the preambles to either the Part 1 proposed or Final Rule did EPA explain that it intended to address these aspects of asbestos gasket use in its Part 2 risk management rule. EPA did not offer this explanation for its failure to protect non-titanium dioxide chemical production workers until it filed its brief in this case, months after USW raised the issue.

The post hoc rationalization EPA now offers cannot stand, as "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *SEC v. Chenery Corp.,* 318 U.S. 80, 87 (1943), *quoted in Wages & White Lion Inv. v. FDA,* 90 F.4th 357, 371 (5th Cir. 2024) (en banc), *rev'd on other grounds in FDA v. Wages and White Lion Inv.,* 603 U.S. 542 (2025).

No different result is required by EPA's belated claim that it did not have enough exposure data to regulate asbestos sheet gaskets use in

---

titanium dioxide chemical production plants will be addressed in its Part 2 proceedings (EPA Br. At 40-41, referring to RE at 201; JA ___) makes no reference to the risks from removal of asbestos sheet gaskets.

the non-titanium dioxide chemical industry during its Part 1 proceedings. EPA Br. at 119. While it is true that EPA relied on sampling data from a single titanium dioxide plant in reaching its unreasonable risk determination, EPA also had available to it several published studies evaluating gasket exposures. RE at 95-97; JA ___. Under its review criteria, these studies are considered relevant to exposure assessment. RE at 71; JA ___ ("Where available, EPA used inhalation monitoring data from industry, trade associations, or the public literature.") Industry has been monitoring asbestos exposure for decades under regulations of the Occupational Safety and Health Administration, *see* 29 C.F.R. § 1910.1001(d); 29 C.F.R. § 1926.1101(f), but no such data was submitted to EPA. And while EPA's brief claims it intends to address exposures in the non-titanium dioxide chemical industry in its Part 2 risk management rule, the Part 2 risk evaluation includes no new exposure data. Part 2 RE at 314; JA ___.

Finally, there is no reason why USW, or any interested party for that matter, should have anticipated that EPA was contemplating dropping protections for chemical workers in either its proposed rule or its primary alternative, since EPA never mentioned that option in any

11

public document during the rulemaking. In fact, like USW, industry stakeholders participating in this rulemaking understood that by proposing that chemical companies end the "use" of the gaskets in either two or five years, EPA intended to end *all* aspects of their use that EPA had found to cause unreasonable risk, including not only installation, but also removal and disposal. Thus, several industry commenters urged EPA, rather than requiring chemical companies to remove the gaskets within the proposed timeframes, to permit their continued use while requiring the companies to comply with the proposed WCPP until all gaskets were removed. *See* UAW Br. at 31 n. 20.

While EPA argues that the "change in the proposed rule was a direct response to arguments raised during the comment period," EPA Br. at 124, if that were so, EPA was required to provide a reasoned explanation of the basis for its choice. Here, however, EPA said nothing about the issue. It ignored substantive comments from both the industry and USW on the need to protect workers from the unreasonable risks asbestos gasket use poses. EPA's silence on this issue violates the Administrative Procedures Act. *Perez v. Mortgage Bankers,* 575 U.S. 92, 96 (2015).

III. **EPA Now Concedes The Final Rule Should Have, But Did Not, Protect Non-Titanium Dioxide Chemical Industry Workers from Asbestos Risks.**

Since it filed its brief, EPA has disavowed the arguments in its brief and now seemingly agrees with USW that the Final Rule should have, but did not, include protection for workers exposed to asbestos when installing and removing asbestos sheet gaskets in the non-titanium dioxide chemical industry.

In February 2025, EPA requested, and the Court granted, an abeyance in the briefing schedule for these petitions so the new administration could evaluate whether changes to the Rule were appropriate. Dkt. Nos. 170, 182-1. On June 16, EPA requested a further abeyance while it engaged in rulemaking, "to reconsider the rule to determine whether interim workplace protections should apply during asbestos gasket replacement," exactly the issue USW has raised in this Court. Dkt. Nos. 201-1 and 202-2. And on July 7, EPA withdrew its abeyance motion, informing the Court that it has "reconsidered the Asbestos Part 1 Rule, including the applicability of workplace protection requirements to the use of asbestos-containing sheet gaskets in non-titanium dioxide chemical production," and that instead of engaging in

13

further rulemaking, it "plans to explore whether guidance could provide

further clarity to stakeholders as they implement the Rule, particularly

with respect to any workplace protection measures." Dkt. No. 213-2 at 2-

3.

EPA further explained its position in a statement to the New York

Times:

> EPA believes that the Biden Administration's risk
> management rule failed to adequately protect chemical
> industry workers from the health risks posed by chrysotile
> asbestos. In looking to address this, EPA told the court that
> the Agency intends to reconsider the rule to determine
> whether interim workplace protections should apply during
> asbestos gasket replacement.
>
> To remedy the previous Administration's approach, we
> notified the court that we intend to reconsider the
> applicability of interim workplace protection requirements
> during the replacement of asbestos gaskets for all workers.
> Given the extended timeline required for a formal
> rulemaking, EPA is going to take immediate action and issue
> formal guidance to strengthen the respiratory protection for
> workers that can be finalized and implemented faster to get
> additional protections in place as quickly as possible.

Rabinowitz Decl. at ¶4. EPA reiterated this concession in a statement to

Inside TSCA. *Id.* at ¶6.

EPA's statement is a clear concession that USW should prevail on

its claim that EPA had a mandatory duty to protect chemical industry

workers installing and removing sheet gaskets from asbestos exposure and that its Final Rule fails to do so.

IV. **This Court Must Order EPA Expeditiously To Issue a Rule That Protects Chemical Industry Workers Using Sheet Gaskets from Asbestos Exposure.**

Despite recognizing its duty to adopt a rule to protect chemical workers from asbestos exposures, EPA has not announced an actual plan to do so in a timely way. While initially informing this Court that it would undertake rulemaking to consider adding protections for chemical workers (Dkt. No. 201), EPA now intends only to issue "guidance to strengthen [workers'] respiratory protection."

USW appreciates that EPA has recognized that it must act to protect chemical industry workers from the unreasonable risk posed by exposure to asbestos sheet gaskets. USW also appreciates that EPA recognizes it should "take immediate action" to do so. Unfortunately, its stated plan does not meet TSCA's requirements for three reasons.

First, TSCA requires EPA to take action to address unreasonable risks, such as the risk asbestos poses to chemical workers, *by rule.* 15 U.S.C. §2605(a). Guidance documents, like other interpretative rules issued without notice-and-comment rulemaking, "do not have the force

and effect of law," and are not enforceable. *Perez v. Mortgage Bankers Ass'n,* 575 U.S. at 95 (internal citations omitted). Here, EPA is proposing to issue guidance that would impose on chemical facilities obligations found nowhere in the Final Rule. Any such guidance, purporting to expand the requirements of a rule issued through notice and comment rulemaking, would have no legal effect.

Second, even if such guidance could be enforced, EPA's articulated plans do not go far enough. The Agency has announced that it will issue guidance to strengthen "respiratory protection for [chemical industry] workers." Throughout the Part 1 proceedings, EPA emphasized that respiratory protection does not adequately protect workers from asbestos' deadly effects. EPA Br. at 23-25, 35-36. In all other industries where asbestos exposure continues, the Final Rule requires owners/operators to implement engineering and administrative controls to reduce employee asbestos exposure. *See* 40 C.F.R. §751.511(e). EPA has offered no explanation why respirators, rather than engineering and administrative controls, will adequately protect chemical industry workers, but not other workers. EPA cannot meet its duty to eliminate the unreasonable risk chemical industry workers face from asbestos exposure by pointing to

unenforceable guidance encouraging a subpar method of worker protection.

Finally, TSCA required EPA to protect workers from asbestos no later than four years after it determined, in December 2020, that such exposures pose an unreasonable risk.   15 U.S.C. §2605(c)(1)(B)-(C) (requiring EPA to issue a risk management rule within two years but permitting up to a two-year extension).   EPA has stated that "formal rulemaking" requires an "extended timeline," but that "guidance" would provide "immediate" protection.  Rabinowitz Decl. at ¶4. No guidance has been issued.  No schedule for rulemaking has been announced.  When a rule is unlawful – and particularly when, as here, the Agency acknowledges such – "EPA cannot wait to address this unlawfulness at a later point in time." *Environmental Defense Fund v. EPA,* 124 F.4th 1, 19 (D.C. Cir. 2024).  Given that the deadline for protecting these workers from the deadly hazards of asbestos has long since passed, and EPA has no plans to adopt enforceable workplace protection rules in a timely way, the Court should impose a strict timetable by which EPA must do so.

## CONCLUSION

EPA found that workers throughout the chemical industry are exposed to unreasonable risks posed by asbestos sheet gaskets but has failed to enact a risk management rule that eliminates that risk for chemical workers outside titanium oxide facilities. EPA has offered no credible basis for failing to fulfill its statutory obligation, and has, in fact, conceded that it needs to take action to do so. As the measures it proposes to take are inadequate to fulfill its obligations, USW respectfully requests that this Court grant its petition and order EPA expeditiously to amend the Final Rule to require the broader chemical industry to comply with the Rule's WCPP for as long as asbestos sheet gaskets remain in their facilities.

Respectfully submitted,

Randy S. Rabinowitz, Esq.
Victoria L. Bor, Esq.
Occupational Safety & Health Law Project, LLC
P.O. Box 3769
Washington, DC 20027
202 256-4080

Nathan Finch, Esq.
Motley Rice LLC
401 9th Street NW
Suite 630

Washington, DC 20004
(202) 607-8998

*Attorneys for Petitioner USW*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 3536 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface in 14-point Century font using Microsoft Word.


Dated:  September 17, 2025
      Washington, DC        _s/ *Randy S. Rabinowitz*_____
                               *Attorney for Petitioner, USW*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I e-filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on September 17, 2025.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated:  September 17, 2025
        Washington, DC          _s/ *Randy S. Rabinowitz*_____
                                *Attorney for Petitioner, USW*

# APPENDIX TO

# REPLY BRIEF OF PETITIONER UNITED STEEL WORKERS

1. Declaration of Randy Rabinowitz ………………………………….A-1

2. Excerpts from EPA, Risk Evaluation for Asbestos –
   Part 2: Supplemental Risk Evaluation Including
   Legacy Uses and Associated Disposals of Asbestos …………… A-8

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### Docket No. 24-60193 and consolidated cases

---

TEXAS CHEMISTRY COUNCIL, et al.,

*Petitioners,*

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY et al.,

*Respondents.*

.

---

*On Petition for Review of Final Order of the U.S. Environmental Protection Agency*

---

### DECLARATION OF RANDY S. RABINOWITZ IN SUPPORT OF REPLY BRIEF OF PETITIONER UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO (USW)

I, Randy S. Rabinowitz, declare as follows:

1.  I am an attorney licensed to practice law in the District of Columbia. I am admitted to practice before the U.S. Court of Appeals for the 5th Circuit, among other federal courts. I represent United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("USW") in the above-captioned case.

2.  I submit this declaration in support of certain statements made in the Reply

Brief filed by Petitioner USW.

3.  On July 7, the New York Time published an article that described EPA's filing before this Court in Docket No. 24-60193. *See* Hiroko Tabuchi *"Trump Administration, Reversing Itself, Won't Rewrite a Ban on Asbestos."* In the article, the New York Times quoted EPA statements that went beyond what the Agency had told this Court.

4.  When I could not find EPA's press statement on its website, I contacted the New York Times reporter, Hiroko Tabuchi, and requested a copy of EPA's full statement to the newspaper. She responded by sending the following: *"EPA believes that the Biden Administration's risk management rule failed to adequately protect chemical industry workers from health risks posed by chrysotile asbestos. In looking to address this, EPA told the court that the Agency intends to reconsider the rule to determine whether interim workplace protections should apply during asbestos gasket replacement.*

*"To remedy the previous Administration's approach, we notified the court that we intend to reconsider the applicability of interim workplace protection requirements during the replacement of asbestos gaskets for all workers. Given the extended timeline required for a formal rulemaking, EPA is going to take immediate action and issue formal guidance to strengthen*

*the respiratory protection for workers that can be finalized and implemented faster to get additional protections in place as quickly as possible." -EPA Spokesperson*

5. Thereafter, I requested a "formal copy" of this statement from counsel for EPA, Laura Glickman. In response, she stated that the above-quoted statement "was provided in response to a request for comment and a formal press statement was not issued." A copy of my email exchange with counsel for EPA is attached to this declaration and is made solely for the purpose of authenticating the statements made by EPA to the New York Times.

6. EPA recently reiterated its current view that the "Biden Administration's risk management rule failed to adequately protect chemical industry workers from health risks posed by chrysotile asbestos," in a statement to Inside TSCA. A copy of the Inside TSCA article is attached to this declaration.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed this 17th day of September 2025.

Randy S. Rabinowitz

## Randy Rabinowitz

| | |
|---|---|
| **From:** | Glickman, Laura (ENRD) <Laura.Glickman@usdoj.gov> |
| **Sent:** | Monday, July 14, 2025 10:20 AM |
| **To:** | Randy Rabinowitz |
| **Cc:** | Victoria Bor |
| **Subject:** | RE: Texas Chemistry Council v. EPA |

Hi Randy,

The statement below was provided in response to a request for comment and a formal press statement was not issued. Thus, there is no "official" copy to provide.

Best,
Laura

**From:** Randy Rabinowitz <Randy@OSHLaw.org>
**Sent:** Friday, July 11, 2025 2:52 PM
**To:** Glickman, Laura (ENRD) <Laura.Glickman@usdoj.gov>
**Cc:** Victoria Bor <victoriabor87@gmail.com>
**Subject:** [EXTERNAL] Texas Chemistry Council v. EPA

EPA gave the following statement to the New York Times. Can you provide us with an "official" copy of this press statement. Thanks.

*"EPA believes that the Biden Administration's risk management rule failed to adequately protect chemical industry workers from health risks posed by chrysotile asbestos. In looking to address this, EPA told the court that the Agency intends to reconsider the rule to determine whether interim workplace protections should apply during asbestos gasket replacement.*

*"To remedy the previous Administration's approach, we notified the court that we intend to reconsider the applicability of interim workplace protection requirements during the replacement of asbestos gaskets for all workers. Given the extended timeline required for a formal rulemaking, EPA is going to take immediate action and issue formal guidance to strengthen the respiratory protection for workers that can be finalized and implemented faster to get additional protections in place as quickly as possible." -EPA Spokesperson*

INSIDE EPA'S

# INSIDE TSCA

Exclusive news and analysis on the new
Toxic Substances Control Act

## Zeldin Overruled Top Appointees To Reverse Asbestos Rule Redo Plan

September 9, 2025                                                                    Post

The Trump EPA's recent 180-degree reversal on its initial plan to rescind the Biden-era TSCA rule phasing out six uses of chrysotile asbestos and instead issue new guidance on the 2024 rule, came after Administrator Lee Zeldin overruled two other senior Trump EPA appointees, a source with knowledge of the internal matter says.

According to the source, after a series of emergency meetings in July, Zeldin reversed a decision by Lynn Dekleva, deputy assistant administrator for the Office of Chemical Safety and Pollution Prevention (OCSPP), and General Counsel Sean Donahue, who had initially sought to undo the Biden-era phase out without briefing the administrator.

The reversal, a rarity in the Trump administration, appears to have cast doubt on Dekleva's role in OCSPP, resulted in more scrutiny of the chemicals office and may even have led to the nomination of acting American Cleaning Institute CEO Doug Troutman as OCSPP's assistant administrator, the source says.

EPA's forced about-face on asbestos and Dekleva's role in it "has resulted in a lot more babysitting of OCSPP. It eroded a lot of trust in Lynn Dekleva personally as well as professionally," the source says.

Asked to comment, an EPA spokesperson did not address the role the administrator or the other top appointees played in reversing the decision to rewrite the asbestos rule. But the spokesperson suggested that the agency had reversed course because of fears that writing a new rule would take too long to put new measures in place.

"Given the extended timeline required for a formal rulemaking, EPA is going to take immediate action and issue formal guidance to strengthen the respiratory protection for workers that can be finalized and implemented faster to get additional protections in place as quickly as possible," the spokesperson said.

EPA first announced its reversal in **a July 7 motion** filed with the U.S. Court of Appeals for the 5th Circuit stating that it "has further reconsidered the challenged rule and no longer intends to conduct notice-and-comment rulemaking to evaluate potential changes at this time."

Instead, the agency said it would craft new guidance on implementing the Toxic Substances Control Act (TSCA) rule phasing out various uses of chrysotile asbestos and asked the court to restart the litigation. Reply briefs are now due Sept. 17.

The document marked a reversal from **EPA's June 16 filing** with the court in *Texas Chemistry Council, et al. v. EPA*, consolidated litigation brought by industry, public health and labor groups over the Biden-era rule.

The litigation is significant both because of its regulatory implications governing asbestos but also because it provides the 5th Circuit with an opportunity to interpret Congress' 2016 rewrite of the statute.

That rewrite was driven in large part by the court's reversal of EPA's 1989 rule governing asbestos in *Corrosion Proof Fittings v. EPA*, which set such a high evidentiary bar for EPA to regulate under TSCA that the agency declined to regulate any existing chemical until Congress rewrote the law.

The agency had initially asked the court to place the case in abeyance indefinitely while it sought to rewrite the rule, beginning with notice and comment, a process EPA estimated would take 30 months to complete.

### 'They Just Decided'

Both of EPA's filings were accompanied by declarations signed by Dekleva. Her declarations were unusual in that most of the other declarations associated with challenges to Biden-era TSCA rules have been signed by Nancy Beck,

OCSPP's principal deputy assistant administrator, the same role she held early in the first Trump administration.

But Beck was unable to participate in Trump EPA plans for the asbestos rule because she was recused from working on asbestos by EPA's ethics office. That stemmed from the fact that Hunton Andrews Kurth, Beck's former employer, had represented Olin Corp., one of the petitioners in the litigation. "Unfortunately, I'm recused from the asbestos litigation," Beck said in response to a question following her **keynote remarks** at the annual TSCA reform anniversary conference hosted on June 25 by Environmental Law Institute, George Washington University and the industry law firm of Bergeson & Campbell.

As a result of Beck's recusal, the informed source says, it fell to Dekleva and Donahue to decide in June how to respond to the asbestos litigation. "And they just decided, 'We shouldn't ban this chemical. This is bad, we should reverse this,' and you see the first filing to the court. And then it comes out in the press. Neither of them believed asbestos was significant enough to brief up to the administrator."

At the time, the 120-day abeyance EPA had initially won from the 5th Circuit in February to review the case and determine how the Trump administration intended to respond was set to expire. Sometime after that first June 16 filing, Zeldin learned of Dekleva and Donahue's decision, the source says.

"Zeldin demanded a couple of emergency meetings, with [the Office of General Counsel (OGC)] and some with both OGC and OCSPP. And the result of that was the second filing," reversing Dekleva and Donahue's decision, the source says. "Apparently Sean Donahue didn't manage to do what he should have done and give the administrator a briefing."

While the EPA spokesperson did not confirm or deny the administrator's role, the spokesperson sought to recharacterize the nature of the changes EPA sought to make to the rule, telling *Inside TSCA* that the agency "believes that the Biden Administration's risk management rule failed to adequately protect chemical industry workers from health risks posed by chrysotile asbestos."

"In looking to address this, EPA told the court that the Agency intends to reconsider the rule to determine whether interim workplace protections should apply during asbestos gasket replacement," the statement continues.

"To remedy the previous Administration's approach, we notified the court that we intend to reconsider the applicability of interim workplace protection requirements during the replacement of asbestos gaskets for all workers."

The statement that EPA officials sought to strengthen the asbestos rule is at odds with Dekleva's declaration attached to the June 16 motion to the 5th Circuit, where she wrote that that agency wanted to reconsider the rule because officials believed that some provisions go beyond what is needed to prevent unreasonable risk, the law's regulatory threshold.

"During abeyance . . . OCSPP intends to reconsider the applicability of workplace protection requirements in the use of asbestos-containing sheet gaskets in nontitanium dioxide chemical production," Dekleva's June declaration stated.

"Additionally, OCSPP will consider all reasonably available information and assess whether, consistent with the best available science and its risk management authority in Section 2605(a), the prohibitions with respect to the Asbestos sheet gasket and Chlor-alkali conditions of use in the Asbestos Part 1 Rule went beyond what is necessary to eliminate the unreasonable risk and whether alternative measures -- such as requiring permanent workplace protection measures -- would eliminate the unreasonable risk," she added.

**Industry Arguments**

Dekleva's language mirrors industry's challenge to the rule in the 5th Circuit. Industry petitioners' joint **September 2024 opening brief** in the asbestos litigation asks the court to sharply cabin EPA's power to regulate existing chemicals under the reformed TSCA, saying it can only impose limits "to the extent necessary" to address unreasonable risks, and that it must defer to other agencies when their authority overlaps with the toxics law.

Specifically, the industry petitioners, including the American Chemistry Council (ACC) -- where Dekleva worked between her tenures as a chemicals appointee in the first and second Trump administrations -- argued that when EPA sets an existing chemical exposure limit (ECEL), or workplace exposure standard, at a level it says is sufficient to address unreasonable risk, it must allow facilities that can meet the standard to continue using the substance indefinitely.

The informed source says the reversal may have resulted in more scrutiny of OCSPP, with some believing that

**Troutman's nomination** as OCSPP's acting administrator stems from the debacle.

Many observers believed that since the Trump administration quickly appointed Beck and Dekleva to run EPA's chemicals office after the presidential transition and did not nominate anyone for the Senate-confirmed role for six months, administration officials intended to have Beck lead the office from the non-confirmed principal deputy's role. But the asbestos reversal may have changed that, the source says.

"I think it's why there's an OCSPP nominee," the source says.

The informed source says career staff "just found the absence of understanding of the history of TSCA and how symbolic asbestos was kind of shocking on the part of [Dekleva] and [Donahue]. And it was a pointless action because the industry doesn't import asbestos anymore . . . industry was all about how quickly" do they have to phase out their existing stocks. The decision "didn't even come from industry. It came from themselves," the source says.

Linda Reinstein, president and co-founder of the Asbestos Disease Awareness Organization (ADAO), the group that has long advocated to ban asbestos and is also a petitioner in the 5th Circuit litigation, tells *Inside TSCA* that EPA's reversal stems from public pressure and internal conflicts.

"EPA's stunning July 7th reversal, its withdrawal of a motion for a 30-month abeyance, was no accident. After more than 20 years of working to ban asbestos, I believe it was driven by two forces: extraordinary public pressure after news of a possible delay to the Part 1 Chrysotile Asbestos legal challenge spread across the U.S. and around the world, and internal conflicts within the Agency itself," she says.

"Everyone knows asbestos is deadly. There is no safe level of exposure, and all fibers and all uses must be banned. EPA's reluctance to stand firmly behind even a limited ban of one fiber in six uses exposes troubling internal divisions and a lack of coordination that further erode public confidence in its ability to protect health. This reversal underscores what we have long said: Americans deserve a full, comprehensive ban on all asbestos fibers and all uses. Nothing less will safeguard public health."

### TSCA's Future

But the EPA rule's future still hinges on pending litigation in the 5th Circuit, which could again use a suit over asbestos to set a precedent that determines TSCA's fate.

The parallel is not lost on those who have long followed chemicals regulation. In April 2024, even before the 5th Circuit was chosen to hear the consolidated asbestos litigation, Rich Engler, chemistry director at Bergeson & Campbell, discussed the possibility in **a firm podcast**.

At the time, he said that because the final asbestos rule applies an existing chemical exposure limit during the phaseout period as well as the eventual ban of chlor-alkali plants' use of asbestos, industry could argue in court that if the exposure limit is "sufficient to meet the risk identified then the job is done and a ban is not justified because the risks can be mitigated by engineering controls," or other measures, such as personal protective equipment.

Engler added, "it's not clear to me that [EPA] can justify that. That's what the courts will decide."

But he also conceded that if the courts agree with such industry arguments, it could drastically weaken EPA's regulatory power under the reformed TSCA law, known as the Sen. Frank Lautenberg Chemical Safety Act for the 21st Century Act, in a parallel to *Corrosion Proof Fittings*.

In such a scenario, Engler said, "there may be people who say that TSCA reform is a failure. If 'to the extent necessary' is litigated and EPA loses and the courts conclude that as long as the risk management provisions short of a ban meet the 'extent necessary' [standard] and a ban is not justified and EPA can't make the asbestos ban stick, will that be seen as a failure of Lautenberg? That Lautenberg is not strong enough to make a ban stick? I don't know how that is going to play out politically." -- *Maria Hegstad* (**mhegstad@iwpnews.com**)

251941

## RELATED NEWS

- **EPA, Petitioners Outline Schedule For Resuming TSCA Asbestos Litigation**



EPA Document# EPA-740-R-24-006
November 2024
Office of Chemical Safety and
Pollution Prevention

United States
Environmental Protection Agency

# Risk Evaluation for Asbestos
# Part 2: Supplemental Evaluation Including Legacy Uses and Associated Disposals of Asbestos

## CASRN 1332-21-4

*November 2024*

# 6   UNREASONABLE RISK DETERMINATION

TSCA section 6(b)(4) requires EPA to conduct a risk evaluation to determine whether a chemical substance presents an unreasonable risk of injury to health or the environment, without consideration of costs or other non-risk factors—including an unreasonable risk to a potentially exposed or susceptible subpopulation (PESS) identified by the Agency as relevant to the risk evaluation under the TSCA COUs.

EPA has determined that asbestos presents an unreasonable risk due to injury to health under the COUs. Risk of injury to the environment does not contribute to EPA's determination of unreasonable risk. This unreasonable risk determination is based on the information in the 2020 *Risk Evaluation for Asbestos Part 1: Chrysotile Asbestos* (U.S. EPA, 2020c) and the appendices and supporting documents, as well as on the previous sections of this *Risk Evaluation for Asbestos Part 2: Supplemental Evaluation Including Legacy Uses and Associated Disposals* and the appendices and supporting documents—in accordance with TSCA section 6(b), as well as (1) the best available science (TSCA section 26(h)), and (2) weight of scientific evidence standards (TSCA section 26(i)), and (3) relevant implementing regulations in 40 CFR 702, including, to the extent practicable, the amendments to the procedures for chemical risk evaluation under TSCA finalized in May of 2024.

EPA will initiate risk management rulemaking to mitigate identified unreasonable risk associated with asbestos under the COUs in Part 2 by applying one or more of the requirements under TSCA section 6(a) to the extent necessary so that asbestos no longer presents such risk. Following issuance of the Part 1 Risk Evaluation for Asbestos, EPA proposed (87 FR 21706) and, after considering public comment, finalized regulation of certain conditions of use of chrysotile asbestos to address the unreasonable risk identified in the Part 1 Risk Evaluation relating to ongoing uses of chrysotile asbestos (89 FR 21970). EPA will issue a proposed rule following completion of this Part 2 Risk Evaluation for Asbestos in accordance with section 6(a). The Agency would also consider whether such risk may be prevented or reduced to a sufficient extent by action taken under another federal law, such that referral to another agency under TSCA section 9(a) or use of another EPA-administered authority to protect against such risk pursuant to TSCA section 9(b) may be appropriate.

The risk identified for asbestos under the COUs evaluated in this *Risk Evaluation for Asbestos, Part 2: Supplementary Evaluation Including Legacy Uses and Associated Disposals* supplements the risk of asbestos determined in the 2020 *Risk Evaluation for Asbestos, Part 1: Chrysotile Asbestos* (U.S. EPA, 2020c) (see also Section 1.1. Scope of the Risk Evaluation). The Agency is now making a single unreasonable risk determination for asbestos as a chemical substance. The majority of the COUs in this Part 2 Risk Evaluation that EPA determines contribute to the unreasonable risk posed by asbestos relate to handling or disturbing articles into which asbestos was incorporated in the past, but for which the manufacture (including import), processing, and distribution of these articles no longer occurs. The rough handling or disturbance of these articles can cause asbestos to be released as respirable (friable) asbestos fibers. As noted in Section 6.1.1, and further discussed in Sections 6.2.1.2 and 6.2.1.3, in this risk determination, EPA believes it is appropriate to evaluate the levels of risk present in baseline scenarios where personal protective equipment (PPE) is not assumed to be used by workers.

The COUs evaluated for asbestos are listed in Table 1-1. The following COUs significantly contribute to the unreasonable risk:

- Industrial/commercial use – chemical substances in construction, paint, electrical, and metal products – construction and building materials covering large surface areas, including paper articles; metal articles; stone plaster, cement, glass, and ceramic articles;

- Industrial/commercial use – chemical substances in construction, paint, electrical, and metal products – machinery, mechanical appliances, electrical/electronic articles;
- Industrial/commercial use – chemical substances in construction, paint, electrical, and metal products – other machinery, mechanical appliances, electronic/electronic articles;
- Industrial/commercial use – chemical substances in furnishing, cleaning, treatment care products – construction and building materials covering large surface areas, including fabrics, textiles, and apparel;
- Industrial/commercial use – chemical substances in furnishing, cleaning, treatment care products – furniture and furnishings, including stone, plaster, cement, glass, ceramic articles, metal articles, and rubber articles;
- Consumer use – chemical substances in construction, paint, electrical, and metal products – construction and building materials covering large surface areas, including paper articles; metal articles; stone, plaster, cement, glass, and ceramic articles; and
- Disposal.

The following COUs do not significantly contribute to the unreasonable risk:

- Industrial/commercial use – chemical substances in construction, paint, electrical, and metal products – fillers and putties*;
- Industrial/commercial use – chemical substances in construction, paint, electrical, and metal products – solvent based/water-based paint*;
- Industrial/commercial use – chemical substances in construction, paint, electrical, and metal products – electrical batteries and accumulators;
- Industrial/commercial use – chemical substances in packaging, paper, plastic – packaging (excluding food packaging) – rubber articles; plastic articles (hard); plastic articles (soft):
- Industrial/commercial use – chemical substances in automotive, fuel, agriculture, outdoor use products – lawn and garden care products;
- Industrial/commercial use – mining of non-asbestos commodities – mining of non-asbestos commodities;
- Industrial/commercial use – laboratory chemicals – laboratory chemicals;
- Industrial/commercial use – chemical substances in products not described by other codes – other (artifacts);
- Industrial/commercial use – chemical substances in products not described by other codes – other (aerospace applications);
- Consumer use – chemical substances in construction, paint, electrical, and metal products – machinery, mechanical appliances, electrical/ electronic articles;
- Consumer use – chemical substances in construction, paint, electrical, and metal products – fillers and putties*;
- Consumer use – construction, paint, electrical, and metal products – solvent-based/water-based paint*;
- Consumer use – chemical substances in furnishing, cleaning, treatment care products – construction and building materials covering large surface areas, including fabrics, textiles, and apparel;
- Consumer use – chemical substances in furnishing, cleaning, treatment care products – furniture and furnishings, including stone, plaster, cement, glass, and ceramic articles; metal articles; or rubber articles;
- Consumer use – chemical substances in packaging paper, plastic, toys, hobby products – packaging (excluding food packaging) – rubber articles; plastic articles (hard); plastic articles (soft);

- Consumer use – chemical substances in packaging paper, plastic, toys, hobby products – toys intended for children's use (and child dedicated articles) – fabrics, textiles, and apparel; or plastic articles (hard):
- Consumer use – chemical substances in products not described by other codes – other (artifacts); and
- Consumer use – chemical substances in automotive, fuel, agriculture, outdoor use products – lawn and garden care products.

Note that EPA considered the specific circumstances related to four of the COUs that do not significantly contribute to the unreasonable risk of asbestos, marked with an asterisk (*) above. Asbestos-containing fillers and putties and solvent and water-based paints already applied to articles are unlikely to release asbestos fibers unless disturbed though rough handling, which EPA does not expect for these COUs. However, it is possible that asbestos fiber releases may occur during the rough handling of building materials, machinery or furnishings containing putties and paints during construction, renovation, demolition, repairs, and other similar activities that make the asbestos-containing material friable. These releases are already represented by COUs that significantly contribute to the unreasonable risk of asbestos. In addition, EPA finds that the evidence suggests that exposure to asbestos unintentionally present in trace amounts in other mined commodities and manufactured/processed products/articles from such materials that are subject to TSCA occurs infrequently and at low levels (see Section 5.3.2.5), and therefore their manufacture (including mining and import), processing, distribution in commerce, use, and disposal does not significantly contribute to the unreasonable risk of asbestos. Note that EPA did not assess exposures from asbestos unintentionally present in trace amounts in products that are not subject to TSCA such as cosmetics; thus, EPA's finding on trace amounts should not be extrapolated to conclusions about uses of asbestos that are not subject to TSCA.

This risk determination for asbestos as a chemical substance reflects policy changes announced by EPA in June 2021 (and further discussed in Section 6.1.1) and is based on the risk estimates and risk-related factors in the Part 1 Risk Evaluation for Asbestos. The policy changes announced by the Agency in June 2021 do not change the conditions of use that significantly contribute to the unreasonable risk of asbestos evaluated in Part 1. In addition, this risk determination is based on the risk estimates and risk-related factors presented in this Part 2 Risk Evaluation for Asbestos.

EPA had limited data available to evaluate certain COUs. In determining whether COUs that the Agency had limited information significantly contributed to the unreasonable risk of asbestos, EPA integrated reasonably available information in a qualitative risk characterization using professional judgement of read-across evidence to other COUs with similar expected exposure scenarios. The qualitative analyses are a best estimate of what EPA expects given the weight of scientific evidence without overstating the science. Environmental and human health risk characterizations for those COUs with limited data are in Sections 4.3.1and 5.3.2 of this risk evaluation. Additional explanation regarding the qualitative risk characterizations and EPA's conclusion about whether the COU significantly contributes to unreasonable risk are included in Sections 6.2.1.4, 6.2.1.5, 6.2.1.6, and 6.2.1.7.

Whether EPA makes a determination of unreasonable risk for a particular chemical substance under amended TSCA depends upon risk-related factors beyond exceedance of benchmarks, such as the endpoint under consideration, the reversibility of effect, exposure-related considerations (*e.g.,* duration, magnitude, or frequency of exposure, or population exposed), and the confidence in the information used to inform the hazard and exposure values. For COUs evaluated quantitatively, to determine if a COU contributed significantly to unreasonable risk, EPA compared the risk estimates of the scenario used to evaluate the COUs and considered whether the risk from the COU was best represented by the

central tendency or high-end risk estimates. Additionally, in the risk evaluation, the Agency describes the strength of the scientific evidence supporting the human health and environmental assessments as robust, moderate, or slight. Robust confidence suggests thorough understanding of the scientific evidence and uncertainties, and the supporting weight of scientific evidence outweighs the uncertainties to the point where it is unlikely that the uncertainties could have a significant effect on the exposure or hazard estimate or the overall risk characterization. Moderate confidence suggests some understanding of the scientific evidence and uncertainties, and the supporting scientific evidence weighed against the uncertainties is reasonably adequate to characterize exposure or hazard estimates or the overall risk characterization. Slight confidence is assigned when the weight of scientific evidence may not be adequate to characterize the scenario, and when the Agency is making the best scientific assessment possible in the absence of complete information. This risk evaluation discusses important assumptions and key sources of uncertainty in the risk characterization. These are described in more detail in the respective weight of scientific evidence conclusions sections for fate and transport, environmental release, environmental exposures, environmental hazards, and human health hazards. It also includes overall confidence and remaining uncertainties sections for human health and environmental risk characterizations.

In making the asbestos unreasonable risk determination, EPA considered risk estimates with an overall confidence rating of slight, moderate, robust, and the Agency considered COUs with limited reasonably available information. In general, EPA makes an unreasonable risk determination based on risk estimates that have an overall confidence rating of moderate or robust, because those confidence ratings indicate the scientific evidence is adequate to characterize risk estimates despite uncertainties or is such that it is unlikely the uncertainties could have a significant effect on the risk estimates (Section 5.3.5).

## 6.1  Background

### 6.1.1  Policy Changes Relating to a Single Risk Determination on the Chemical Substance and Assumption of PPE Use by Workers

From June 2020 to January 2021, EPA published risk evaluations on the first 10 chemical substances, including the 2020 *Risk Evaluation for Asbestos, Part 1: Chrysotile Asbestos* (U.S. EPA, 2020c). The risk evaluations included individual unreasonable risk determinations for each COU evaluated. The determinations that particular conditions of use did not present an unreasonable risk were issued by order under TSCA section 6(i)(1).

In accordance with Executive Order 13990 ("Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis") (EOP, 2021a) and other Administration priorities (EOP, 2021b, c, d; EPA Press Office, 2021), EPA reviewed the risk evaluations for the first 10 chemical substances to ensure that they met the requirements of TSCA, including conducting decision-making in a manner that is consistent with the best available science and weight of scientific evidence.

As a result of this review, EPA announced plans to revise specific aspects of certain of the first 10 risk evaluations in order to ensure that the risk evaluations appropriately identify unreasonable risks and thereby can help ensure the protection of health and the environment (EPA Press Office, 2021). The changes to no longer assume the use of PPE in making the unreasonable risk determination does not change what conditions of use evaluated under Part 1 would contribute to a single unreasonable risk determination for asbestos as a chemical substance. Further discussion of the decision to not rely on assumptions regarding the use of PPE in this *Risk Evaluation for Asbestos Part 2: Supplemental Evaluation Including Legacy Uses and Associated Disposals* is provided in Sections 6.2.1.2 and 6.2.1.3 below. With the issuance of the Part 2 Risk Evaluation for Asbestos, the Agency is determining that this

**Table_Apx G-29. Summary of Inhalation Monitoring Data for Firefighting and Other Disaster Response Activities for Volunteer Firefighters**

| Exposure Concentration Type | High-End (f/cc) | Central Tendency (f/cc) | Number of Samples | Data Quality Rating of Air Concentration Data | Weight of Scientific Evidence |
|---|---|---|---|---|---|
| 8-hour TWA Exposure Concentration | 0.39 | 2.0E−02 | | | |
| Chronic, Non-cancer ADC[a] | 3.5E−04 | 1.8E−05 | 62 | High | Moderate to Robust |
| 30-min Short-Term Exposure Concentration | − | − | | | |
| [a] The average daily concentration (ADC) presented here is based on 8-hour TWA monitoring data. Short-term exposure data were not available for this scenario. | | | | | |

***Strengths, Limitations, Assumptions, and Uncertainties***

The primary strength of the data used for this assessment is the use of directly applicable monitoring data, which is preferable to other assessment approaches such as modeling or the use of occupational exposure limits. An additional strength is that the literature sources include information on worker activities. The data from these four studies only cover a narrow selection of building/structure fires, and it is unclear how representative the data are for all disaster response sites and all disaster response workers across the United States. Differences in work practices and engineering controls across sites can introduce variability and limit the representativeness of any one site relative to all sites. Two of the sources only provided ranges for their data sets, potentially reducing the usefulness of the data and the accuracy of the exposure estimates. There is also uncertainty in EPA's assumption of exposure frequency and exposure duration.

# G.12 Use, Repair, or Removal of Industrial and Commercial Appliances or Machinery Containing Asbestos

### G.12.1 Process Description

Various industrial and commercial appliances and machinery may contain asbestos. The asbestos may be present in reinforced plastics, industrial brake and gear clutches, and packing seals within machinery. Workers may come into contact with these materials in friable forms during use, repair, or removal of the appliances and machinery containing asbestos. In general, repair of appliances containing asbestos consists of disassembly of the machinery, replacement and/or repair of individual parts, and reassembly of the machinery. Often, asbestos-containing components of the machinery are replaced with components that do not contain asbestos, and the asbestos waste or debris is disposed of (Mlynarek and Van Orden, 2012). Friable ACM must be disposed of in leak tight containers (*e.g.,* 6 mil polyethylene bags). Bags can be placed in 55-gallon drums for additional protection (Banks, 1991).

Brake linings and gaskets are some of the most common machinery parts that contain asbestos. During brake repair and removal, the brakes are disassembled by removing the brake housing using a manual or power wrench to loosen bolts holding the housing in place. Then, the entire brake apparatus is removed from the machinery. Compressed air is used to clear the brake of any dusts and debris which may contain asbestos. Last, the brake linings are removed from the brakes (Madl et al., 2009). During gasket and valve repair and removal, mechanics remove gaskets with a scraper and use a brush to clean remaining residue from the surface (Liukonen and Weir, 2005). Installed gaskets typically remain in operation anywhere from a few weeks to 3 years; the timeframe before being replaced is largely dependent upon the temperature and pressure conditions (ACC, 2017), whether due to detected leaks or as part of a routine maintenance campaign. Used asbestos containing gaskets are handled as regulated

non-hazardous material and are immediately bagged after removal from process equipment and then placed in containers designated for asbestos containing waste. There are legacy gaskets that may contain asbestos; however, occupational exposures to gaskets containing asbestos were covered in *Risk Evaluation for Asbestos Part 1: Chrysotile Asbestos* (U.S. EPA, 2020c) and no further analysis was necessary here for legacy gaskets.

Asbestos-containing materials in industrial or commercial appliances and machinery may be in solid form, sometimes in blocks or sheets (Scarlett et al., 2012; Mancuso, 1991). Table_Apx G-30 provides common asbestos-containing materials to which workers may be exposed, along with the associated asbestos concentrations of the ACM. EPA did not find any chemical-specific volumes for asbestos handled during the use, repair, or disposal of industrial and commercial appliances or machinery containing asbestos.

**Table_Apx G-30. Legacy Asbestos Concentrations for Common Appliance and Machinery Components**

| Product Category | Percentage | Form of Asbestos | Source |
|---|---|---|---|
| Friction Materials | 15–70 | C | (IPCS, 1986) |
| Molded Plastics and Battery Boxes | 55–70 | C and Cr | (IPCS, 1986) |
| Jointings and Packings | 25–85 | C and Cr | (IPCS, 1986) |
| Fillers | 25–98 | C and Cr | (IPCS, 1986) |
| Lagging | 9–96 | C and A | (Scansetti et al., 1993) |
| Machinery Insulation | 15–60 | C and A | (Standard Oil, 1981) |
| C = Chrysotile; A = Amosite; Cr = Crocidolite | | | |

EPA did not identify data on site operating schedules; therefore, EPA assumes 250 days/yr of operation. However, sources report that the lifespan of furnace linings and other asbestos-containing machinery linings can range from approximately 400 to 600 heats. In addition, the length of time that a furnace operates once it is fully heated is typically 6 to 7 years, and up to 10 years, after which time the furnace is shut down and is relined (Hollins et al., 2019). It is assumed that industrial workers would be primarily exposed to the asbestos while replacing the lining once every 6 to 10 years. Exposure frequencies for workers may be higher for other types of appliances or machinery.

**G.12.2 Facility Estimates**

CDR data were not available for this OES. Therefore, EPA used BLS and SUSB data to estimate the number of establishments. Because it is assumed that employees work only at the employment establishment, the number of establishments is considered equal to the number of sites for this OES. EPA assumed that establishments involved in the use, repair, or removal of industrial or commercial appliances or machinery containing asbestos are classified under the applicable NAICS codes 324110 (Petroleum Refineries), 325199 (All Other Basic Organic Chemical Manufacturing), and 423830 (Industrial Machinery and Equipment Merchant Wholesalers). Based on the 2021 County Business Patterns data published by the U.S. Census Bureau, there are 29,211 establishments classified under these NAICS codes. This provides a high-end bounding estimate for the number of sites for this OES.