No. 24-60193

# In The United States Court of Appeals for the Fifth Circuit

Texas Chemistry Council; American Chemistry Council; Georgia Chemistry Council; Asbestos Disease Awareness Organization; United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO; Ohio Chemistry Technology Council,

*Petitioners*,

v.

United States Environmental Protection Agency,

*Respondent.*

———————————

### Consolidated with

### No. 24-60281

American Public Health Association; Collegium Ramazzini; Local F-116 (Vanderberg Professional Firefighters), International Association of Fire Fighters; Local F-253 (Fort Myer Professional Firefighters), International Association of Firefighters; The FeelGood Foundation; Henry A. Anderson, *Medical Doctor*; Brad Black, *Medical Doctor*; Barry Castleman, *Doctor of Science*; Raja Flores, *Medical Doctor*; Arthur Frank, *Medical Doctor, Doctor of Philosophy*; Phil Landrigan, *Medical Doctor, Master of Science*; Richard Lemen, *Doctor of*

*Philosophy, Master of Public Health*; Steven Markowitz, *Medical Doctor, Doctor of Public Health*; Jacqueline Moline, *Medical Doctor, Master of Public Health*; Celeste Monforton, *Doctor of Public Health, Master of Public Health*; Christine Oliver, *Medical Doctor, Master of Public Health, Master of Science*; Andrea Wolf, *Medical Doctor, Master of Public Health*,

*Petitioners*,

v.

United States Environmental Protection Agency; Michael Regan, *Administrator, United States Environmental Protectional Agency*;

*Respondents.*

---

Consolidated with

No. 24-60333

Olin Corporation,

*Petitioner*,

v.

United States Environmental Protection Agency; Michael Regan, *Administrator, United States Environmental Protection Agency*,

*Respondents.*

Petition for Review from an Order of the Environmental Protection Agency

Agency No. 40 CFR Part 751

Agency No. 89 Fed.Reg. 21970

## FINAL REPLY BRIEF OF PETITIONER UNITEDSTEEL WORKERS

Randy S. Rabinowitz, Esq.
Victoria L. Bor, Esq.
Occupational Safety & Health
Law Project, LLC
P.O. BOX 3769
Washington, DC 20027
202 256-4080

Nathan Finch, Esq.
Motley Rice LLC
401 9th Street NW
Suite 630
Washington, DC 20004
(202) 607-8998

*Attorneys for Petitioner USW*

# CERTIFICATE OF INTERESTED PERSONS

1. Nos. 24-60193; 24-60281; and 24-60333; under consolidated title, *Texas Chemistry Council v. EPA* (2024).

2. The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

(1)  Occupational Safety & Health Law Project, LLC (counsel)

(2)  Randy S. Rabinowitz (counsel)

(3)  Victoria L. Bor (counsel)

(4)  Nathan Finch (counsel)

(5)  Motley Rice (counsel)

(6)  Robert M. Sussman, Sussman & Associates (counsel)

(7)  Henry A. Anderson, MD (petitioner)

(8)  Brad Black, MD (petitioner)

(9)  Barry Castleman, ScD (petitioner)

(10) Raja Flores, MD (petitioner)

(11) Arthur Frank, MD, PhD (petitioner)

(12) Phil Landrigan, MD, MSc (petitioner)

(13) Richard Lemen, PhD, MSPH (petitioner)

(14) Steven Markowitz, MD, DrPH (petitioner)

(15) Jacqueline Moline, MD, MSc (petitioner)

(16) Celeste Monforton, DrPH, MPH (petitioner)

(17) Christine Oliver, MD, MPH, MSc (petitioner)

(18) Dan Whu, MD, MPH (International Association of Fire Fighters) (petitioner)

(19) Andrea Wolf, MD, MPH (petitioner)

(20) American Public Health Association (petitioner)

(21) Collegium Ramazzini (petitioner)

(22) IAFF Local F-116 (Vandenberg Professional Firefighters) (petitioner)

(23) IAFF Local F-253 (Fort Myer Professional Firefighters) (petitioner)

(24) The FeelGood Foundation (petitioner)

(25) Asbestos Disease Awareness Organization (ADAO) (petitioner in No. 24-60193)

(26) Linda Reinstein (President ADAO)

(27) United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL- CIO/CLC (USW) (petitioner in No. 24-60193)

(28) Texas Chemistry Council (TCC) (petitioner in No. 24-60193)

(29) Baker Botts L.L.P. (TCC Counsel)

(30) Carter, Beau (TCC Counsel)

(31) Aaron M. Streett (TCC counsel)

(32) American Chemistry Council (ACC) (petitioner in No. 24-60193)

(33) Georgia Chemistry Council (GCC) (petitioner in No. 24-60193)

(34) Crowell and Moring (Counsel for ACC and GCC)

(35) David Chung (Counsel for ACC and GCC)

(36) Warren Lehrenbaum (Counsel for ACC and GCC)

(37) Ohio Chemistry Technology Council (OCTC) (petitioner in No. 24-60193)

(38) Robert J. Karl (counsel for OCTC)

(39) United States Environmental Protection Agency (respondent)

(40) Lee Zeldin , Administrator, United States Environmental Protection Agency (respondent)

(41) Adam Gustafson,  Principal Deputy Assistant Attorney General, US Department of Justice (Respondents' Counsel)

(42) Laura Glickman, US Department of Justice (Respondents' Counsel)

(43) Sean Donahue, General Counsel for Respondent United States Environmental Protection

_s/ Randy S. Rabinowitz_
_Attorney of record for Petitioner,_
_USW_

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.........................................................i

TABLE OF CONTENTS ..............................................................................iv

TABLE OF AUTHORITIES...........................................................................v

    I.  EPA's Brief Fails to Address USW's Challenge to the Final Rule. ...............................................................................4

    II.  EPA's Explanation for Its Failure to Protect Non-Titanium Dioxide Workers from Chrysotile Exposures Does Not Withstand Scrutiny. .........................................6

    III. EPA Now Concedes The Final Rule Should Have, But Did Not, Protect Non-Titanium Dioxide Chemical Industry Workers from Asbestos Risks............................................13

    IV. This Court Must Order EPA Expeditiously To Issue a Rule That Protects Chemical Industry Workers Using Sheet Gaskets from Asbestos Exposure...........................15

CONCLUSION.........................................................................................18

CERTIFICATE OF COMPLIANCE ...................................................................20

CERTIFICATE OF SERVICE ........................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Environmental Defense Fund v. EPA,*
    124 F.4th 1 (D.C. Cir. 2024) .......................................................... 17

*FDA v. Wages and White Lion Inv.,*
    603 U.S. 542 (2025) ...................................................................... 10

*Perez v. Mortgage Bankers,*
    575 U.S. 92 (2015) ................................................................... 13, 16

*Safer Chemicals v. EPA,*
    943 F. 3d 397 (9th Cir. 2019) ........................................................ 8

*SEC v. Chenery Corp.,*
    318 U.S. 80 (1943) ........................................................................ 10

*Wages & White Lion Inv. v. FDA,*
    90 F.4th 357 (5th Cir.) (en banc) ................................................. 10

**Statutes**

15 U.S.C. § 2605 ................................................................... 1, 7, 17

15 U.S.C. § 2650 ............................................................................ 16

**Regulations**

29 C.F.R. § 1910.1001 ................................................................... 11

29 C.F.R. § 1926.1101 ................................................................... 11

40 C.F.R. § 751.505 ........................................................................ 5

40 C.F.R. § 751.511 ............................................................. 2, 5, 16

EPA, "Asbestos Part 1: Chrysotile Asbestos; Regulation of Certain
    Conditions of Use Under Section 6(a) of the Toxic Substances
    Control Act (TSCA): Final Rule," 89 Fed. Reg. 21970 (Mar.
    28, 2024) ............................................................................... 1, 4, 7

EPA, "Asbestos Part 1: Chrysotile Asbestos; Regulation of Certain Conditions of Use Under Section 6(a) of the Toxic Substances Control Act (TSCA): Proposed Rule," 87 Fed. Reg. 21706 (Apr. 12, 2022) ................................................................5

**Rules**

Fed. R. Evid. 201 ................................................................3

The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO (USW) has petitioned this Court to direct the Environmental Protection Agency (EPA) to extend the interim protections of the Workplace Chemical Protection Program in the final rule titled "Asbestos Part 1: Chrysotile Asbestos: Regulation of Certain Conditions of Use Under the Toxic Substances Control Act (TSCA)" (the Final Rule).

In its opening brief, USW established that EPA reasonably determined that "processing and industrial use of chrysotile asbestos-containing sheet gaskets in chemical production" posed an unreasonable risk to workers exposed when they engaged in receiving, removing, and bagging these gaskets for disposal. *See* EPA, "Asbestos Part 1: Chrysotile Asbestos: Regulation of Certain Conditions of Use Under Section 6(a) of the Toxic Substances Control Act (TSCA): Final Rule," 89 Fed. Reg. 21970, 21983 (Mar. 28, 2024), JA at 14. Once EPA makes such a determination, TSCA mandates that the Agency issue a risk management rule that will eliminate "such risk." 15 U.S.C. § 2605(a). As USW demonstrated, by failing to protect asbestos sheet gasket workers in non-titanium dioxide chemical production facilities from the

unreasonable risks asbestos sheet gaskets pose, EPA has violated the law.[1]

EPA responded, first, by completely mischaracterizing USW's challenge as focused on the two-year period in which the agency is permitting chemical companies outside the titanium dioxide industry to continue to install new asbestos gaskets without implementing worker protections. Respondent's Brief, Dkt. No. 153 (EPA Br.) at 118-21. This is a strawman: USW is not challenging EPA's two- year delay in banning asbestos sheet gaskets. When EPA briefly responded to USW's actual challenge – the Agency's failure to include non-titanium dioxide workers in the protections afforded other workers by the Workplace Chemical Protection Program (WCPP), 40 C.F.R. §751.511, for as long as the gaskets remain in use – it asserted, for the first time, that rather than protecting these workers under this Part 1 Chrysotile Asbestos Rule, it plans to do so at some undetermined date in the future, when it

---

[1] For convenience, we will refer to the group of chemical workers who require protection from asbestos exposure but who are not covered by the Final Rule as workers in the non-titanium dioxide chemical industry.

establishes risk management rules to govern Part 2 - Legacy Asbestos. EPA Br. at 121.

Nothing in any of EPA's analyses of asbestos risks or the preamble to the Final Rule supports this claim. Moreover, since it filed its brief, EPA has publicly stated – in agreement with USW's arguments – "that the Biden Administration's risk management rule failed to adequately protect chemical industry workers from health risks posed by chrysotile asbestos." Declaration of Randy Rabinowitz (Rabinowitz Decl.) at ¶4, 6 (attached in the appendix to this Brief).[2] While initially signaling that it would rectify this failure through new rulemaking, EPA has now stated it will instead do so through guidance, action that would not afford the affected workers the relief USW is here seeking and that EPA acknowledges they are due.

---

[2] The statements EPA made to the New York Times in July 2025 and to Inside TSCA in September 2025 obviously were not part of the record before the Agency when it published the Final Rule. However, the statements are relevant to USW's claims and counsel for EPA has confirmed the Agency made the statement to the New York Times. Under Rule 201, Federal Rules of Evidence, a district court could take judicial notice of EPA's statement; we respectfully request the Court similarly do so here. *See* Fed. R. Evid. 201.

As we explain below, it remains necessary for this Court to order EPA to adopt, under an expedited timetable, risk management rules that eliminate the unreasonable risk workers in the non-titanium dioxide chemical industry face when working with asbestos sheet gaskets.

## I. EPA's Brief Fails to Address USW's Challenge to the Final Rule.

EPA completed its Part 1 Risk Evaluation for chrysotile asbestos in 2020 and determined that the use of asbestos sheet gaskets in chemical production posed an unreasonable risk to exposed workers. Part 1 Risk Evaluation (RE) at 231-240; JA at 1141-50. As EPA explained in the preamble to the Final Rule, workers in all kinds of chemical production facilities face this risk when they are engaged in installing, removing, and disposing of these gaskets. 89 Fed. Reg. 21970, 21983; JA at 14. No party to these proceedings has seriously questioned EPA's finding that exposure to chrysotile asbestos – like all asbestos fibers – poses an unreasonable risk.

In response to that Risk Evaluation, EPA proposed to ban asbestos sheet gasket use throughout the chemical industry after two years. EPA, "Asbestos Part 1: Chrysotile Asbestos; Regulation of Certain Conditions of Use Under Section 6(a) of the Toxic Substances Control Act (TSCA):

Proposed Rule," 87 Fed. Reg. 21706 (Apr. 12, 2022); JA at 43, 56. As its primary regulatory alternative, the Agency proposed providing the chemical industry with 5 years in which to phase out its use of asbestos sheet gaskets, while requiring any company that continued to use asbestos gaskets to implement worker chemical protection plans (WCPPs) after 180 days. JA at 54, 59.

Nothing in the proposed Rule suggested that EPA was contemplating implementing different levels of protection for titanium dioxide workers and those in the non-titanium dioxide chemical industry. Yet, the Final Rule establishes two very different regimes: Consistent with its primary regulatory alternative, EPA is prohibiting all chemical facilities from installing asbestos sheet gaskets after two years. Titanium oxide producers must eliminate all asbestos gaskets within five years and implement worker protections after 180 days. 40 C.F.R. §751.511.[3] In the non-titanium dioxide chemical industry, however, owner/operators may continue to use, repair, remove and dispose of asbestos sheet gaskets for

_____

[3] Chlor-alkali facilities – the only other industry that is permitted to continue using chrysotile asbestos for a period of years must also implement worker protections within 180 days of the effective date of the Final Rule. 40 C.F.R. §§751.505, 751.511.

their useful life – which EPA has acknowledged could extend for decades, EPA Br. at 119 – without implementing any worker protections.

Thus, EPA's argument that it reasonably failed to require worker protections during the two years in which new asbestos gaskets may be installed is completely beside the point. EPA Br. at 118. As USW's brief makes clear, our focus is on the indefinite time during which asbestos gaskets will continue to be used, and chemical production workers exposed to asbestos' unreasonable risks, without any protection. Non-titanium dioxide workers are the only group of workers who will have continued asbestos exposure but no worker protections under the Final Rule. TSCA does not permit EPA to ignore the unreasonable risks these workers face.

## II.    EPA's Explanation for Its Failure to Protect Non-Titanium Dioxide Workers from Chrysotile Exposures Does Not Withstand Scrutiny.

When EPA briefly attempts to justify its failure to require the non-titanium dioxide chemical industry to implement worker protections during the extended periods in which exposure to asbestos will continue, its arguments fail to withstand scrutiny.

EPA is evaluating and regulating asbestos' risks in two separate proceedings: Part1 addressed new and ongoing uses of chrysotile asbestos; the adequacy of the Final Rule EPA promulgated in response to that risk evaluation is the subject of the petitions currently pending before this Court. Part 2 will address "legacy" exposures, that is, exposures to previously installed asbestos-containing products. *See* Opening Brief of Petitioner USW, Dkt. No. 109 (USW Br.) at 11 n.5; EPA Br. at 121.

As TSCA requires, 15 U.S.C. §2605(b)(4)(D), EPA defined the scope of each proceeding. The scope of its Part 1 Risk Evaluation includes "processing and industrial use of chrysotile asbestos-containing sheet gaskets in chemical production." JA at 137-45. Its Part 1 Risk Evaluation determined this asbestos use posed an unreasonable risk to exposed workers when they installed, removed and disposed of the gaskets. 89 Fed. Reg. 21970, 21983; JA at 14; RE at 248; JA at 1158. This determination triggered EPA's duty to adopt a rule to eliminate that unreasonable risk. By its own admission, EPA did not do so.

Instead, EPA asserts in its' brief that it had no duty to protect asbestos sheet gasket workers in the non-titanium dioxide chemical

industry under its Part 1 risk management rule, because it plans to do so during its Part 2 proceedings. [4] EPA Br. at 121. EPA explains that the use of gaskets in titanium plants – including installation, removal and disposal – will end after 5 years, while it was convinced to permit other chemical plants to forestall removal and disposal until the end of their useful life. *Id.* at 119. And it asserts that removal beyond the first two years constitutes a legacy use, which is beyond the scope of this rulemaking. *Id.*

Unfortunately for EPA, the Agency's analysis of asbestos' risks fails to draw the distinction EPA asserted in its brief. While EPA now claims its Part 1 Risk Evaluation found unreasonable risk only for "installation and replacement of *new* asbestos-containing sheet gaskets," EPA Br. at 27 (emphasis added), the Risk Evaluation says nothing of the sort. RE at 248; JA at 1158. (listing, among the "conditions of use" of asbestos

---

[4] In *Safer Chemicals v. EPA*, 943 F. 3d 397, 425 (9th Cir. 2019), the Ninth Circuit held that ongoing exposure to in-place toxins represents a "use" under TSCA, a ruling that required EPA to revisit earlier risk evaluations when it only considered exposures to new uses of asbestos. While EPA could have modified its approach to asbestos sheet gaskets by specifying that it was including exposures to "legacy" gaskets in its Phase 2 proceedings, it never did so.

which EPA determined posed unreasonable risks "Processing and Industrial Use of Chrysotile Asbestos-Containing Sheet Gaskets in Chemical Production).

Just as tellingly, gasket removal in chemical production appears nowhere in EPA's Scope Document for its Part 2 Risk Evaluation.[5] Nor does the Part 2 Risk Evaluation itself include gasket removal in chemical production among the uses EPA evaluated.[6]  In fact, EPA's citation in its brief to the Part 2 Risk Evaluation undercuts its claim.  The Part 2 Risk Evaluation states "[t]here are legacy gaskets that may contain asbestos; however, occupational exposures to gaskets containing asbestos were covered in Risk Evaluation for Asbestos Part 1: Chrysotile Asbestos (U.S.

---

[5] *See* *https://www.epa.gov/system/files/documents/2022-06/Asbestos%20Part%202_FinalScope.pdf* at Table 2-2 (listing all conditions of use to be included in the risk evaluation). EPA did not include the Part 2 Scope in the administrative record for this litigation.

[6] Neither did EPA include the Part 2 Risk Evaluation, which was published in December 2024, in the administrative record.  EPA however cited the Part 2 Risk Evaluation in its brief, and USW has attached the relevant pages from that document as an appendix to this brief. *See* Appendix ("App.") at 13-14

EPA, 2020c) and no further analysis was necessary here for legacy gaskets." EPA Br. at 40-41, referring to Part 2 RE at 314-315.[7]

Nothing in either risk evaluation suggests that EPA considered but decided to defer action on protecting workers in the non-titanium dioxide chemical industry. Nowhere in the preambles to either the Part 1 proposed or Final Rule did EPA explain that it intended to address these aspects of asbestos gasket use in its Part 2 risk management rule. EPA did not offer this explanation for its failure to protect non-titanium dioxide chemical production workers until it filed its brief in this case, months after USW raised the issue.

The post hoc rationalization EPA now offers cannot stand, as "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *SEC v. Chenery Corp.,* 318 U.S. 80, 87 (1943), *quoted in Wages & White Lion*

---

[7] The only other citation EPA gives to support its argument that it gave notice that asbestos exposure during sheet gasket removal in non-titanium dioxide chemical production plants will be addressed in its Part 2 proceedings (EPA Br. At 40-41, referring to Part 2 RE at 201 App. At 9) makes no reference to the risks from removal of asbestos sheet gaskets.

*Inv. v. FDA,* 90 F.4th 357, 371 (5th Cir.) (en banc), *rev'd on other grounds in FDA v. Wages and White Lion Inv.,* 603 U.S. 542 (2025).

No different result is required by EPA's belated claim that it did not have enough exposure data to regulate asbestos sheet gaskets use in the non-titanium dioxide chemical industry during its Part 1 proceedings. EPA Br. at 119. While it is true that EPA relied on sampling data from a single titanium dioxide plant in reaching its unreasonable risk determination, EPA also had available to it several published studies evaluating gasket exposures. RE at 95-97; JA at 1005-07. Under its review criteria, these studies are considered relevant to exposure assessment. RE at 71; JA at 981. ("Where available, EPA used inhalation monitoring data from industry, trade associations, or the public literature.") Industry has been monitoring asbestos exposure for decades under regulations of the Occupational Safety and Health Administration, *see* 29 C.F.R. § 1910.1001(d); 29 C.F.R. § 1926.1101(f), but no such data was submitted to EPA. And while EPA's brief claims it intends to address exposures in the non-titanium dioxide chemical industry in its Part 2 risk management rule, the Part 2 risk evaluation includes no new exposure data. Part 2 RE at 314; App at 13.

Finally, there is no reason why USW, or any interested party for that matter, should have anticipated that EPA was contemplating dropping protections for chemical workers in either its proposed rule or its primary alternative, since EPA never mentioned that option in any public document during the rulemaking. In fact, like USW, industry stakeholders participating in this rulemaking understood that by proposing that chemical companies end the "use" of the gaskets in either two or five years, EPA intended to end *all* aspects of their use that EPA had found to cause unreasonable risk, including not only installation, but also removal and disposal. Thus, several industry commenters urged EPA, rather than requiring chemical companies to remove the gaskets within the proposed timeframes, to permit their continued use while requiring the companies to comply with the proposed WCPP until all gaskets were removed. *See* USW Br. at 31 n. 20.

While EPA argues that the "change in the proposed rule was a direct response to arguments raised during the comment period," EPA Br. at 124, if that were so, EPA was required to provide a reasoned explanation of the basis for its choice. Here, however, EPA said nothing about the issue. It ignored substantive comments from both the industry

and USW on the need to protect workers from the unreasonable risks asbestos gasket use poses. EPA's silence on this issue violates the Administrative Procedures Act. *Perez v. Mortgage Bankers,* 575 U.S. 92, 96 (2015).

### III. EPA Now Concedes The Final Rule Should Have, But Did Not, Protect Non-Titanium Dioxide Chemical Industry Workers from Asbestos Risks.

Since it filed its brief, EPA has disavowed the arguments in its brief and now seemingly agrees with USW that the Final Rule should have, but did not, include protection for workers exposed to asbestos when installing and removing asbestos sheet gaskets in the non-titanium dioxide chemical industry.

In February 2025, EPA requested, and the Court granted, an abeyance in the briefing schedule for these petitions so the new administration could evaluate whether changes to the Rule were appropriate. Dkt. Nos. 170, 182-1. On June 16, EPA requested a further abeyance while it engaged in rulemaking, "to reconsider the rule to determine whether interim workplace protections should apply during asbestos gasket replacement," exactly the issue USW has raised in this Court. Dkt. Nos. 201-1 and 202-2. And on July 7, EPA withdrew its

abeyance motion, informing the Court that it has "reconsidered the Asbestos Part 1 Rule, including the applicability of workplace protection requirements to the use of asbestos-containing sheet gaskets in non-titanium dioxide chemical production," and that instead of engaging in further rulemaking, it "plans to explore whether guidance could provide further clarity to stakeholders as they implement the Rule, particularly with respect to any workplace protection measures." Dkt. No. 213-2 at 2-3.

EPA further explained its position in a statement to the New York Times:

> EPA believes that the Biden Administration's risk management rule failed to adequately protect chemical industry workers from the health risks posed by chrysotile asbestos. In looking to address this, EPA told the court that the Agency intends to reconsider the rule to determine whether interim workplace protections should apply during asbestos gasket replacement.

> To remedy the previous Administration's approach, we notified the court that we intend to reconsider the applicability of interim workplace protection requirements during the replacement of asbestos gaskets for all workers. Given the extended timeline required for a formal rulemaking, EPA is going to take immediate action and issue formal guidance to strengthen the respiratory protection for workers that can be finalized and implemented faster to get additional protections in place as quickly as possible.

Rabinowitz Decl. at ¶4. EPA reiterated this concession in a statement to Inside TSCA. *Id.* at ¶6.

EPA's statement is a clear concession that USW should prevail on its claim that EPA had a mandatory duty to protect chemical industry workers installing and removing sheet gaskets from asbestos exposure and that its Final Rule fails to do so.

## IV. This Court Must Order EPA Expeditiously To Issue a Rule That Protects Chemical Industry Workers Using Sheet Gaskets from Asbestos Exposure.

Despite recognizing its duty to adopt a rule to protect chemical workers from asbestos exposures, EPA has not announced an actual plan to do so in a timely way. While initially informing this Court that it would undertake rulemaking to consider adding protections for chemical workers, (Dkt. No. 201), EPA now intends only to issue "guidance to strengthen [workers'] respiratory protection."

USW appreciates that EPA has recognized that it must act to protect chemical industry workers from the unreasonable risk posed by exposure to asbestos sheet gaskets. USW also appreciates that EPA recognizes it should "take immediate action" to do so. Unfortunately, its stated plan does not meet TSCA's requirements for three reasons.

First, TSCA requires EPA to take action to address unreasonable risks, such as the risk asbestos poses to chemical workers *by rule.* 15 U.S.C. §2650(a). Guidance documents, like other interpretative rules issued without notice-and-comment rulemaking, "do not have the force and effect of law," and are not enforceable. *Perez v. Mortgage Bankers Ass'n,* 575 U.S. at 95 (internal citations omitted). Here, EPA is proposing to issue guidance that would impose on chemical facilities obligations found nowhere in the Final Rule. Any such guidance, purporting to expand the requirements of the Final Rule, issued through notice and comment rulemaking, would have no legal effect.

Second, even if such guidance could be enforced, EPA's articulated plans do not go far enough. The Agency has announced that it will issue guidance to strengthen "respiratory protection for [chemical industry] workers." Throughout the Part 1 proceedings, EPA emphasized that respiratory protection does not adequately protect workers from asbestos' deadly effects. EPA Br. at 23-25, 35-36. In all other industries where asbestos exposure continues, the Final Rule requires owners/operators to implement engineering and administrative controls to reduce employee asbestos exposure. *See* 40 C.F.R. §751.511(e). EPA has offered no

explanation why respirators, rather than engineering and administrative controls, will adequately protect chemical industry workers, but not other workers. EPA cannot meet its duty to eliminate the unreasonable risk chemical industry workers face from asbestos exposure by pointing to unenforceable guidance encouraging a subpar method of worker protection.

Finally, TSCA required EPA to protect workers from asbestos no later than five years after it determined, in December 2020, that such exposures pose an unreasonable risk. 15 U.S.C. §2605(c)(1)(B)-(C) (requiring EPA to issue a risk management rule within two years but permitting up to a two-year extension). EPA has stated that "formal rulemaking" requires an "extended timeline," but that "guidance" would provide "immediate" protection. Rabinowitz Decl. at ¶4. No guidance has been issued. No schedule for rulemaking has been announced. When a rule is unlawful – and particularly when, as here, the Agency acknowledges such – "EPA cannot wait to address this unlawfulness at a later point in time." *Environmental Defense Fund v. EPA,* 124 F.4th 1, 19 (D.C. Cir. 2024). Given that the deadline for protecting these workers from the deadly hazards of asbestos has long since passed, and EPA has

no plans to adopt enforceable workplace protection rules in a timely way, the Court should impose a strict timetable by which EPA must do so.

## CONCLUSION

EPA found that workers throughout the chemical industry are exposed to unreasonable risks posed by asbestos sheet gaskets but has failed to enact a risk management rule that eliminates that risk for chemical workers outside titanium oxide facilities. EPA has offered no credible basis for failing to fulfill its statutory obligation, and has, in fact, conceded that it needs to take action to do so. As the measures it proposes to take are inadequate to fulfill its obligations, USW respectfully requests that this Court grant its petition and order EPA expeditiously to amend the Final Rule to require the broader chemical industry to comply with the Rule's WCPP for as long as asbestos sheet gaskets remain in their facilities.

Respectfully submitted,

/s/ Randy S. Rabinowitz

Randy S. Rabinowitz, Esq.

Victoria L. Bor, Esq.
Occupational Safety & Health Law Project, LLC
P.O. BOX 3769
Washington, DC 20027

18

202 256-4080

Nathan Finch, Esq.
Motley Rice LLC
401 9th Street NW
Suite 630
Washington, DC 20004
(202) 607-8998

*Attorneys for Petitioner USW*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief uses a monospaced typeface and contains 3550, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface in 14-point Century font using Microsoft Word.

Dated: January 9, 2026
      Washington, DC       _s/ *Randy S. Rabinowitz*_____
                                      *Attorney for Petitioner, USW*

## CERTIFICATE OF SERVICE

I hereby certify that I e-filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on January 9, 2026.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.


Dated:  January 9, 2026
        Washington, DC            _s/ *Randy S. Rabinowitz*_____
                                  *Attorney for Petitioner, USW*