

**David Y. Chung**
DChung@crowell.com
(202) 624-2587 direct

Crowell & Moring LLP
600 Fifth Street NW
Washington, DC 20001
+1.202.624.2500 main
+1.202.628.5116 fax

June 1, 2026

Lyle W. Cayce
U.S. Court of Appeals for the Fifth Circuit
Office Of the Clerk
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130-3408

Re:     *Texas Chemistry Council, et al. v. EPA*, No. 24-60193 and Consolidated Cases – Oral
        Argument Held June 1, 2026

Dear Mr. Cayce:

As the Court requested during oral argument today, I am providing this letter to address the Court's concerns regarding standing and, specifically, to direct the Court's attention to citations in the administrative record that support the Industry Petitioners' standing.

As Respondent U.S. Environmental Protection Agency ("EPA") acknowledged during oral argument, companies that operate chlor-alkali facilities—such as Olin Corporation, which was formerly a petitioner in Case No. 24-60333—have standing to challenge the EPA rule at issue in this case, which bans the use of chrysotile asbestos at those facilities. The injury from a ban on ongoing uses of chrysotile asbestos is self-evident, directly traceable to the final rule, and redressable by this Court's vacatur of the ban.

As EPA's Final Rule makes clear, there are three companies operating a total of eight chlor-alkali facilities who are subject to the Final Rule's ban. *See* JA2. While EPA anticipates all three companies will convert to non-asbestos technologies "in the coming decades even without the final rule," JA2, the Final Rule forces all three companies to transition away from asbestos within the next five to twelve years. JA16. Because the Final Rule "accelerates" the timeline for transitioning away from asbestos diaphragms, EPA fully acknowledges that the ban will impose incremental costs on directly regulated entities that are *in addition to* the approximately $2.8 billion to $3.4 billion that it will cost all eight facilities to transition away from asbestos. JA2; *see also* JA26-27.

The following record citations make clear that owners of chlor-alkali facilities asked for more time to transition away from asbestos than EPA's Final Rule allows:



- Olin Corporation[1] asked for seven years, *see* JA2341, but only received five years. *Compare* JA2341 (Olin Comments, dated Apr. 4, 2023) *with* JA11-12 (Final Rule's explanation for why Olin must transition in five years).

- Occidental Chemical Corporation, also known as OxyChem, requested fifteen years to transition away from asbestos. *See, e.g.*, JA2333 (OxyChem presentation highlighting that conversions will require at least fifteen years); JA2146 (American Chemistry Council comments urging that EPA "provide at least 15 years to phase out the use of asbestos diaphragms"); JA2409 ("ACC and its member companies support an orderly transition away from the use of chrysotile asbestos diaphragms in chlor-alkali manufacture over a period of not less than 15 years"); JA2208 (ACC comments referring to member company Occidental Chemical Corporation); JA2343 (Petitioner Asbestos Disease Awareness Organization's comments referencing ACC's and its member company Occidental Chemical Corporation's requests for at least 15 years to complete the transition).

The foregoing administrative record citations confirm that the Industry Petitioners' have standing to sue on behalf of member companies that are directly injured by the Final Rule's ban on ongoing uses of chrysotile asbestos, including by EPA's decision to shorten the timeline for transitioning away from asbestos from "decades" to just 5-12 years. *See Tex. Corn Producers v. EPA*, 141 F.4th 687, 695-96 (5th Cir. 2025) (association has standing when individual members would have standing, the association seeks to vindicate interests germane to its purpose, and neither the claim asserted nor the relief request requires the individual members' participation).[2] Here, as in *Texas Corn Producers*, the second and third requirements are easily satisfied, as the Industry Associations' missions are to represent the economic and legal interests of their members.[3] *See id.* at 695. And because Industry Petitioners seek only declaratory and equitable relief, the participation of individual member companies is not necessary in this case. *See id.*

---

[1] Although Olin Corporation was not a member of Petitioner American Chemistry Council at the outset of this case, it is now an ACC member. *See* "ACC Manufacturer Members," *available at* https://www.americanchemistry.com/about-acc/membership/manufacturer-members.

[2] This Court directed counsel to be prepared to discuss this Court's recent decision in *United States v. Texas*, 173 F.4th 659 (5th Cir. 2026) (*en banc*), but the Industry Petitioners have not alleged organizational standing. Rather, the Industry Petitioners have only alleged associational standing (also known as representational standing). As this Court has previously recognized, organizational standing and associational standing are "critically distinct," and an association can establish standing under either doctrine. *See Deep South Ctr. for Envtl. Justice v. EPA*, 138 F.4th 310, 317 n. 1 (5th Cir. 2025).

[3] Indeed, Petitioner American Chemistry Council participated extensively throughout every stage of the rulemaking process. *See, e.g.*, JA75-97 (ACC comments on scoping); JA148-189 (ACC supplemental comments on scoping, which attached member company monitoring data); JA778-796 (ACC comments on draft risk evaluation); JA2141-2251 (ACC comments on proposed rule); JA2403-2410 (ACC comments on Notice of Data Availability).



Finally, this Court's recent decision in *Texas v. Nuclear Regulatory Commission* makes it clear that a petitioner is generally required "to present specific facts supporting standing through citations to the administrative record or affidavits or other evidence attached to its opening brief, ***unless standing is self-evident***." 78 F.4th 827, 835 (5th Cir. 2023) (emphasis added); *see also Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 542 n.4 (5th Cir. 2019) ("overlook[ing] Petitioners' decision to include only a cursory discussion of standing because . . . they had a good-faith (though mistaken) belief that standing would be both undisputed and easy to resolve").

This is precisely one of those cases where standing is self-evident. The Final Rule bans ongoing uses of asbestos by Industry Petitioners' member companies. The Final Rule makes it clear that EPA's ban will impose incremental costs on those member companies above and beyond what the gradual transition away from asbestos would otherwise cost. Here, as in *Texas v. Nuclear Regulatory Commission*, "nothing in the record alerted [Industry] petitioners to the possibility that their standing would be challenged" until this Court's request on May 27, 2026 (ECF No. 326). Counsel for Industry Petitioners was prepared to provide record citations at oral argument and appreciate that the Court has invited this submission to further develop arguments and provide record citations to demonstrate standing.

For these reasons, Industry Petitioners have not forfeited constitutional standing, and this Court should resolve the merits of their petitions.

> */s/ David Y. Chung*
> David Y. Chung
> Crowell & Moring LLP
> 1001 Pennsylvania Ave., N.W.
> Washington, DC 20004
> (202) 624-2500
> (202) 628-5116 (fax)
> dchung@crowell.com
>
> *On behalf of Industry Petitioners*