June 10, 2026

**Sussman & Associates
3101 Garfield St. NW
Washington, DC 20008
202-716-0118**
bobsussman1@comcast.net

Honorable Lyle W. Cayce
Clerk
United States Court of Appeals for the Fifth Circuit
Office of the Clerk
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130-3408

**Re:** *Texas Chemistry Council v. EPA*, **24-60193, consolidated with** *American Public Health Association v. EPA*, **No. 24-60281**

Dear Clerk Cayce:

On June 2, following the June 1 oral argument in these consolidated cases, the Court requested that the parties file simultaneous letter briefs on "issues relevant to the petitioners' standing." Document No. 333. The Court directed that these briefs address "how standing must be shown, whether it has been shown here, and if not, whether each petition for review must be dismissed."

This response to the Court's request is submitted by the Asbestos Disease Awareness Organization (ADAO), petitioner in No. 24-60193, and the seventeen organizations and individuals who are petitioners in No. 24-60281 (ADAO petitioners).

The ADAO petitioners initially addressed their associational standing in their letter to the Court following the June 1 oral argument. Document 331. This follow-up brief builds on and supplements the June 1 letter.

As described in that letter, petitioners' September 30, 2024 opening brief demonstrated their standing and was supported by three standing declarations Document 108-1 to 108-4. To reinforce their associational standing, petitioners yesterday moved for leave to submit four additional declarations. These declarations are from ADAO's President Linda Reinstein and three active ADAO supporters – Brent Kynoch, Roy Taylor and Dawn Fanning. Document 338-1 to 338-5.

In combination, the seven declarations establish that ADAO, APHA and IAFF Local F-253 have associational standing because their members and/or supporters are (1)

at risk of serious harms to their health from asbestos exposure; (2) these risks of harm are causally related to deficiencies and gaps in the Part 1 rule that petitioners challenge as contrary to TSCA and without substantial evidence in the record; and (3) the health risks to petitioners' members and supporters would be redressed by a decision of the Court determining that the challenged provisions of the rule must be remanded to EPA and strengthened to provide comprehensive   protections against unsafe asbestos exposure.

For this reason, the Court should affirm petitioners standing and decide their merits challenges to the Part 1 rule.

However, ADAO has serious concerns about the standing of the Chemical Industry Petitioners and outlines these concerns below.

**The ADAO Petitioners Addressed Standing in Their Opening Briefs and Accompanying Declarations**

In *Shrimpers & Fishermen of RGV v. Texas Comm'n on Env't Quality*, 968 F.3d 419, 423–24 (5th Cir. 2020), this Court held that a "petitioner who seeks judicial review of agency action invokes federal jurisdiction and therefore 'bears the burden of establishing' Article III standing." *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 536 (5th Cir. 2019) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). The Court emphasized that "[w]e agree with our sister circuits that in direct appellate review of a final agency action, '"the petitioner carries a burden of production' with respect to standing that is 'similar to that required at summary judgment.' *Sierra Club v. EPA*, 793 F.3d 656, 662 (6th Cir. 2015)." As the court later explained in *Texas v. Nuclear Regul. Comm'n*, 78 F.4th 827, 835 (5th Cir. 2023), "a petitioner is required to present specific facts supporting standing through citations to the administrative record or affidavits or other evidence attached to its opening brief, unless standing is self-evident."

To provide direction to petitioners for direct review of agency action, DC Circuit Local Rule 28(a)(7) requires that "the brief of the appellant or petitioner must set forth the basis for the claim of standing [and] include arguments and cite evidence establishing by a 'substantial probability' the claim of standing. If the supporting evidence is not contained in the administrative record, it must be included in an addendum to the brief."

Laying the groundwork for Rule 28(a)(7), the DC Circuit earlier explained in  *Sierra Club v. E.P.A.*, 292 F.3d 895, 899–901 (D.C. Cir. 2002) that "[r]equiring the petitioner to establish its standing at the outset of its case is the most fair and orderly process by which to determine whether the petitioner has standing to invoke the jurisdiction of the court." Accordingly, "a petitioner whose standing is not self-

evident should establish its standing by the submission of its arguments and any affidavits or other evidence appurtenant thereto at the first appropriate point in the review proceeding."

The ADAO petitioners have met these requirements. Their opening Brief (Document No. 272 at 40-47) presented the basis for their standing. Concurrent with that brief, petitioners submitted three standing declarations on September 30, 2024. Document 108-1 to 108-4. These declarations were on behalf of petitioners ADAO, International Association of Fire Fighters (IAFF) Local F-253, and American Public Health Association (APHA).

If the Court recognizes the standing of these three petitioners, the remaining co-petitioners would not need to demonstrate standing in their own right. Because "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement," courts may proceed even if only one of the Petitioners has standing. *Rumsfeld v. FAIR*, 547 U.S. 47, 52 n.2 (2006). *See also Texas v. Nuclear Regul. Comm'n*, 78 F.4th at 835.

## ADAO, Local F-253 and APHA Assert Associational Sanding on Behalf of Their Members and Supporters

IAFF Local F-253 and APHA are membership organizations; ADAO has an extensive network of supporters who are involved in and contribute to its programs to eliminate asbestos exposure and risk. Therefore, the three petitioners are asserting associational standing based on current and future harm to their members and supporters. If the Court accepts their showing of associational standing, it does not need to reach organizational standing issues under *US v. Texas*, 173 F. 4th 659 (5th Cir. 2026).

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) prescribes three requirements for associational standing: 1) the organization's members would otherwise have standing to sue in their own right, 2) the interests it seeks to protect are germane to the organization's purpose, and 3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt* and subsequent cases recognize that associational standing can apply to non-membership organizations if their supporters possess the "indicia of membership," such as funding, supporting and influencing the work of the organization. 432 U.S.at 344-45. Thus, *Flyers Rts. Educ. Fund, Inc. v. United States Dep't of Transp.*, 957 F.3d 1359, 1361–62 (D.C. Cir. 2020) upheld the standing of a non-membership organization "suing on behalf of individuals who were the 'functional equivalent' of members" and had "a sufficient amount of interaction to influence the organization's activities."

Here, the three petitioners handily meet the second and third *Hunt* factors: the protection of members and supporters from harmful exposure to asbestos is well within their "organizational purposes" and the "participation of individual members" is unnecessary to pursue their challenges to the Part 1 rule and obtain effective relief.

**The Declarations of the Three Organizations Demonstrate that Their Members and Supporters Would Have Standing to Sue in Their Own Right and Meet the Third *Hunt* Criterion**

"]T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized, . . .and (b) actual or imminent, not conjectural or hypothetical." *Id*. (citations and internal quotation marks omitted). Second, "there must be a causal connection between the injury and the conduct complained of" -- the injury alleged must be "fairly traceable to the challenged action of the defendant." *Id.* (internal quotation marks omitted). Finally, it must be likely that the injury will be redressed by a favorable decision. *Id.* at 561.

**Heightened Exposure.** The declarations submitted by the three organizations demonstrate that their members and supporters have a heightened likelihood of ongoing and future asbestos exposure that differentiates them from the general population. For example:

- Firefighters in IAFF Local F-253 are exposed to asbestos fibers released from burning buildings, vehicles or industrial facilities. Cancer is the leading cause of line-of-duty deaths among fire fighters. Mike Jackson Decl. ¶¶ 14-17. Studies show that the rate of asbestos-related cancers among firefighters is significantly higher than for other segments of the population.  Id. EPA's Part 2 asbestos risk evaluation has determined that exposure to asbestos by firefighters is higher than for just about any occupational group. https://www.epa.gov/system/files/documents/2024-11/01.-asbestos-part-2-.-risk-evaluation-.-public-release-.-hero-.-nov-2024.pdf.

- ADAO's network of 50,000 supporters and contributors includes Brent Kynoch, an asbestos abatement specialist and chair of ADAO's Prevention Committee who works alongside and represents abatement contractors and environmental health professionals whose work at renovation and demolition sites and older buildings frequently involves asbestos exposure (Kynoch Dec. ¶¶3-4); Roy Taylor, an architect whose practice includes working with historic and old buildings  known to or suspected of containing asbestos to which Mr.

Taylor is (Taylor Dec.); Dawn Fanning, who is exposed to asbestos from the remains of her fire-ravaged home and would be further exposed if asbestos-containing materials are used to rebuild it (Fanning Dec.¶¶3-5); and ADAO's President and Founder, Linda Reinstein, whose fieldwork regularly brings her to asbestos-contaminated waste sites, fenceline communities near asbestos-releasing facilities, and operating asbestos-using chlor-alkali plants where she may experience asbestos exposure (Supplemental Reinstein Dec. ¶2).

- Petitioner APHA's 23,000 individual members include industrial hygienists, first responders, compliance experts and health and safety professionals who may be exposed to asbestos when protecting students, teachers, workers or consumers frequenting asbestos-containing commercial buildings, businesses, factories, schools or other public buildings. Benjamin Dec. ¶25.

**Heightened Asbestos Risks from the Part 1 Rule's Flaws.** The gaps and deficiencies in the Part 1 rule are now putting petitioners' members and supporters at risk of heightened asbestos exposure. This risk and the resulting potential for harm will only increase if the flaws in the Part 1 rule are not addressed.

For example, Local F-253's members respond to spills, fires, accidents or other transportation incidents that may result in exposure to asbestos. However, the Part 1 rule does not restrict the importation and distribution in commerce of asbestos-containing products and wastes because, contrary to the evidence, EPA determined that these activities do not present an unreasonable risk.[1] Further rulemaking to enhance protections against asbestos risks during transportation would benefit firefighters by reducing transportation spills and releases that cause asbestos exposure and risk of harm. Jackson Decl. ¶¶18-20.

Similarly, the three petitioners' members and supporters are now, and will in the future be, at increased risk because the rule fails to restrict reasonably foreseen uses of chrysotile asbestos and the other five fibers. Should unrestricted imports of these asbestos-containing products continue or resume in the US, the result would be greater prevalence of asbestos in homes, commercial buildings, factories and equipment. Firefighters would therefore encounter asbestos more frequently and at higher concentrations in burning homes, vehicles, commercial buildings, and factories. Jackson Dec. at ¶¶ 6, 21. The same would be true of asbestos abatement

---

[1] EPA has argued that ADAO should have challenged this Determination in 2020 when EPA issued its asbestos risk evaluation. EPA Br. (Document 49) at 140-41. But in its Part 2 evaluation, EPA withdrew its 2020 TSCA section 6(i) order making this determination and instead made a single unreasonable risk determination for all asbestos conditions of use. Part 2 Eval. at 205-206. However, because EPA failed to expand the Part 1 rule to restrict asbestos importation and distribution in commerce, this flaw of the rule remains ripe for judicial review.

specialists like Mr. Kynoch and his colleagues; architects like Mr. Taylor; owners of fire-ravaged homes undergoing rebuilding like Ms. Fanning; and industrial hygienists like APHA's members. These populations would be at heightened risk because they may be exposed to imported asbestos building materials and other products that were not previously believed to be in use and create new pathways of exposure and risk management challenges. Kynoch Dec. ¶¶4-9; Taylor Dec. ¶¶5-8; Fanning Dec. ¶¶5-8.

ADAO's President Linda Reinstein would also be at heightened risk of asbestos exposure from other aspects of the Part 1 rule that petitioners argue are unlawful. For example, petitioners are challenging the rule's unwarranted 12-year compliance deadline for chlor-alkali plants which install non-asbestos membranes and its failure to address environmental releases from these and other asbestos-using facilities in violation of TSCA. ADAO Br. (Document 272) at 21-27, 38-40. These flaws in the rule are putting at risk communities located near these facilities and asbestos waste sites. Ms. Reinstein's fieldwork has brought her into these communities and will continue to do so, putting her at increased risk of asbestos exposure absent additional protections in the rule. Suppl. Reinstein Dec. ¶¶5-8.

**Likelihood of Serious Harm to Health**. The potential health harms from these increases in asbestos exposure cannot be dismissed as speculative or highly remote. Millions of people have died from asbestos exposure since its introduction and it continues to kill over 40,000 Americans each year. JA687-691. According to the US Government, "[t]here is general agreement among scientists and health agencies . . . [that] [e]xposure to any asbestos type (i.e., serpentine [chrysotile] or amphibole) can increase the likelihood of lung cancer, mesothelioma, and nonmalignant lung and pleural disorders." JA688. An overwhelming consensus exists in the scientific community that asbestos has no safe level of exposure and that inhaling even minute amounts can cause lethal effects. JA745.

As petitioners have emphasized, the rule's failure to address all fibers and current or reasonably foreseen uses opens the door to widespread unrestricted asbestos exposure that will put many workers and consumers at risk of harms to their health. The record in his case shows that numerous chrysotile asbestos products were imported and used in recent years that are not addressed in the Part 1 rule. Among these products are building materials such as wallboard and floor tiles, asbestos cement, compressed asbestos fiber jointing paper, millboard and felt, yarn and thread, cords and string and woven or knitted fabrics. ADAO Br. at 13-16.

Indeed, ADAO is arguing in this case that many of these products are still in use, citing multiple EPA documents, reports by the United States Geological Service (USGS) and EPA's Science Advisory Committee on Chemicals, and the 2020

findings of the District Court in *Asbestos Disease Awareness Org. v. Wheeler,* 508 F. Supp. 3d 707, 725 (N.D. Cal. 2020). ADAO Br. at 13-16; ADAO Reply (Document 233) at 8-11. Even if these uses have been discontinued as EPA unconvincingly claims, their recent occurrence is evidence that their resumption is "reasonably foreseen" and should be prohibited by the Part 1 rule.

Petitioners' members and supporters are also at risk of increased asbestos exposure from new imports of asbestos-containing products from the many countries that continue to mine and use large volumes of asbestos. According to a 2019 USGS report, India is the leading consumer of asbestos, followed by China, Russia, Indonesia, Uzbekistan, Vietnam, Thailand, Brazil, Sri Lanka, and Bangladesh. JA 2414-2418. In 2018, total global production and consumption of asbestos (almost entirely outside the US) was 1.14 million metric tons. Id. It is reasonable to anticipate that overseas suppliers seeking to expand their businesses will export asbestos products to the US if there are no regulations to stop them.

Indeed, as the supplemental Reinstein declaration describes, more than 121,000 sand-filled squeeze toys, imported from China and sold by Walmart and other retailers, were recently shown to contain tremolite (a non-chrysotile asbestos fiber) in their sand filli ngs, exposing small children, parents and teachers to the harmful effects of asbestos. The Part 1 rule did not prohibit importation of these products. Supp. Reinstein Dec. ¶9.

**Redressability.** A decision by this Court requiring further rulemaking to strengthen the Part 1 rule would greatly reduce the increased risks of harm to petitioners' members and supporters attributable to these and other major gaps in the current rule. Thus, the final prerequisite for standing – redressability – has been satisfied.

**There Are Serious Weaknesses in the Industry Petitioners' Standing Case**

The ADAO petitioners have serious concerns about the standing of the American Chemistry Council and allied state organizations (Chemical Industry Petitioners).

As counsel confirmed at oral argument, these petitioners seek vacatur of the Part 1 rule's ban on asbestos use in chlor-alkali production. However, one of the two principal users of asbestos in this industry – Olin Corporation – has withdrawn its petition for review. Document 313. Because Olin no longer seeks vacatur of the rule's chlor-alkali requirements or supports industry's position that EPA unlawfully banned asbestos use at its facilities, these petitioners have no basis to invoke Olin (as they did at oral argument) to justify their standing.

Vacatur of the rule's chlor-alkali provisions would also be contrary to the sustained efforts of both Olin and OxyChem, the other major chlor-alkali producer using

asbestos, to discontinue its use as soon as possible. Before the Part 1 rule was finalized in March 2024, both companies informed EPA that they had stopped importing raw asbestos and did not intend to resume these imports. JA10. In consequence, the final rule prohibited asbestos imports by chlor-alkali producers as of May 28, 2024. JA37. The Chemical Industry Petitioners are not challenging this ban on imports, which would make it impossible to continue asbestos use once current inventory is exhausted.

Rather than seeking to continue asbestos use, Olin advocated a ban on asbestos diaphragms during EPA's rulemaking. JA2341. Petitioner ACC, representing OxyChem, "suppor[ted] an orderly transition away from the use of chrysotile asbestos diaphragms in chlor-alkali manufacture." JA2409. Even before the rule was final, both companies began to make sizable investments in converting their facilities to non-asbestos technology. JA2297, JA2323, JA2351-53. Two years after the rule took effect, this transition is well underway. Unwinding these large investments and resuming asbestos use after a favorable court decision would be disruptive and probably costly. After ACC described Oxychem's transition plans to EPA in great detail, the Agency gave it 12 years to complete the transition (much longer than the ADAO petitioners consider justified). JA11-13. The company has not stated that it cannot meet this deadline or would suspend its conversion to membrane technology if the Court ruled in ACC's favor.

Thus, the Chemical Industry Petitioners have not demonstrated that their members are suffering any harm from the Part 1 rule's ban on asbestos use in chlor-alkali production or that a court decision reversing that ban would provide any tangible benefit. Their petitions for review should be dismissed for lack of standing.

In conclusion, the Court should affirm the ADAO petitioners' standing, decide the merits of their claims and dismiss the industry petitions for review.

Respectfully submitted,

/s/Robert M. Sussman
ROBERT M. SUSSMAN
Sussman & Associates
3101 Garfield St. NW
Washington DC 20008
bobsussman1@comcast.net
202-716-0118

June 10, 2026

*Attorneys for petitioners Asbestos Disease Awareness Organization. American Public Health Association, Collegium Ramazzini, Local F-116 (Vandenberg Professional Firefighters), International Association of Fire Fighters; Local F-253 (Fort Myer Professional Firefighters), International Association of Fire Fighters The FealGood Foundation.Henry A. Anderson, MD; Brad Black, MD; Barry Castleman, ScD; Raja Flores, MD; Arthur Frank, MD, PhD; Phil Landrigan, MD, MSc; Richard Lemen, PhD, MSPH; Steven Markowitz, MD, DrPH; Jacqueline Moline, MD, MSc; Celeste Monforton, DrPH, MPH; Christine Oliver, MD, MPH, MSc; and Andrea Wolf, MD,MPH;*