

June 10, 2026

Lyle W. Cayce
U.S. Court of Appeals for the Fifth Circuit
Office Of the Clerk
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130-3408

Re:     *Texas Chemistry Council, et al. v. EPA*, No. 24-60193 and Consolidated Cases –
Oral Argument Held June 1, 2026

To the Court:

Petitioner United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (USW) files this letter brief in response to the Court's June 3, 2026, order directing the parties in the above-captioned consolidated matter to address their standing.

In its "evaluation of exposure . . . in the Risk Evaluation for Asbestos, Part 1: Chrysotile Asbestos," EPA found that workers in chemical production facilities are exposed to unreasonable risks of harm to their health from chrysotile asbestos-containing sheet gaskets when "receiving new gaskets, removing old gaskets, bagging old gaskets for disposal, and inserting replacement gaskets into flanges and other process equipment."  JA at 14. This finding triggered a mandatory duty under the Toxic Substance Control Act (TSCA) to eliminate or reduce the unreasonable risk.  15 U.S.C. §2605(a).  The risk management rule before the Court represents EPA's attempt to meet its obligations under TSCA by, as the Agency itself explained, "requir[ing] interim workplace controls that address the unreasonable risk from chrysotile asbestos to workers directly handling the chemical or in the area where the chemical is being used until the [ban] go[es] into effect." JA at 19.  Although EPA determined that *all* chemical production workers faced an unreasonable risk from asbestos sheet gaskets, EPA failed to extend "interim workplace

controls that address the unreasonable risk," to *all* chemical production workers. This failure violates TSCA.

USW's members include chemical production workers who are exposed to asbestos when installing and removing sheet gaskets, who EPA found faced an unreasonable risk to their health, but for whom EPA's risk management rule offers no protection. USW has associational standing to bring its claim that EPA violated TSCA by failing to afford the Union's members in chemical production facilities the same interim workplace protections it adopted to protect other chemical production workers because: "(a) its members would otherwise have standing to sue in their own right; (b) the interests [the Union] seeks to protect are germane to the [USW's] purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343 (1977); *Center for Biological Diversity v. EPA,* 937 F.3d 533, 536 (5th Cir. 2019). Although standing must generally "be supported by citations to specific facts in the record," *Shrimpers and Fishermen of RGV v. Texas Comm'n on Env. Quality,* 968 F.3d 419, 423 (5th Cir. 2020), this Circuit has reiterated – in a post-*Shrimpers* case – that showing is not required when "standing is self-evident," *Texas v. Nuclear Regulatory Comm'n,* 78 F.4th 827, 835 (5th Cir. 2023). Here, USW's standing is self-evident. If, however, the Court disagrees that USW's standing is self-evident, USW respectfully requests that, because it believed in good faith that it had standing, the Court grant USW's motion to supplement the record with the Declaration of Steven Sallman, which provides evidence clearly establishing the Union's standing.

I.     **USW has Associational Standing To Represent Its Members Exposed to Asbestos Sheet Gaskets.**

USW meets the *Hunt* test for associational standing. First, USW members "would otherwise have standing to sue in their own right." *Hunt,* 432 U.S. at 343. As USW explained in its opening brief and motion to intervene, the Union represents thousands of workers in chemical plants throughout the United States, who are directly exposed to asbestos when installing, maintaining and removing asbestos-containing sheet gaskets, activities EPA found pose an unreasonable risk of asbestos exposure. USW Opening Brief, Dkt. No. 109 at 4 n. 2; USW Motion to Intervene, Dkt. No. 28 at 5-6. These members, in turn, would have standing to sue in their own right because they satisfy the "irreducible constitutional minimum" of standing. *Texas v. NRC,* 78 F.4th at 835 (5th Cir. 2023), *citing Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016)

(setting out the test for establishing "injury in fact"). Their continued exposure to risks associated with asbestos-containing gaskets in their workplaces -- hundreds of thousands of which may remain in use for as long as another 20 years (USW Opening Brf. at 20-21, n. 14-16 (citing industry comments); Final Rule, JA 14) – is causing them to "suffer a concrete and particularized injury in fact;" their injury is "fairly traceable" to EPA's failure to provide them with protection the Agency has determined is necessary to protect them from unreasonable risks posed by asbestos exposure; and their injury is "capable of resolution and likely to be redressed" by a decision of this Court directing EPA to extend the same interim protections for these workers as it has extended to other workers who will remain exposed to asbestos. *Texas v. NRC,* 78 F.4th at 835.

Second, the interests USW is seeking to protect are not only "germane" to its purpose (*Hunt,* 432 U.S. at 343) but are central to its role as the representative of these workers. The Union is laser-focused on ensuring that its members can perform their work without being subject to injury and disease. Occupational safety and health are mandatory subjects of bargaining. *NLRB v. Gulf Power Co.,* 156 NLRB 622 (1966), *enf'd,* 384 F.2d 822 (5th Cir. 1967). As the National Labor Relations Board has observed, "[f]ew matters can be of greater legitimate concern to individuals in the workplace, and thus to the bargaining agent representing them, than exposure to conditions potentially threatening their health, well-being or their very lives." *3M,* 261 NLRB 27, 29 (1982).

Moreover, USW regularly "push[es] for stronger enforcement of chemical safety measures and stricter protective regulations at the federal level to keep workers and communities safe." *See* USW: Health, Safety and Environment Advocacy, https://usw.org/how-we-win/health-safety-advocacy/.  It does so, for example, by participating actively in regulatory rulemaking proceedings, as it did by joining with the AFL-CIO and other labor organizations in filing comments on EPA's Part 1 asbestos risk evaluation and its proposed risk management rule.[1] The

---

[1] *See* Comments of the AFL-CIO on EPA's Part 1 Asbestos Review and Risk Evaluation, Administrative Record ("AR"), Dkt. No. 71, at A-489, A-490 and A-491; Comments on behalf of the AFL-CIO on the Science Advisory Committee on Chemicals Review of Risk Evaluation for Asbestos, AR B-85; AFL-CIO's Comments on EPA's Proposed Risk Management Rule, Part 1 Chrysotile Asbestos, JA 2034, AR C-378; Comments of the AFL-CIO and USW on EPA's Proposed Risk Management Rule, Part 1 Chrysotile Asbestos, AR C-486.

Union has also long engaged in litigation to strengthen or support federal safety and health regulations issued by EPA and by the Occupational Safety and Health Administration (OSHA). *See, e.g., Safer Chemicals v. EPA,* 943 F.3d 397, 422 (9th Cir. 2019) (USW has standing to challenge EPA's failure to address the hazards of legacy asbestos); *Neighbors for Environmental Justice v. EPA,* No. 20-72091 (9th Cir.) (petition dismissed following remand to EPA); *Air Alliance Houston v. EPA*, 906 F.3d 1049, 1058-59 (D.C. Cir. 2018) (USW has standing to challenge EPA regulation, based on its members' exposure); *Dole v. Steelworkers,* 494 U.S. 26 (1990) (OSHA's authority to require information disclosure under the Paperwork Reduction Act); *Steelworkers v. Pendergrass,* 855 F.2d 108 (3d Cir. 1988) (OSHA's hazard communication standard); *Steelworkers v. Auchter,* 763 F.2d 728 (3d Cir. 1985) (OSHA's hazard communication standard); *Steelworkers v. Marshall,* 647 F.2d 1189 (D.C. Cir. 1980) (OSHA's lead standard).

Finally, the relief USW is seeking does not require "the participation of individual members" of the Union, *Hunt,* 432 U.S. at 343, as an order from this Court directing EPA to strengthen the rule will inure equally to the benefit of all the Unions' members employed in chemical manufacturing facilities.

## II.      USW Had a Good Faith Belief Its Standing Was Self-Evident

In *UAW v Brock*, 477 U.S. 274 (1986), the Supreme Court applied the *Hunt* test to find that the union had associational standing. Given that longstanding caselaw and the facts outlined above, it was USW's belief that its standing in this case was "self-evident," and that under this Circuit's prevailing caselaw, it was unnecessary to submit documentary evidence supporting standing.[2]

Nor did the Court's May 27 order (Dkt. No. 326) put USW on notice that the Court was seeking further evidence of the Union's standing. In that order, the Court called the parties' attention to its recent decision in *U.S. v. Texas,* 173 F.4th 657, Case No. No. 24-50149 (April 24,

---

[2] This Court has regularly allowed Unions to participate in challenges to occupational safety and health rules as a party. *See e.g., American Petroleum Inst. v. OSHA,* 581 F.2d 493, 499 n.16 (5th Cir. 1978) (Industrial Union Department was active participant in the litigation in support of OSHA)*; National Grain & Feed Ass'n v. OSHA,* 858 F.2d 1019 (5th Cir. 1988), *on reconsideration,* 866 F.2d 717 (5th Cir. 1988) (Food & Allied Services Department, AFL-CIO and other unions' petition granted in part)*; Asbestos Information Ass'n v. Reich,* 117 F.3d 891 (5th Cir. 1997) (Building & Construction Trades Department participates as an intervenor).

2026). The plaintiffs in that case were seeking to establish "organizational standing," or standing on their own behalf. In finding they had failed to articulate a cognizable basis for doing so, the Court relied heavily on the Supreme Court's decision in *FDA v. Alliance for Hippocratic Medicine,* 602 U.S. 367, 144 U.S. 1540 (2024), which, as this Court explained, "narrowed *organizational* standing and rejected the diversion of resources theory upon which [the plaintiffs] had relied." *U.S. v. Texas,* slip op. at 6 (emphasis added). Following the Supreme Court's reasoning in *Alliance,* the en banc Court in *U.S. v. Texas* rejected the diversion of resources theory on which the litigants had attempted to establish organizational standing. But as Justice Thomas pointed out in his concurrence in *Alliance*, no one in that case challenged – and the Supreme Court left intact – the longstanding test for establishing *associational standing*. 602 U.S. at ___, 144 U.S. at 1566. Nor did this Court address associational standing in *U.S. v. Texas*.

Moreover, nothing in *U.S. v. Texas* addresses the evidence required to demonstrate associational standing where, as here, a court engages in judicial review of informal notice and comment rulemaking.[3] USW thus stands in the same position as the litigants in *American Library Ass'n v. FCC,* 401 F.3d 489, 492 (D.C. Cir. 2005). Like USW, the Library Association (as well as the respondent Federal agency) had assumed that it had associational standing to challenge a rule on its members' behalf. Although an intervenor had briefly asserted that the Association had failed to comply with an earlier D.C. Circuit decision, *Sierra Club v. EPA,* 292 F.3d 895 (D.C. 2002), the Association had not understood that reference to challenge its position that its standing was "self-evident." The D.C. Circuit concluded that "petitioners reasonably believed their standing was self-evident . . . based on several considerations": Because the Association represented a number of entities "who indisputably will be directly affected" by the challenged rule, "petitioners had good reason to assume at least one of their members would suffer an Article III injury with the implementation of the disputed rule." And "nothing in the record alerted petitioners to the possibility that their standing would be challenged in this court."

---

[3] Under TSCA, risk management rules are promulgated "in accordance with section 553 of title 5. . . ." 15 U.S.C. 2605(c)(3). Participants in informal rulemaking are not required to submit documentary evidence to the agency showing standing, injury in fact, or the existence of a case or controversy because Article III of the U.S. Constitution does not apply to proceedings before an administrative agency.

401 F.3d at 492. Concluding that the Association "reasonably assumed that their standing was self-evident," the court permitted it to submit additional evidence to establish standing. *Id.*

Here, USW – and apparently, EPA as well[4] – assumed the Union's associational standing was "self-evident." Like the Library Association, USW did not understand this Court's order to direct that the parties be prepared to address standing, with its specific reference to *U.S. v. Texas,* to signal that the Court was questioning this assumption. Instead, given that the Union represents thousands of workers "who indisputably will be affected" by the challenged rule, and nothing in the record had "alerted [USW] to the possibility that their standing would be challenged," *id.,* it was reasonable for USW to assume that its standing was "self-evident." *See also, Texas v. NRC,* 78 F.4th at 835 (quoting *Am. Lib. Ass'n,* and finding that when the NRC had challenged standing only on statutory grounds, nothing "in the record alerted [the] petitioners to the possibility that their [constitutional] standing would be challenged.")

### III. The Court Should Permit USW to Supplement the Record to Resolve any Doubts about its Standing

As demonstrated, USW believed, in good faith, that its associational standing in this proceeding was self-evident. If, however, the Court requires more evidence to support our claim to associational standing, we respectfully request that the Court grant our Motion to Supplement the Record with the Declaration of Steven Sallman, filed today. *See Ctr. For Biological Diversity v. EPA,* 937 F.3d at 542 n. 4 (permitting party to submit supplementary documentation when "they had a good-faith (though mistaken) belief that standing would be both undisputed and easily resolved").

Mr. Sallman is USW's Director of Health, Safety & Environment. Declaration of Steven Sallman (Sallman Decl.) ¶ 1. As he attests in his declaration, USW represents 1,489 workers in the chemical industry that EPA identified as using asbestos-containing sheet gaskets. *Id.* ¶ 5. Based on his extensive personal experience, both as a worker and as a member of USW staff, Mr. Sallman is aware that "many of the facilities in [the industries EPA identified] use asbestos sheet gaskets and USW members are exposed to asbestos fibers when new gaskets are installed and old gaskets removed." *Id.* ¶ 8. For *Hunt* purposes, these workers – who are exposed to

---

[4] Indeed, even during the oral argument, counsel for EPA acknowledged that the Government had not challenged USW's standing. Oral Argument Recording at 41:52.

asbestos under conditions EPA has failed to address – could therefore bring suit on their own behalf because they are exposed to "injury in fact."

Moreover, there is nothing "conjectural or hypothetical" about USW members' injury. *Spokeo,* 578 U.S. at 338. EPA found chemical workers are exposed to the unreasonable risk of exposure to asbestos when the gaskets in their facilities are installed and removed. JA at 14. Yet, while EPA devised interim workplace protections that it deemed necessary to protect against those exposures and required chemical companies producing titanium dioxide to implement those measures by *November 24, 2024*, JA at 39, eighteen months later, the workers USW is here representing remain exposed to the "concrete and particularized" injury EPA identified. *Id.,* 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).

Mr. Sallman also attests to the fact that working to promote the safety and health of its members is among USW's core functions, thus satisfying the second prong of the *Hunt* test. As he explains,

> Occupational safety and health are a mandatory subject of bargaining, as defined by the National Labor Relations Act. USW has an extensive safety and health program, centered on union safety and health representatives at the plant level, and backed up by the professional headquarters staff in my Department. We have a keen interest in the ability of the Federal Government to determine whether the chemicals to which our members are exposed pose unreasonable risks to their health. Risk evaluations completed by EPA will allow USW to alert our members to the occupational risks they face, to bargain with employers to protect our members from those risks, and to advocate for federal and state regulatory agencies to adopt greater protections for our members from asbestos risks. And we have a keen interest in ensuring that the risk management rules EPA promulgates based on those risk assessments fully address the hazards toxic chemicals pose to our members.

Sallman Decl. ¶ 6.

Finally, as explained above, USW satisfies the third prong of the *Hunt* test for associational standing, because the participation of individual USW members is unnecessary for this Court to direct EPA to comply with its obligations under TSCA and extend to all chemical workers the measures it found necessary to protect against asbestos' unreasonable risks.

## IV.    Conclusion

USW has associational standing to challenge EPA's failure to take regulatory action to protect its members and others exposed to unreasonable asbestos risks in chemical production facilities. USW reasonably believed its standing was self-evident. To the extent the Court has doubts about USW's standing, we respectfully request that it accept the Declaration of Steven Sallman. The evidence provided in Mr. Sallman's declaration establishes beyond question that USW satisfies the well-established test for associational standing. USW's petition is therefore properly before this Court. We respectfully request that the Court grant USW's petition.

Respectfully submitted,

/s/ *Randy Rabinowitz*
Randy S. Rabinowitz, Esq.
Victoria L. Bor, Esq.
Occupational Safety & Health Law Project, LLC
P.O. BOX 3769
Washington, DC 20027
202 256-4080

Nathan Finch, Esq.
Motley Rice LLC
401 9th Street NW
Suite 630
Washington, DC 20004
(202) 607-8998

*Attorneys for Petitioner USW*

CERTIFICATE OF SERVICE

I certify that on this 10th day of June 2026, I filed the foregoing letter brief with the U.S. Court of Appeals for the Fifth Circuit using the Courts CM/ECF system to serve all counsel in this matter.

/s/Randy S. Rabinowitz