

**U.S. Department of Justice**

Environment and Natural Resources Division

---

*Environmental Defense Section*          *Telephone (202) 598-3056*
*P.O. Box 7611*                           *Facsimile (202) 514-8865*
*Washington, DC  20044*

## REDACTED VERSION

June 10, 2026

Lyle Cayce
U.S. Court of Appeals for the Fifth Circuit
Office of the Clerk
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130-3408

Re: *Texas Chemistry Council v. EPA*, No. 24-60193 and Consolidated Cases – Oral Argument Held June 1, 2026

Dear Mr. Cayce,

We write in response to this Court's directive to file supplemental briefing on Petitioners' standing. Dkt. 333.[1]

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). For there to be a case or controversy, the party bringing the action must have standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). As part of

---

[1] Today, Petitioners filed untimely supplemental declarations that do not remedy the issues discussed in this letter brief. If the Court is inclined to consider these late-breaking declarations, EPA requests the opportunity to respond to Petitioners' new standing allegations in full.

that inquiry, the party "must be able to sufficiently answer the question: 'What's it to you?'" *Id.* (internal citation omitted). Further, "standing is not dispensed in gross." *Id.* at 431. Rather, each Petitioner "must demonstrate standing for *each* claim [it] seeks to press." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (emphasis added). And standing must be supported at each stage of the litigation. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Because no petitioner has met its burden to establish standing, the Court should dismiss all of the pending petitions for review.[2]

The American Chemistry Council Has Not Established Standing

Petitioner American Chemistry Council ("ACC") has not shown standing to challenge the bans on asbestos-containing diaphragms in the chlor-alkali industry or asbestos-containing sheet gaskets in the chemical production industry because it has not met its burden to show that any of its members are injured by the bans. *See Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 342–43 (1977) (association petitioner must show an individual member would have standing); *TransUnion*, 594 U.S. at 423 (setting forth standing requirements).

*First*, ACC has not alleged a valid injury to its member chlor-alkali manufacturers: OxyChem and Olin.

---

[2] EPA is making broader standing arguments than in its opening brief because of recent developments, including, for example, Olin's dismissal of its petition and the Court's recent decision in *United States v. Texas*. 173 F.4th 659, 666 (5th Cir. 2026) (en banc).

Independent of the challenged Rule, the chlor-alkali industry is already transitioning away from asbestos. JA2. Indeed, OxyChem touted converting one of its chlor-alkali facilities to non-asbestos technology as a measure that would "increase cash flow through improved margins and higher product volumes," "reduce[] operating costs," and "generate a strong return while improving OxyChem's market position." Ex. A (AR C.622) at 37.[3] Likewise, Olin explained that it "would support an EPA action to ban the installation of any new or replacement asbestos-based diaphragms." JA2341. Thus, it is no surprise that, prior to this litigation, ACC stated that "ACC and its member companies support an orderly transition away from the use of chrysotile asbestos diaphragms in chlor-alkali manufacture . . ." JA2409.

Nevertheless, ACC filed a purely academic challenge to the ban on asbestos, arguing that workplace protection measures would have eliminated the unreasonable risk posed by asbestos. Dkt. 264 at 66–68. Now, in response to this Court's questions on standing, ACC pivots and points to the Rule's transition timelines as its source of injury despite failing to challenge them. Dkt. 329 at 2. But that fails.

Only Olin—not ACC—challenged its transition timeline set by the Rule, but it later withdrew that argument before dismissing its petition entirely, thus

---

[3] The exhibits to this letter brief are included in the Administrative Record but not the parties' Joint Appendix. Exhibit B contains confidential business information.

disavowing any injury. Dkt. 266 at 2, n.1; *Olin v. EPA*, No. 24-60333 (5th Cir. May 15, 2026), Dkt. 248-2. Even if the transition timeline applicable to Olin were a valid injury, that still does not establish standing because ACC cannot show causation—"a fairly traceable connection" between the alleged injury to Olin (the timeline) and the "complained-of conduct" of EPA (the ban).[4] *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). ACC does not challenge the transition timeline for Olin set forth in 40 C.F.R. § 751.505(c)–(d)—its purported source of injury—and, in fact, defends it as supported by "ample record evidence." Dkt. 265 at 28–46. The provision ACC does challenge—the ban set forth in 40 C.F.R. § 751.505(b)—is not the source of any alleged injury; instead, ACC points only to the timeline it did not challenge. Thus, ACC has not established the fairly traceable connection necessary to show standing.

Nor can the transition timeline for OxyChem serve as a valid source of injury, ███████████████████████████████████████████████ █████████████████████████████████, *with* 40 C.F.R. § 751.505(d) (setting May 26, 2036 deadline); *contra* Dkt. 329 at 2.

*Second*, ACC has not pointed to any injury whatsoever to the broader chemical production industry due to the ban on asbestos-containing sheet gaskets

---

[4] Moreover, that purported injury would not be sufficient to establish ACC's standing because Olin was not an ACC member at the outset of this litigation and ACC "must maintain [its] personal interest in the dispute at *all* stages of litigation." *TransUnion*, 594 U.S. at 431 (emphasis added); Dkt. 329 at 2 n. 1.

for that industry. *See* Dkt. 329. Nor could it: titanium dioxide manufacturer and ACC member Chemours began to transition away from asbestos prior to publication of the Rule, which grants Chemours its requested transition timeline. JA2279; JA2294–96; 40 C.F.R. § 751.509(b).

For these reasons, ACC has not established standing to challenge the bans on asbestos for either the chlor-alkali or the chemical production industries.

The Asbestos Disease Awareness Organization Has Not Established Standing

Similarly, because the Asbestos Disease Awareness Organization ("ADAO") (on behalf of itself and certain other petitioners) has not pointed to an injury sufficient to confer standing, the Court should dismiss its petition. ADAO on behalf of all petitioners it represents submitted only three declarations to support standing. Dkt. 108. The declarations are from: 1) The president of the Federal Fire Fighters Joint Council of the International Association of Fire Fighters (IAFF) and of IAFF Local F-253; 2) The president of ADAO; and 3) The executive director of the American Public Health Association. None of those declarations are sufficient to establish standing.

First, the declaration from IAFF Local F-253 alleges harm from EPA's determination that importation and distribution do not present an unreasonable risk and EPA's failure to address the other five asbestos fiber types. Dkt. 108-3 at 8–11. Neither of these purported injuries establish an imminent harm that is traceable to this Rule. As discussed in EPA's brief, EPA banned the import of chrysotile

asbestos for all the uses covered by the Rule, and EPA has withdrawn the determination that importation and distribution does not present an unreasonable risk in the Part 2 Risk Evaluation. Dkt. 267 at 143. Additionally, the other five fiber types are being addressed in the Part 2 Rulemaking. *Id.* at 130. Therefore, vacating this Rule will not address ADAO's alleged injuries and neither will remand because EPA is already in the process of conducting a separate rulemaking. Accordingly, IAFF Local F-253 has failed to establish standing.

Second, ADAO submitted a declaration from its president. In the declaration and in ADAO's brief, ADAO alleges harm to the organization from the Rule because ADAO will have to redouble its efforts to advocate for increased protection and will need to realign education and outreach efforts. Dkt. 108-2 at 20–21 (declaration); Dkt. 272 at 45 (brief). However, this Court's recent decision in *United States v. Texas* explains that this is a generalized harm, which is insufficient to confer standing. 173 F.4th 659, 666 (5th Cir. 2026) (en banc).

In its supplemental letter to the Court, ADAO characterizes this declaration as one which supports associational standing because ADAO supporters fear that they will be exposed to environmental releases of asbestos. Dkt. 331 at 3.[5] As a

---

[5] This Court has explained that "organizational standing allows an association to raise claims based on injuries to the association itself" while "associational standing allows an association to raise claims based on injuries to its members." *NetChoice, L.L.C. v. Fitch*, 134 F.4th 799, 805 n.15 (5th Cir. 2025) (citing *Students for Fair Admissions, Inc. v. Univ of Tex. at Austin*, 37 F.4th 1078, 1084 & n.6 (5th Cir. 2022)). While ADAO's declaration seems to attempt to support organizational standing by alleging a harm to ADAO from the Rule, at oral argument and in

threshold matter, ADAO has failed to allege that it is a traditional membership organization or the functional equivalent of one and is thus precluded from relying on associational standing. *See Pub. Emps. for Env't Resp. v. Zeldin*, 174 F.4th 183, 187 (D.C. Cir. 2026). However, even if ADAO were a membership organization, its declaration would still fail because it has not shown harm to any purported members. *NetChoice, L.L.C. v. Fitch*, 134 F.4th 799, 804 (5th Cir. 2025) (discussing the elements of associational standing including that an association's "individual members would have standing to bring the suit."). ADAO merely asserts, without support, an attenuated and hypothetical harm to the general public from the regulation. This is not sufficient to support standing and suffers from the same defect as its organizational standing: this is a generalized grievance.

Finally, ADAO relies on a declaration from the American Public Health Association and argues that members of the public health community have standing to challenge this action because they could be exposed to the unregulated exposure pathways through treating patients. As raised in our response brief and not addressed by ADAO, based on these allegations, American Public Health Association lacks standing. Dkt. 267 at 129 n.19. The American Public Health Association has not demonstrated that there is any actual harm posed to members of the public health community. And the Supreme Court has explained that

ADAO's letter, ADAO now submits it is alleging associational standing. Dkt. 331 at 1. However, under both standing theories, ADAO's allegations are insufficient.

"[a]llowing doctors or other healthcare providers to challenge general safety regulations as unlawfully lax would be an unprecedented and limitless approach." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 391 (2024). Here, any asserted causal link is too attenuated to sufficiently demonstrate injury in fact.

Steelworkers Have Not Demonstrated Standing

As a preliminary matter, Steelworkers filed no declarations with its petition alleging standing and specifically explaining how its members are harmed by the Rule. Thus, Steelworkers has failed to meet its burden of establishing standing.

In a footnote (and in the supplemental declaration Steelworkers belatedly filed), Steelworkers alleges that it represents workers in the chemical manufacturing industry that install and remove gaskets and that the lack of protections against asbestos exposure puts workers at risk. Dkt. 259 at 4 n.2; Dkt. 341-2. As explained in briefing and at oral argument, Steelworkers challenges EPA's alleged failure to implement interim protections to address the risk from the removal of legacy gaskets. Because EPA has made clear that the removal of legacy gaskets is an issue addressed in the Part 2 Asbestos Risk Evaluation and forthcoming risk management rule, like IAFF Local F-253, Steelworkers' members have not suffered an injury redressable in this litigation. Therefore, Steelworkers has not adequately alleged an injury to its members that is traceable to the Rule.

For these reasons, the Court should dismiss ACC's, ADAO's, and Steelworkers' petitions for lack of standing.

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney
General

BRADLEY CRAIGMYLE
Deputy Assistant Attorney General

*/s/ Laura J. Glickman*
LAURA J. GLICKMAN
KRISTEN SARNA
U.S. Department of Justice
Environment and Natural Resources
Division
Environmental Defense Section
P.O. Box 7611
Washington, DC  20044-7611

*Counsel for Respondents*