# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
November 19, 2026
Thomas B. Plunkett, III
Clerk

---

No. 24-60193

---

Texas Chemistry Council; American Chemistry Council; Georgia Chemistry Council; Asbestos Disease Awareness Organization; United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO; Ohio Chemistry Technology Council,

*Petitioners*,

*versus*

United States Environmental Protection Agency,

*Respondent*,

consolidated with

---

No. 24-60281

---

American Public Health Association; Collegium Ramazzini; Local F-116 (Vandenberg Professional Firefighters), International Association of Fire Fighters; Local F-253 (Fort Myer Professional Firefighters), International Association of Fire Fighters; The FeelGood Foundation; Henry A. Anderson, *Medical Doctor*; Brad Black, *Medical Doctor*; Barry Castleman, *Doctor of Science*; Raja Flores, *Medical Doctor*; Arthur Frank, *Medical Doctor*, *Doctor of Philosophy*; Phil

Landrigan, *Medical Doctor, Master of Science*; Richard Lemen, *Doctor of Philosophy, Master of Public Health*; Steven Markowitz, *Medical Doctor*, *Doctor of Public Health*; Jacqueline Moline, *Medical Doctor, Master of Science*; Celeste Monforton, *Doctor of Public Health, Master of Public Health*; Christine Oliver, *Medical Doctor, Master of Public Health, Master of Science*; Andrea Wolf, *Medical Doctor, Master of Public Health*,

*Petitioners*,

*versus*

United States Environmental Protection Agency; Lee Zeldin, *Administrator, United States Environmental Protection Agency*,

*Respondents*.

---

Petition for Review of an Order of the Environmental Protection Agency
Agency Nos. 40 CFR Part 751,
89 Fed. Reg. 21970

---

Before Clement, Southwick, and Engelhardt, *Circuit Judges*.

Kurt D. Engelhardt, *Circuit Judge*:

Several Petitioners challenge an EPA rule that bans certain uses of asbestos. Because no Petitioner has standing, we DISMISS the petitions for lack of jurisdiction.

I.

The Toxic Substances Control Act ("TSCA") requires EPA to regulate chemicals that pose an "unreasonable risk of injury to health or the environment." 15 U.S.C. § 2605(a). Pursuant to this authority, EPA issued a rule banning several uses of chrysotile asbestos, exposure to which EPA determined can cause lung cancer, mesothelioma, larynx cancer, and ovarian cancer, as well as non-cancer respiratory diseases, such as asbestosis.

Asbestos Part 1; Chrysotile Asbestos; Regulation of Certain Conditions of Use Under the Toxic Substances Control Act (TSCA), 89 Fed. Reg. 21970-01, 21993 (Mar. 28, 2024) ("Final Rule").

After EPA issued the Final Rule, a slew of petitions for review were filed in several different circuit courts, and they were consolidated here by the Judicial Panel on Multidistrict Litigation. Petitioners Ohio Chemistry Technology Council, American Chemistry Council, Georgia Chemistry Council, and Texas Chemistry Council ("Industry Petitioners")[1] argue that the asbestos ban went too far and that EPA failed to comply with TSCA's procedural requirements. They ask us to vacate the portions of the Final Rule impacting the chlor-alkali and chemical-production industries.

Two other sets of Petitioners argue that EPA did not go far enough in preventing unreasonable risk. The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO ("USW") argues that EPA violated the TSCA by failing to impose interim protections for workers in the general chemical-production industry while providing such protections for titanium-dioxide workers. And a group of Petitioners comprising public health organizations—including the Asbestos Disease Awareness Organization ("ADAO") and the American Public Health Association ("APHA")—two firefighter unions, and several researchers and doctors ("Advocacy Petitioners") contend that, among other things, EPA improperly failed to ban other asbestos types and uses that present unreasonable risk.[2]

---

[1] Olin Corporation consolidated its suit with Industry Petitioners, but it later voluntarily dismissed its Petition.

[2] We refer to Industry Petitioners, USW, and Advocacy Petitioners collectively as "Petitioners."

A few days before oral argument, we notified the parties that they should be prepared to discuss standing, even though EPA did not initially raise the issue. *See Nat'l Religious Broads. v. FCC*, 138 F.4th 282, 290 (5th Cir. 2025) ("[T]he court has an 'obligation to assure itself of its own jurisdiction, *sua sponte* if necessary.'" (quoting *Elldakli v. Garland*, 64 F.4th 666, 669 (5th Cir. 2023))). Following oral argument, we required the parties to submit supplemental briefing on standing. The parties complied, and each Petitioner submitted declarations to support standing.

II.

"Like a plaintiff who files a complaint, a petitioner who seeks review of agency action 'invok[es] federal jurisdiction' and therefore 'bears the burden of establishing' standing." *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 536 (5th Cir. 2019) (alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "The familiar elements of standing are (1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the respondent, and (3) that is likely to be redressed by a favorable judicial decision." *Shrimpers & Fishermen of RGV v. Tex. Comm'n on Env't Quality*, 968 F.3d 419, 424 (5th Cir. 2020) (per curiam). Each Petitioner relies on associational standing, which requires them to show that "(1) their members would independently have Article III standing to sue, (2) the interests they seek to protect are germane to their purposes, and (3) neither the claim asserted nor the relief requested requires the participation of individual members." *Id.*

"[I]n direct appellate review of a final agency action, 'the petitioner carries a burden of production' with respect to standing that is 'similar to that required at summary judgment.'" *Shrimpers*, 968 F.3d at 423 (quoting *Sierra Club v. EPA*, 793 F.3d 656, 662 (6th Cir. 2015)). "This means that a petitioner's claim of standing cannot rest on 'mere allegations,' but must

instead be supported by citations to specific facts in the record." *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 (2013)); *see also Nat'l Religious Broads.*, 138 F.4th at 291 (noting that petitioners "must support their claims for standing with record evidence," such as affidavits).

"Arguments in favor of standing, like all arguments in favor of jurisdiction, can be forfeited or waived." *Ctr. for Biological Diversity*, 937 F.3d at 542. "A party forfeits an argument by failing to adequately brief the argument in its opening brief." *Smith v. Sch. Bd. of Concordia Par.*, 88 F.4th 588, 594 (5th Cir. 2023) (citation modified) (quoting *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021)); *see also* Fed. R. App. P. 28(a)(8)(A) (requiring that a petitioner's opening brief contain its "contentions and the reasons for them, with citations to the authorities and parts of the record on which the [petitioner] relies").[3] Parties can fail to adequately brief an argument in a multitude of ways, such as "failing to offer any supporting argument or citation to authority," *JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016); neglecting to "identify relevant legal standards and any relevant Fifth Circuit cases," *id.* (citation modified); omitting supporting record citations, *United States v. Rojas*, 812 F.3d 382, 407 n.15 (5th Cir. 2016); and raising an argument only in a footnote, *Smith*, 88 F.4th at 596.

For the following reasons, we conclude that Industry Petitioners, USW, and Advocacy Petitioners failed to comply with these requirements.[4]

---

[3] This briefing rule applies to appeals and reviews of agency actions alike. Fed. R. App. P. 20.

[4] Another panel of this court recently decided *East Fork Enterprises v. EPA*, 192 F.4th 391 (5th Cir. 2026), which vacated a similar EPA rule on the merits. Because we do not reach the merits of the Petitioners' claims here, we do not discuss *East Fork*'s implications for future challenges of agency actions.

A.

In their opening brief, Industry Petitioners write that

> [e]ach Industry Petitioner filed in a Circuit Court in which it, or its members, transact business that is directly affected by the Final Rule. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–52 (1992) ("[T]here is ordinarily little question" that a directly regulated entity has standing to "challeng[e] the legality of government action or inaction.").

Besides that, they say nothing about standing.

Because Industry Petitioners are a collection of associations, this leaves us guessing about their theory of standing, what the legal standard is, how that standard is met, who any of the associations' members are, how their members are injured, or the imminency of the purported harm. In the typical case, we would hold Industry Petitioners' arguments forfeited and summarily dismiss their petitions for failure to establish jurisdiction. *See Ctr. for Biological Diversity*, 937 F.3d at 542 (holding that the petitioners forfeited an argument in favor of standing "by failing to include it in their opening brief").

But Industry Petitioners now aver that they were not required to comply with our usual rules because their standing was self-evident.[5] *See*

---

[5] The self-evident-standing exception originates most directly from a former D.C. Circuit rule requiring that, "[w]hen the appellant's or petitioner's standing is not apparent from the administrative record, the brief must include arguments and evidence establishing the claim of standing." D.C. Cir. R. 28(a)(7) (2024) (amended 2025); *see also Entergy Ark., LLC v. FERC*, 134 F.4th 576, 582 n.3 (D.C. Cir. 2025) ("The 'self-evident' exception is based on [Rule 28(a)(7)] itself, which textually only applies when the 'petitioner's standing is not apparent from the administrative record.'" (quoting D.C. Cir. R. 28(a)(7) (2024)). *But see Sierra Club v. EPA*, 292 F.3d 895, 899–901 (D.C. Cir. 2002) (tracing the exception to *Lujan*). The D.C. Circuit now requires that "the brief of the appellant or petitioner must set forth the basis for the claim of standing. . . . includ[ing]

*Texas v. Nuclear Regul. Comm'n*, 78 F.4th 827, 835 (5th Cir. 2023) ("Generally, a petitioner is required 'to present specific facts supporting standing through citations to the administrative record or affidavits or other evidence attached to its opening brief, *unless standing is self-evident.*'" (quoting *Sierra Club*, 793 F.3d at 662)), *rev'd on other grounds*, 605 U.S. 665 (2025); *Ctr. for Biological Diversity*, 937 F.3d at 542 n.4 ("[W]e overlook Petitioners' decision to include only a cursory discussion of standing because we assume they had a good-faith (though mistaken) belief that standing would be both undisputed and easy to resolve."). They ask us to hold that they have standing notwithstanding the lack of supporting evidence, or alternatively, to allow them to submit supplemental materials because "nothing in the record alerted [them] to the possibility that their standing would be challenged." *Nuclear Regul. Comm'n*, 78 F.4th at 835 (quoting *Am. Libr. Ass'n v. FCC*, 401 F.3d 489, 492 (D.C. Cir. 2005)).

Even assuming standing may be considered self-evident for some petitioners, such as entities directly regulated by the challenged agency action, the self-evident-standing exception cannot save Industry Petitioners because they could not have reasonably believed it applied on these facts. This is because this exception would excuse a petitioner's failure to comply with our usual standing requirements only when a petitioner "'reasonably assumes' that its standing was self-evident from the administrative record." *Entergy Ark.*, 134 F.4th at 582 (citation modified) (quoting *Sierra Club v. DOE*, 107 F.4th 1012, 1015 (D.C. Cir. 2024)); *see also Twin Rivers Paper Co. LLC v. SEC*, 934 F.3d 607, 612 (D.C. Cir. 2019) (similar, but also excusing forfeiture when a party "reasonably, but mistakenly, believed" that its initial pleadings were sufficient). That's not the case here. Most obviously, the

---

arguments and evidence establishing by a 'substantial probability' the claim of standing." D.C. CIR. R. 28(a)(7) (2025).

administrative record does not establish who Industry Petitioners' members were at the "commencement of the suit" when "standing is determined," so they could not have believed any member's standing was self-evident from the record. *In re Technicool Sys., Inc.*, 896 F.3d 382, 386 (5th Cir. 2018) (citation modified). Nor do Industry Petitioners argue that their opening brief adequately established standing, rather than the administrative record itself.

From these precedents, a rule emerges: Petitioners who fear the administrative record doesn't establish their standing to sue may supplement the record with affidavits and other evidence, but it must be done at the time of their opening brief. Industry Petitioners didn't do that here. Instead, in briefing submitted after argument, they argue that they have standing to sue on behalf of Olin Corporation and Occidental Chemical Corporation. But they admit that Olin was not a member of Petitioner American Chemistry Council ("ACC") at the outset of the suit—though it apparently now is—and they identify no evidence in the record showing that another Petitioner had Olin on its membership roll when the petitions were filed. And while there's some evidence that Occidental was a member of ACC during the rulemaking process in 2022 and 2023, there's no evidence that it was a member of ACC or any other Industry Petitioner when they filed their Petitions in 2024. We are left speculating about Occidental's membership status—and, therefore, Industry Petitioners' standing. But on direct review of agency actions, we don't fill in the blanks for petitioners or give them the benefit of the doubt. We require evidence. *See Shrimpers*, 968 F.3d at 423; *Lujan*, 504 U.S. at 561.

The fact that Olin—a directly regulated entity—originally joined Industry Petitioners' brief does not exempt them from our well-established standing and briefing requirements. While it's true that "[t]he presence of one party with standing is sufficient to authorize our review," *Texas v. United States*, 50 F.4th 498, 514 (5th Cir. 2022), that means only that Industry

Petitioners' standing may not have been an issue had Olin remained in the suit, not that Industry Petitioners themselves established standing. Once Olin dismissed its petition and Industry Petitioners could no longer rely on Olin's standing, they bore the burden of proving their own. Since their standing was never self-evident, they were required to provide substantiating evidence, such as affidavits, at the time of their opening brief. *Nat'l Religious Broads.*, 138 F.4th at 291; *Shrimpers*, 968 F.3d at 423–24. But they failed to do so until after we alerted them to our concerns—more than three weeks after Olin withdrew its petition—and they have not shown good cause for not immediately requesting an opportunity to supplement the record.[6]

For this reason, we decline to consider Industry Petitioners' post-argument evidentiary submissions. Allowing a Petitioner to supplement the record this late in the proceeding would not only contravene our forfeiture rules and the Federal Rules of Appellate Procedure, but it would also unfairly prejudice EPA and waste judicial resources. We agree with the D.C. Circuit that "[r]equiring the petitioner to establish its standing at the outset of its case is the most fair and orderly process by which to determine whether the petitioner has standing to invoke the jurisdiction of the court." *Sierra Club*, 292 F.3d at 901. Certainly we would not allow a party to proffer additional evidence on a merits issue once it discovered we were dubious. We see no reason to treat standing—a "bedrock constitutional requirement"—any differently.[7] *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024) (quoting *United States v. Texas*, 599 U.S. 670, 675 (2023)).

---

[6] We express no view on whether supplementation should be allowed in these circumstances.

[7] We likewise reject the declarations USW and Advocacy Petitioners submitted after oral argument.

Because Industry Petitioners failed to preserve their arguments in favor of standing, those arguments are forfeited. With very limited exceptions, we do not consider forfeited issues. *Rollins*, 8 F.4th at 398. Those exceptions do not apply here, and we "cannot grant special absolutions, no matter our view of the underlying merits." *Smith*, 88 F.4th at 596. So we dismiss their petitions.

B.

USW's opening brief mentions standing only once, in a footnote.[8] In its entirety, that footnote reads:

> USW represents thousands of workers in the chemical manufacturing industry who are directly exposed to asbestos when installing new gaskets or removing old gaskets, or when working in the same vicinity as those directly installing or removing these gaskets. Indeed, USW is the largest union representing workers in the chemical manufacturing industry. The lack of protections against asbestos exposure puts USW members at risk. USW therefore has standing in this proceeding. *See Air Alliance Houston v. EPA,* 906 F.3d 1049, 1058–59 (D.C. Cir. 2018) (finding USW had standing to challenge EPA regulation based on its members' exposure).

USW's attempt to establish standing runs into many of the same problems as Industry Petitioners. USW does not identify the theory of standing on which it relies, neglects to cite binding authority, and omits record citations. What's more, "[w]e have repeatedly cautioned that arguments appearing only in footnotes are 'insufficiently addressed in the

[8] USW also mentions facts supporting standing in its petition for review, writing that EPA's interim protections fail to extend to "workers exposed when handling asbestos sheet gaskets," "thousands" of whom are represented by USW. But again, USW fails to tell us who any of these workers are.

body of the brief' and are thus forfeited." *Smith*, 88 F.4th at 596 (quoting *Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 339 n.4 (5th Cir. 2016)).

As with Industry Petitioners, this would normally result in summary dismissal. But also like Industry Petitioners, USW now asserts that it reasonably believed its standing was self-evident. And as with Industry Petitioners, this argument fails because USW could not have reasonably held this belief.

But that's beside the point, because USW never told us who any of its members are. Though it describes its members, USW does not give us the "concrete evidence" we need to determine standing. *Shrimpers*, 968 F.3d at 425; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (discussing the "requirement of naming the affected members" and finding an affidavit provided to establish standing "insufficient because it did not name the individuals who were harmed"). With nothing in the record to back up its allegations—or at least none that we are aware of—USW's standing plainly cannot be self-evident.

In short, USW was required to cite specific facts in the record proving standing or to submit supplemental evidence no later than the filing of its opening brief. *See Shrimpers*, 968 F.3d at 423 ("[A] petitioner's claim of standing cannot rest on 'mere allegations,' but must instead be supported by citations to specific facts in the record." (quoting *Clapper*, 568 U.S. at 412)). In failing to do so, it forfeited its arguments in favor of standing. We therefore dismiss USW's petition for lack of standing.

C.

Only Advocacy Petitioners made any effort to establish standing at the appropriate time. They submitted arguments and declarations on behalf of three individual petitioners, IAFF Local F-253, APHA, and ADAO. But

they still fall short because they did not demonstrate that any of them suffered a cognizable injury in fact.

1.

IAFF Local F-253 is a firefighter union based in Northern Virginia. Local F-253's president, Mike Jackson, explained in his declaration that "[a]sbestos is a significant risk factor for fire fighters because it is pervasive in residential, government, and commercial buildings, equipment and our transportation and distribution system and is frequently released during fires and other hazardous events to which fire fighters respond." Jackson cites a National Institute for Occupational Safety and Health study that found that "the population of fire fighters in the study had a rate of mesothelioma two times greater than the rate in the U.S. population as a whole."

Local F-253 asserts that two aspects of the Final Rule harm its members. First, as to EPA's determination that the distribution of asbestos in commerce does not present an unreasonable risk, Local F-253 says this "increases health risks to Local 253's members who respond to spills, derailments, fires and other emergencies within their areas of responsibility." Second, it argues that the Rule improperly bans only a small number of asbestos uses, leaving Local F-253's members at risk from other uses that are "now occurring or could be foreseen to be introduced in the future."

But Local F-253 does not explain how these alleged harms are actual or imminent. It contends merely that asbestos-containing materials (including "unknown" materials) "may be present" when its members are fighting fires and that they are at an "increased risk" due to the lack of additional protections in the Final Rule. This vague conjecture is insufficient to show "certainly impending harm or a substantial risk of harm." *Shrimpers*, 968 F.3d at 424 (quotation omitted); *see also id.* ("Increased-risk claims—even when they are particularized—often cannot satisfy the 'actual or

imminent' requirement."). And Local F-253 fails to present evidence showing "the extent to which . . . risks would be increased" for its members. *Id.* at 425. Therefore, Local F-253 failed to establish standing.

2.

APHA is a public health organization that has 23,000 members, including "physicians, nurses, epidemiologists, educators, first responders, industrial hygienists and public health professionals in the public and private sectors who work at health and environmental agencies, universities, non-profit organizations and unions." According to APHA's Executive Director, "[a]sbestos has long been a priority for APHA because of its extreme risks to public health."

APHA contends that it has associational standing[9] because its members "may be exposed to asbestos during their jobs," and they "may be at risk" due to the Final Rule's inadequate protections. APHA further asserts that its members would be "handicapped" in preventing the harmful effects of asbestos if the Final Rule stands. But each of these assertions falls far short of alleging a harm that is "actual or imminent, [and] not conjectural or hypothetical," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (quoting *Lujan*, 504 U.S. at 560), because they do not demonstrate that harm is "certainly impending" or that APHA's members face a "substantial risk" of harm. *Shrimpers*, 968 F.3d at 424 (quoting *Clapper*, 568 U.S. at 414 & n.5). And APHA fails to show that its members in particular face an increased risk of harm from asbestos because of the Final

[9] In its opening brief, APHA appeared to assert that it had organizational standing as well, arguing that the Final Rule would force it to divert its resources to address the Rule's deficiencies. But APHA has since disclaimed organizational standing, and in any event, its diversion-of-resources theory is foreclosed. *See United States v. Texas*, 173 F.4th 659, 665 (5th Cir. 2026) (en banc).

Rule. *See id.* ("We do not recognize the concept of 'probabilistic standing' based on a non-particularized 'increased risk'—that is, an increased risk that equally affects the general public."). This means APHA also lacks standing.

3.

ADAO has a "network of more than 50,000 people and organizations dedicated to protecting public health from the known dangers of asbestos." ADAO contends that it has associational standing[10] to sue on behalf of its supporters because the Final Rule does not address all types and uses of asbestos, potentially increasing the risk of asbestos exposure to those supporters.

But because ADAO does not have traditional members, it can establish associational standing only by "proving that it has 'indicia of membership': its members elect leadership, serve as the organization's leadership, and finance the organization's activities, including the case's litigation costs." *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 n.9 (5th Cir. 2012) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344–45 (1977)); *see also Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 600 U.S. 181, 200–01 (2023). ADAO does not attempt to satisfy this standard, other than by asserting—without evidence—that its supporters are "involved in and contribute to its programs," so it failed to show that it can rely on associational standing.

Further, even if ADAO could assert associational standing, it failed to demonstrate that the Final Rule poses some concrete, particularized, and actual or imminent harm to any supporter. Its generalized contention that

[10] ADAO asserted organizational standing in its opening brief based on a diversion-of-resources theory, but it has since abandoned that claim, which would be foreclosed anyway. *See Texas*, 173 F.4th at 665.

deficiencies in the Rule increase the risk of asbestos exposure does not establish a cognizable injury in fact. *See Shrimpers*, 968 F.3d at 424–25. Accordingly, ADAO has not met its burden to establish standing.

* * *

Because no Petitioner has shown that we have jurisdiction, all petitions for review are DISMISSED.